IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RECEIVED

APR 1 8 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES OF AMERICA, )
                                 )
         Plaintiff, )
                                   )
                                   )    No. 03 CR 978
                                   )
     v.                        )
                                   )    Judge Amy J. St. Eve
                                   )
MOUSA MOHAMMED          )
MARZOOK, *et al.*,          )
                                   )
        Defendants.        )

## MUHAMMAD SALAH'S MEMORANDUM IN SUPPORT OF HIS REQUESTS FOR DISCOVERY

**GIVEN THE BREADTH AND COMPLEXITY OF THIS INDICTMENT, THIS COURT SHOULD BROADLY EXERCISE ITS "INHERENT AUTHORITY TO PROMOTE THE PROPER ADMINISTRATION OF CRIMINAL JUSTICE" AND GRANT MR. SALAH'S DISCOVERY REQUESTS.**

The indictment against Mr. Salah and Dr. Ashqar is sweeping in scope and remarkable in political content. It covers almost two decades of events in foreign lands directly related to the on-going Israeli-Palestinian conflict in the Middle East and charges a vast conspiracy involving numerous co-conspirators and thousands of documents and recorded conversations, many of which are in Hebrew and Arabic.

To further complicate this prosecution, the government bases much of its case against Mr. Salah on statements that were forcibly extracted from him by the Israeli General Security

1

Services (GSS), the elite interrogators of Palestinian detainees, who routinely engaged in systematic torture. The GSS interrogators subjected Mr. Salah to extreme psychological and physical coercion designed to break his spirit and free will, including prolonged interrogations, sleep deprivation, forced painful and unnatural body positions for long periods, and physical brutality.

Further, the delay in bringing these charges against Mr. Salah is extraordinary. Almost all the alleged acts upon which the charges against Mr. Salah are based occurred in 1993,[1] over 11 years prior to this indictment and prior to the designation of Hamas as a foreign terrorist organization. Moreover, these acts are alleged to have occurred during a period in which the United States and the State of Israel had on-going relations with persons affiliated with Hamas. The delay in bringing these charges raises a serious Fifth Amendment, due process violation and makes the government's motivation- strategic and tactical - for such delay directly relevant.[2]

In such a complex, unprecedented case, with such far reaching consequences for the defendants, this Court must exercise its "inherent power" and sense of justice in ruling upon Mr. Salah's discovery requests. In this case, to ensure fairness and to promote the "proper administration of criminal justice," this Court should order that the defense receive all documents and other discovery "which are material to the preparation" of the defendant's constitutional claims and factual defenses. *See United States v. Jackson*, 508 F. 2d 1001, 1007 (7th Cir. 1975)

---

[1] While the indictment does make allegations of Mr. Salah's indirect involvement with Hamas in 1999, and his denial in 2001 of involvement with Hamas in an answer to an interrogatory in a civil case, these insignificant claims are mere pretext calculated to create the appearance of more recent criminal activity.

[2] Mr. Salah intends to make a motion to dismiss for pre-accusatory delay at the appropriate time.

(upholding district court's order that government to produce list of witnesses.)

**I. List of Witnesses, Grand Jury Testimony, and Jencks Material.**

Mr. Salah has requested a list of government witnesses, their grand jury testimony and other *Jencks* material. *See* Request No.1[3] The breath and complexity of this indictment calls for the production of these items at the earliest possible stage of this litigation.

The indictment covers a period from 1988 to 2004, and accuses Mr. Salah of conspiring with a "racketeering" enterprise. In fact, Hamas is a foreign-based movement with tens of thousands of followers and supporters involved in hundreds of daily activities in the West Bank and Gaza Strip. The indictment covers 43 pages of allegations and charges, including first degree murder, conspiracy to commit first degree murder, and solicitation of first degree murder charges under Illinois law. In addition it charges federal conspiracy to kill, kidnap and maim, money laundering, obstruction of justice, material support for terrorism, hostage taking, forgery and travel in aid of racketeering charges.

The indictment names two co-defendants, one alleged to be in Syria, and sixteen (16) unindicted co-conspirators - six named and ten unnamed - most of whom are believed to be somewhere in the Middle East and to speak little or no English. It charges that conspirators worked with six other Palestinian organizations "to achieve the goals of the enterprise," (para. 13), and that Hamas "infiltrated various universities and other academic and social institutions in the West Bank and Gaza Strip," (para. 12), implicating hundreds of Palestinian, political, educational and social institutions.

---

[3] All request numbers refer to the enumerated requests contained in the Motion for Discovery.

The discovery already produced encompasses hundreds of hours of recorded conversations in Arabic and thousands of documents, many of which are in Hebrew or Arabic. Many other documents produced concern political events spanning over 50 years of the Israeli-Palestinian conflict. For every document produced on these issues, there are thousands more covering the same subject matter. In addition, there are hundreds of complex financial documents which have yet to be produced, documents yet to be declassified, and documents the disclosure of which, according to the prosecuting attorneys, is subject to the approval of the State of Israel.

In such an extraordinary case, which goes back many years and is steeped in foreign languages and political events, the defense is at an incredible disadvantage, and this Court must attempt to level the playing field by exercising its "inherent power to promote the proper administration of criminal justice." *See United States v. Jackson*, 508 F. 2d at 1007. By ordering the government to provide a list of witnesses, their grand jury testimony and other *Jencks* material now, rather than on the eve of trial, the defense can at least begin to investigate and prepare a defense to this open-ended, massive indictment.

Similarly, critical to its preparation for trial, the defense is entitled to the names and present addresses of the unnamed, A-J, co-conspirators and the unnamed individual "A" (*see* indictment, paragraphs OO-AAA), who provides the only basis in the indictment for any claims of post 1993 Hamas activities by Mr. Salah. (Request No. 2). Without production of this information, Mr. Salah is deprived of his fundamental right to meaningful notice of the conspiracy charged against him and the identity of those with whom he has allegedly conspired.

4

## II. Documents Relevant to Suppression of Statements at a Pre-Trial Hearing, and if Necessary, to Challenge the Reliability of Such Statements at Trial.

### A. Documents Concerning GSS Interrogation Methods.

Mr. Salah has requested:

All protocols, directives and guidelines written by the Israeli General Security Service (GSS) or other branches of the Israeli government which document the methods and practices in the relevant period, which were sanctioned for use in interrogations of Palestinian security detainees by GSS agents, including but not limited to directives from the "Special Ministerial Committee on GSS Interrogations;" Part II or the Annex to the Commission of Inquiry into the Methods of Investigation Regarding Hostile Terrorist Activity," (The Landau Commission Report); the affidavit filed with the Israeli High Court dated 4/25/93 by the GSS concerning their procedures for interrogating security detainees.

(Request No. 3 a)

The identity and all written documentation of all other Palestinian detainees who made confessions to the GSS in the occupied territories during the period in which physical and psychological coercion/torture was the *defacto* or *dejure* practice and policy of the State of Israel

(Request No. 3 b)

In 1987, after it was publicly exposed that the Israeli General Security Services (GSS) had used force and psychological coercion in interrogation of Palestinian detainees, a commission of inquiry was established and chaired by former Israel Supreme Court president Moshe Landau (hereinafter the Landau Commission, attached as Exhibit A).

The Commission issued a two part report. In the first part the commission concluded that there was widespread perjury in judicial proceedings by GSS agents denying the use of physical and psychological coercion in their interrogations of Palestinians. (*See* Landau Report at 159). This part of the Commission report also concluded that the use of physical and psychological

pressure through "vigorous and extensive interrogation"was permissible in interrogations of Palestinian suspects. (*See* Landau Report at 184-85)

In Annex II, the second part of its report- a classified document - the Commission formulated a code of specific methods and guidelines for GSS interrogations and directed that these guidelines be annually reviewed and modified by a small ministerial committee. (*See* Landau Report at 185).

In 1999, the Israeli Supreme Court ruled that the coercive methods used by the GSS following the Landau Commission guidelines were illegal. Specifically the methods violated the international prohibitions against torture and cruel, degrading and inhuman treatment, as well as Israeli law, which holds that interrogations must be fair and reasonable:

> First a reasonable investigation is necessarily one free of torture, free of cruel, inhuman treatment of the subject and free of any degrading handling whatsoever . . . . This conclusion is in perfect accord with (various) International Law treaties–to which Israel is a signatory– which prohibit the use of torture, 'cruel, inhuman treatment' and 'degrading treatment' . . . These prohibitions are 'absolute.' There are no exceptions to them and there is no room for balancing. Indeed, violence directed at a suspects body or spirit does not constitute a reasonable investigation practice.

*H.C. 5100/94 Public Committee Against Torture in Israel and Others v. The State of Israel, The General Security Services and Others*, 53(4) PD 817 (1999) (*See* Attached Opinion, Exhibit B at page 16).

Although the High Court of Israel in 1999 condemned the GSS practices of interrogation, including prolonged sleep deprivation, the "Shabach" position, (a painful position of being handcuffed while seated on a small chair tilted forward towards the ground), and the use of physical force and intimidation, these methods and others were sanctioned and in use at the time

6

Mr. Salah was interrogated in 1993. Mr. Salah asserts that these and other practices in use in 1993 were employed against him, and he is entitled to demonstrate to any fact finder what procedures were sanctioned and routinely used by the GSS at the time of his interrogation.

While the government recognizes that there are a serious issues as to the admissibility of Mr. Salah's alleged statements to the Israeli Special Security police (GSS) and claims to be working closely with the Israelis to obtain their cooperation for a suppression hearing, it has declined to request from Israel documents that would establish the specific interrogation methods and practices in use at the time of Mr. Salah's interrogation.[4]

Rather, the government suggests that the defense get these documents about GSS interrogation methods from the Israeli government on their own, a time consuming and highly unlikely prospect. The government has an obligation to obtain and produce these documents under *Brady* and *Giglio*. Such documents are also discoverable under Rule 16, as they are essential to a fair suppression hearing and relevant to issues before the jury. The government ought not to be allowed to use its special relationship with the Israeli government to pick and choose which relevant documents to request.

Similarly, the defense is entitled to be provided with the identities of other Palestinian detainees who have been subjected to the same interrogation policies and practices of torture and coercion. Such information is discoverable under *Brady*, *Giglio* and 404 (B). The testimony of other Palestinian detainees who were victims of GSS torture methods during the same time period is highly relevant to establish the policy and practices of Mr. Salah's GSS interrogators.

---

[4] The prosecution has represented that it has requested from Israel the names of the GSS interrogators, any reports authored by them and any prior accusations against these interrogators for abuse.

This Court should order the U.S. government to obtain this information and documents from the State of Israel and provide them to the defense.

**B.    Names of the Police, Prison Guards and Palestinians Who were Involved  with the GSS in the Interrogation of Mr. Salah.**

Mr. Salah has requested:

The names and addresses and of all police, prison guards and Palestinians (or other) collaborators who worked with the Israeli authorities in the interrogation of the defendant, and all documents memorializing their involvement.

(Request No. 3 c)

The physical abuse and threats carried out against Mr. Salah were committed not only by his GSS interrogators, but by Israeli police and prison guards working with the GSS at the prison where he was interrogated. Mr. Salah is entitled to have the names of these police and guards, their whereabouts, and any documents memorializing their involvement.

In addition, it is undisputed that one of the interrogation methods employed by the GSS in 1993 was the use of Palestinian collaborators, referred to as "birds," who posed as prisoners to assist the GSS in a detainee's interrogation and to extract information from the detainee.  This method was used in the interrogation of Mr. Salah.  During his interrogation Mr. Salah was placed in a cell with other Palestinians who claimed to be activists in the struggle against occupation and demanded that he prove to them that he was not a collaborator. Mr. Salah was threatened with death if he did not prove in writing that he was not a collaborator. Parts of these writings were then used by the GSS interrogators to continue his interrogation.

These Palestinians working with the GSS  interrogators were an integral part of the illegal coercive interrogation of Mr. Salah and  the defendant is entitled to know their identity, an address

to contact them, to be provided with any documents memorializing their involvement in Mr. Salah's interrogation and to have such collaborators produced for a hearing. The government has a working relationship with the Israelis and has the burden of showing that Mr. Salah's statements are admissible. S*ee e.g.*, *Lego v. Twomey*, 404 U.S. 489 (1976). Therefore the prosecution should be required to obtained this discovery from the government of Israel.

### C. Documents Relevant to the Claim that Mr. Salah's Arrest, Search and Interrogation was the Product of a U.S.-Israeli Joint Venture

The law allows for the suppression of statements made to foreign agents, or the fruits of arrest or search by foreign agents, when the methods used are shocking to the judicial conscience or when the interrogations, arrest or search are the product of a U.S. joint venture with the foreign government agents. *See United States v. Yousef*, 327 F. 3d 56, 146 (2d. Cir. 2003); *United States v. Heller*, 625 F.2d 594, 599 (5th Cir. 1980); *United States v. Lopez-Imitola*, 2004 U.S. Dist. Lexis 226434 (U.S. Dist. S.D. N.Y.); *United States v. Usama Bin Laden*, 132 F. Supp. 2d 168, 187 (S.D. N.Y. 2001); *United States v. Fernandez-Caro*, 677 F. Supp. 893, 895 (S.D. Tex. 1987); *United States v. Molina-Chacon*, 627 F. Supp. 1253, 1262 (E.D .N.Y.1986).

Here, Mr. Salah requests:

All communications between Israeli government agents and agents of the U.S. government concerning the arrest, search, and interrogation of the defendant in Israel. And any documents prior to 1994 which indicate a joint involvement between agents of the United States and agents of the State of Israel in the investigation and sharing of information concerning the activities of Hamas or other Palestinian resistance group.

(Request No. 3 d)

These documents are relevant to Mr. Salah's claim that his arrest, search, and interrogation

9

was the product of a "joint venture" between agents of the government of Israel and agents of the United States government and are necessary to his challenge to the admissibility of these statements or the fruits of an illegal arrest or search.

### III.    Disclosure of Electronic and Other Surveillance.

Mr. Salah seeks:

> All applications, affidavits, memoranda or other papers submitted in support of applications for executive, administrative or judicial approval of surveillance and all opinions responsive or related thereto, and the recordings, logs, minimization records, and all other records of physical surveillance of any kind of the defendant, his co-defendant or alleged co- conspirator, indicted or unindicted, and any recording of the defendant's conversations to which a party to the conversation allegedly consented.

(Request No. 4)

The government has informed Mr. Salah, through counsel, that there are electronic overhears of Mr. Salah, but the production of these recordings is awaiting security clearance. The defense awaits the production of these materials, including the applications, approvals, logs, and minimization records before determining if any follow-up requests are necessary.

Mr. Salah also seeks the logs, notes or other writings memorializing non-electronic, physical surveillance of himself and his family from 1993 to the present. This physical surveillance, which the defendant upon information and belief claims to have been intensive and systematic, will provide evidence that neither the defendant nor his family were involved in any illegal activities and should be produced under *Brady v. Maryland*.

Mr. Salah also seeks disclosure of any wire or oral communication to which a party to

10

that conversation allegedly consented. The consent signifies that the person was working with the government, and therefore, such communications are statements to government agents and are discoverable.

## IV.   Administrative Record of the Designations of Hamas and of Mr. Salah.

Mr Salah has requested:

> The complete administrative record of the Department of the Treasury, Office of Foreign Assets Control which was the basis of the designation in January, 1995 of Hamas as a "Specially Designated Terrorist Organization" and the complete administrative record which was the basis of the October 1997 designation by the Secretary of State designating Hamas as a "foreign terrorist organization and any subsequent record of designation.

(Request No. 3 e)

> The complete administrative record of the Department of the Treasury (OFAC) which was the basis for designating Mr. Salah as a specially designated terrorist

(Request No. 3 f)

Mr. Salah is entitled to have access to the administrative records which were the basis for the designations of Hamas as a foreign terrorist organization and now which is the predicate finding in this case for the "material support " charge. The record which is the basis for these *ex parte* designations of Hamas, and which the government claims is now binding on the defendant should be available to the defense. The contents of the record will be important in supporting a due process challenge to the admission of this prior designation[5] and for the preparation of the defense case at trial.

Mr. Salah also seeks the OFAC administrative record of his designation as a "specially

---

[5] The defense at the appropriate time will be presenting a due process and fair trial challenge to the indictments reliance on these *ex-parte* designations.

designated terrorist." This record is directly relevant to the criminal charges now pending against the defendant and includes the government's prior version of the case against Mr. Salah. The designation record should be produced to the defense under *Brady* and as a document necessary to assist in the preparation of his defense.

## V. Documents Which are Necessary to Defendant's Claim of Pre-Accusation Delay.

Mr. Salah has requested:

> All written communications by agents and agencies of the U.S. government concerning decisions pertaining to the indictment of the defendant in the pending case including any prior communications reflecting an earlier determination not to indict and/or reflecting the determination to file the 1998 asset forfeiture case rather than a criminal indictment. This request includes any and all documentation regarding the decision of the U. S. government, as to whether or not to seek an indictment in 1997 or any time thereafter, including up to 2004.
>
> (Request No. 3 g)
>
> All written communications between the Anti-Defamation League (ADL), lawyer Nathan Lewin,, American-Israel Public Affairs Committee (AIPAC), or any other pro-Israel U.S. groups and the U.S. Department of Justice pressing for indictments against alleged funders of Palestinian resistance organizations or providing any other information concerning the bringing of charges against the defendant or his co-defendants or other Palestinians.
>
> (Request No. 3 h)
>
> All press releases, press statement, radio and televison interviews of John Ashcroft or other Justice Department officials concerning the above-entitled indictment or related investigations.
>
> (Request No. 3 i)

The delay in bringing the charges contained in this indictment, the bulk of which are based on allegations known to the government in 1993, raises a serious issue of pre-accusatory delay in violation of Mr. Salah's Fifth Amendment due process rights. To prevail on this claim, a

12

defendant must show either that he has suffered prejudice from the delay, or that the prosecution intentionally or recklessly delayed the indictment for strategic advantage. *See,* e.g., *U.S. v. Lovasco,* 431 U.S. 783, 788-790 (1977); *United States. v. Marion,* 404 U.S. 307, 325-26 (1971); *U.S. v. Loud Hawk,* 816 F.2d 1323, 1324 (9th Cir. 1987).

Mr. Salah seeks the above requested discovery in order to show that the delay here was intentional and motivated by improper political reasons and to gain a strategic advantage. The government was aware of the actions of Mr. Salah as early as his arrest and trial in Israel in 1993. Upon his completion of his Israel sentence and his return to the United States in 1997, the government declared Mr. Salah a "specially designated terrorist" and relying on the substantially the same allegations that are now contained in this indictment, brought a civil asset forfeiture case in 1998.

After years of litigating the forfeiture case, even to the point in which the government had entered into negotiations to settle the case and allow Mr. Salah to resume a normal life, the government suddenly changed its strategy. 9-11 occurred, and for improper political reasons, including pressure from the pro-Israel lobby, the government changed course, and returned this indictment. The announcement of this indictment was politically timed, at the height of the presidential election race, and accompanied by a national press conference held by the Attorney General Ashcroft and attended by the pro-Israel supporters who had been involved in the efforts to force an indictment.

There was no legitimate reason for the inordinate delay in bringing this indictment. The delay here was intentional for politically motivated strategic reasons and the documents sought by the defense are directly relevant to establishing this constitutional violation.

13

## VI.     Documents Necessary to Support Mr. Salah's Claims of Selective Prosecution and Enforcement of the Law.

Mr Salah has requested:

All documents reflecting the U.S. governments knowledge of financial and other support by United States citizens for the illegal activities of "Kach" and "Kahane Chai" or other violent Israeli groups against Palestinians in the occupied territories. All documents which reflect the government's decisions not to indict these individuals, groups or organizations who provide material support for these violent anti-Palestinian groups.

(Request No. 3 j)

This case also presents a claim of government selective prosecution and enforcement of the laws in violation of the guarantees of the Equal Protection of the law. The U.S. government has chosen to exercise its prosecutorial power against one-side of the Israeli-Palestinian conflict in the Middle East. Despite its knowledge of the funding and support by individuals and organizations in the United States for violent Israeli "settler" terrorist groups including "Kach" and "Kahane Chai," who target and kill innocent Palestinian civilians, it is only those supporting the Palestinians who have been indicted. The defense is not aware of even one case brought by the Justice Department charging people in the United States with supplying money and other support for violent Israeli groups.

Likewise, the designation of Hamas, a diverse movement, engaged in a broad range of non-violent, social-welfare activities, as well as militant acts, and which has electoral and popular support of hundreds of thousands of Palestinians, as a *"racketerring enterprise"* under United States RICO law, is a selective and politically charged accusation.

Mr. Salah asserts that the indictment brought against him is the product of the selective

14

prosecution and enforcement of the laws in violation of the equal protection clause. *See Yick Wo v. Hopkins*, 118 U.S. 356, 373-74 (1886 ); *see also United States v. Falk*, 479 F. 2d 616, 620-21 (7th Cir. 1973); *United States v. Kerly*, 787 F. 2d 1147 (7th Cir. 1986). To prevail on such a claim the defendant must show : (1) that other persons similarly situated are not being prosecuted; and (2) that the prosecution is based on an impermissible motive. See, *United States v. Armstrong*, 517 U.S. 456, 464-65 (1996).

The defense asserts that the U.S. government is intentionally ignoring the actions of similarly situated U.S. citizens, who are providing money and other support for the violent and illegal acts against Palestinian civilians by armed Israeli settler terrorist groups like "Kach" and "Kahane Chai" in the West Bank and Gaza. As early as 1996, the United States Department of State designated these two settler groups as "terrorists groups," and noted that they "receive support from sympathizers in the United States and Europe." (*See* U.S. State Department website at: www.state.gov/global/terrorism/1996Report/appb.html).

Second, the defendant claims that the government is prosecuting only Palestinians and refusing to prosecute the supporters and facilitators of Israeli acts of violence against Palestinians. To pick and choose enforcement of the law based on the nationality and politics of the alleged perpetrator and the foreign policy of the United States is an improper basis for disparate treatment.

Even though Mr. Salah has not yet filed his selective enforcement motion, the allegations made here are nonetheless sufficient to entitle him to the documents requested. To obtain documents in discovery on a selective enforcement claim, a defendant is faced with "a relatively low burden" of showing a "colorable basis" for his claim since the "government holds most of the relevant evidence." *See United States v. Utecht*, 238 F. 3d 882, 888-89 (7th Cir. 2001); *see also*

15

*United States v. Heidecke*, 900 F.2d 1155, 1158-59 (7th Cir. 1990).

The government holds the evidence of its motivation in not prosecuting the funders and supporters of Israeli terror. The defense seeks the documents showing that the government has information about similar situated financial supporters of Israeli illegal activities against the Palestinians in the West Bank and the Gaza Strip, and the documents showing the basis of their refusal to enforce the laws against these supporters of Israel. The defendant has presented a colorable claim and is entitled to this discovery.

### VII. Other Documents Requested.

Mr Salah has requested:

All documents evidencing contacts with Hamas or any person believed to be associated with Hamas, or any of its social-welfare affiliates, by any agency of the United States Government or any agency of the State of Israel. And any documents evidencing monetary and/or other support for Hamas or any of its members or associates, either by the government of Israel or the United States.

(Request No. 3 k)

Mr. Salah is seeking documents which support his claim that the State of Israel and the U.S. government were in contact and knowingly providing support for Hamas during some of the time period alleged in the indictment. These documents will provide relevant evidence of how the United States treated Hamas during the period in which Mr. Salah is charged with conspiring with Hamas and supporting terrorism. Evidence that Israel and/or the United States were supporting Hamas or having some dealings with known associates of Hamas is relevant and exculpatory under *Brady* of the charges that Mr. Salah's alleged support for Hamas was with criminal intent.

16

## VIII.   Documents Under *Brady v. Maryland*.

This is a unique case which presents several interrelated constitutional and factual

defenses. Such a case demands full application of the principles of *Brady v. Maryland*. Given the

politically-charged and sweeping indictment that the government has chosen to bring, the burden

is on the government to produce any document or other information that can tend to exculpate Mr.

Salah or will provide support for his constitutional challenges as set out above.

As part of his request under *Brady*, Mr Salah seeks:

Any document or other information which in anyway tends to exculpate the
defendant, including impeachment or is favorable to his defense or undermines or
contradicts the prosecution's case or provides support for his constitutional
challenges to this indictment. Included in this request, but not limited to it, is any
evidence which shows that Hamas was involved in lawful activities and was
supported by people who had no intent to promote violence.

(Request No. 4 a)

The testimony or statements of any witness, either before the grand jury, or in an interview
with the government, who fails to provide any inculpatory evidence against Mr. Salah,
whether or not the prosecution intends to call such person as a witness at trial or in an
evidentiary hearing in this case.

(Request No. 4 b)

Any information provided to the government by any witness which the government intends
to call at trial who provided false testimony at any point to the grand jury or any
government agent or at any other tome, along with full disclosure of the circumstances of
the false statement or testimony.

(Request No. 4 c)

Given the facts and arguments presented in this memorandum, the government is now on

notice of the nature and scope of Mr. Salah's constitutional claims, and it should be ordered to use

these claims as a guidepost in complying with its *Brady* obligations.

For all the above stated reasons, Mr. Salah urges this Court to grant his discovery requests.


Dated: April 18, 2005      Respectfully submitted,



             Michael E, Deutsch
             People's Law Office
             1180 N. Milwaukee Ave
             Chicago, Ill 60622
             773-235-0070

             Robert Bloom
             3355 Richmond Boulevard
             Oakland, CA 94611

             Attorneys for Muhammad Salah

.