# PEOPLE'S LAW OFFICE

1180 N. Milwaukee
Chicago, Illinois, 60622
(773) 235-0070
Fax (773) 235-6699

PeoplesLaw@aol.com

Michael E. Deutsch
Ben H. Elson
Janine L. Hoft
Joey L. Mogul
John L. Stainthorp
Jan Susler
G. Flint Taylor, Jr.
Erica L. Thompson

*Of Counsel*
Jeffrey H. Haas

October 17, 2005

Joseph Ferguson
Assistant United States Attorney
219 South Dearborn Street                     Hand Delivery
5th Floor
Chicago, Illinois 60604

RE:   *United States v. Marzook, et al.*, No. 03 CR 978

Dear Counsel:

Below is a list of the relevant discovery necessary for proceeding with a hearing on Mr. Salah's motion to suppress. Please note that unless otherwise specifically stated, all of the requests contained herein are requesting documentation from both the United States and Israel. Also, to the extent that any document is known to exist and is withheld under a claim of privilege or otherwise, please state with regard to any such document (1) the title, date, number or other identifying information appearing on the face of the document, (2) the date that the document was prepared, (3) the identity of the person who has custody or control over the document, (4) the name(s) of all authors, recipients, and other persons who have seen the document, and (5) the nature and substance of the document, all with sufficient particularity to enable it to be identified in a motion to compel.

I look forward to hearing from you this week so that we may meet and confer before bringing the outstanding and disputed issues to the attention of Judge St. Eve. Also please provide me with a list of Mr. Salah's statements and other evidence allegedly seized from him that you intend to offer in evidence at the criminal trial. Thank you very much in advance for your cooperation and prompt compliance.

1.      Any and all documentation pertaining to the investigation and/or surveillance of Mr. Salah from the time of his arrival in the middle east on January 14, 1993 until the time of his arrest on January 25, 1993, as well as documentation reflecting the identity and

1

601 MBE

agency/governmental affiliation of all individuals involved in such investigation and surveillance.

2. All documentation reflecting the identity and agency/governmental affiliation of each and every individual responsible for the decision/determination to arrest/seize Mr. Salah on January 25, 1993, as well as all documentation reflecting the basis for the determination/decision to arrest Mr. Salah.

3. Any and all Israeli and/or United States documentation related to the authorization to arrest/seize Mr. Salah on January 25, 1993, including but not limited to arrest warrants and transport orders or directives.

4. Any and all documentation produced by any agent or official of any branch or department of the United States government regarding any aspect of the investigation, surveillance, arrest, seizure, interrogation, or prosecution of Mr. Salah in Israel in 1993.

5. All documentation reflecting the identity and agency/governmental affiliation of each and every individual involved in the physical arrest/seizure of Mr. Salah on January 25, 1993 and all documentation produced by these individuals related to Mr. Salah's arrest.

6. All documentation reflecting the manner and means by which Mr. Salah was to be seized and transported and/or was seized and transported from the location of his arrest to the interrogation facility and all documentation reflecting the identity and agency/governmental affiliation of each individual who took part in the decision/determination to so seize and transport Mr. Salah.

7. The address book, notebooks, calendar, checkbook, and other physical property allegedly seized from Mr. Salah at the time of his arrest on January 25, 1993, as well as any other physical evidence allegedly belonging to Mr. Salah which was seized by Israeli authorities in 1993 pursuant to the arrest of Mr. Salah, including but not limited to any map alleged to have been produced by Mr. Salah or in his possession at any time since his arrival in the country on January 14, 1993.

8. Any and all documentation related to the seizure of physical property from Mr. Salah at the time of his arrest, including but not limited to documentation reflecting the inventory, processing, or testing of any such materials.

9. Any and all documents related to the processing of Mr. Salah after his arrest, including but not limited to personal and property processing reports, intake forms, fingerprint sheets, scan reports, and photographs.

10. All documentation reflecting the identity of any Israeli agent who came into contact with Mr. Salah during the course of his arrest, interrogation, and detention, including but not limited to GSS agents and officials, police officers, soldiers, and medical personnel.

11. Any and all memos and/or documentation produced by any Israeli agent related to the investigation and interrogation of Mr. Salah.

12. All documentation reflecting the identity of any and all other persons who met with, visited, or communicated with Mr. Salah from January 25, 1993 until January 2, 1995, including but not limited to rosters, logs, or registers.

13. Any and all documentation, including but not limited to "waiting cell," interrogation room, and cell assignment logs reflecting Mr. Salah's movement within and outside of the Ramallah, Hebron, and/or other military interrogation, detention, and/or other facility.

14. Any and all videotapes, audio tapes, or other electronic recordings of Mr. Salah recorded at any time during his interrogation or detention in Ramallah, Hebron, or any other location.

15. All documentation reflecting statements made or information allegedly obtained from other detainees, arrestees and/or individuals, reports, or other documents alleged to have been shown by any agent of Israel to Mr. Salah at any point during the course of his interrogation.

16. The complete file for Israeli case numbers PA 52/2/93, PA 82/2/93, and PA 542/93 (Prosecution file: 127/93; Court file nos.: 4221/93 and 4337/93) (as reflected in the Suleyman Memorandum to the Military Prosecutor, dated 3/22/93 and amended indictments of Mr. Awadallah.

17. The complete case files for Mr. Salah, emanating from the Gaza Strip, the Judea or Samaria regions. *See* Porat Submission to Military Tribunal of 7-15-93.

18. All documents reflecting the identity of arrestees, detainees, or individuals brought into the presence of Mr. Salah during his interrogation by Israeli agents for the purpose of furthering the interrogation of Mr. Salah.

19. Any and all documentation produced pursuant to and/or reflecting an interrogation or other conversation between Mr. Salah and GSS interrogators Nadav and Chaim/Chayim or any other agent of Israel in June, July, or August of 1993.

20. All documentation reflecting the identity of individuals arrested or for whom an arrest warrant was sought and/or obtained based upon information allegedly obtained from Mr. Salah during the course of his interrogation and all documentation reflecting the identity of the Israeli agent(s) responsible for the interrogation of these detained individuals, and all documentation generated by these agents pursuant to their interrogation of the detained individuals.

21. All documentation reflecting the identity of other detainees questioned by Abu Hassan, Nadav, Chaim/Chayim, Abu Razi/Rahzi/Ghazi, Dani, Majidi, Carmel/Carmi, Benny,

3

Majidi, Cohen, Abu Daoud, Victor, Tal, Arik, Itzik, Meron Suleyman, and/or Hezi Eliyahu or any other agent of Israel pursuant to the investigation of Mr. Salah.

22. All documentation generated pursuant to the interrogation of other detainees questioned by Abu Hassan, Nadav, Chaim/Chayim, Abu Razi/Rahzi/Ghazi, Dani, Majidi, Carmel/Carmi, Benny, Cohen, Abu Daoud, Victor, Tal, Arik, Itzik, Meron Suleyman, and/or Hezi Eliyahu or any other agent of Israel pursuant to the investigation of Mr. Salah, including but not limited not memoranda, statements, electronic recordings, property inventories, polygraph examinations, and results of photographic arrays.

23. The entire case and/or investigatory file and/or any and all documentation of any complaint of mistreatment and/or abuse made by Mr. Salah in Israel regarding his treatment by any agent of Israel.

24. All guidelines, procedures, and/or documentation regarding the manner, process, and/or procedures that "special investigators" or any other individuals are to employ and/or utilize in the investigation, evaluation, and review of complaints of interrogation misconduct by detainees against agents of Israel.

25. All documentation reflecting the identity of individuals from whom information was obtained that was deemed to confirm or corroborate information allegedly provided by Mr. Salah to his interrogators, which includes but is not limited to his interrogation by GSS agents and officials, police, soldiers, and "birds", speech elicitors, or "medovevim" in Ramallah, Hebron, and/or other any other location.

26. Document identified as "manuscript" and marked "Y.O. 4 March 1993" by Yossi Ohayun at the Hebron interrogation facility pursuant to his interrogation of Dar Suleyman on 3-1-93 at 09:45.

27. The identity and agency/governmental affiliation of each and every individual responsible for "decoding" the alleged statement of Mr. Salah, dated March 18, 1993.

28. All documentary evidence alleged to link Mr. Salah to terrorist attacks carried out in Hebron and reflected in the amended military indictment, paragraphs 7 a, b, and c or 7 I, II, and III.

29. All photographs taken of Mr. Salah during the course of his arrest, interrogation, and detention.

30. Any and all documentation, recorded or otherwise, of any telephone calls made by Mr. Salah during the course of his interrogation and detention.

31. The handwritten document/agreement alleged to have been written by Mr. Salah in Arabic regarding the location of the soldier Sa'adon's body.

4

32.     All documentation reflecting any assistance or information received by agents of Israel from any branch or department of the United States government related to Mr. Salah prior to January 2, 1995, including but not limited to information maintained or generated by FBI agent Robert Wright, John Vincent, and other agents involved in operation Vulgar Betrayal.

33.     All documentation reflecting any assistance or information received by agents of Israel from any public or private organization or entity in the United States related to Mr. Salah prior to January 2, 1995.

34.     All documentation, including but not limited to phone records, of intelligence information about telephone calls made by Hamas activists to Mr. Salah in the United States as testified to by GSS interrogator Cohen on August 29, 1994 at the military tribunal in Israel.

35.     Documentation reflecting the identity of all individuals responsible for creating a written, printed, electronic, digital, or other transcription and/or recording of all proceedings pertaining to Mr. Salah before the military tribunal in Israel.

36.     All documentation reflecting the guidelines which govern the transcription and/or recording - written, printed, electronic, digital, or other - of proceedings held before military tribunals in Israel.

37.     All documentation regarding the polygraph examination administered to Mr. Salah during his interrogation and detention, including but not limited to all questions asked, answers recorded or otherwise memorialized, and determinations/findings/results.[1]

38.     All documentation reflecting the identity of all individuals who took part in the decision to administer a polygraph examination to Mr. Salah, who administered the polygraph, who determined the results, and/or who were present in any capacity during the examination and/or evaluation of results.

39.     Any and all documentation related to any visit between Mr. Salah and any medical personnel during the course of his detention and interrogation.

---

[1] We understand from your letter of 10-7-05 that Israel cannot find the "results" of the polygraph examination administered to Mr. Salah. We do, however, persist in our request for all other documentation associated with the polygraph examination, to wit: the questions asked and all answers in any way recorded or memorialized. Additionally, we are still requesting the identity of all persons associated with the administration or evaluation of the polygraph examination.

40. Any and all photographs shown to Mr. Salah during the course of his interrogation as well as any documentation or reports memorializing the results of photographic arrays shown to Mr. Salah.

41. Any and all documentation of photographic arrays shown to other detainees or individuals in which Mr. Salah's photograph was included as well as all documentation of the results of such photographic arrays.

42. All documentation of the "morning meetings" and/or "staff meetings" that took place regarding the interrogation of Mr. Salah as testified to by Abu Razi at the sub-trial in Israel. *See* Tr. at 316, 318.

43. Any and all photographs, videotapes, maps, drawings, or graphic documentation depicting the inside of any interrogation facility, interrogation room, cell, holding area, housing area, hallway, "waiting" area, or other location where Mr. Salah was held at any time in Ramallah, Hebron, and/or any other location.

44. All documentation of "periodic evaluations" and the "determination of desired directions for the interrogation," which contain "directions and stages of the investigation" of Mr. Salah which are contained in the military prosecutor's "information collection pages" and which were not produced at the military tribunal in Israel. *See* Tr. at 90.

45. Any and all documentation reflecting any attorney visit with Mr. Salah from the time of his arrest on January 25, 1993 until January 2, 1995, including but not limited to visits with Achlam Hadad and Avigdor Feldman.

46. Any press statements, documentation, or record of information provided to any press agency by any individual affiliated with any agency or governmental branch or department of Israel with regard to the arrest, investigation, interrogation, or prosecution of Mr. Salah in Israel in 1993.

47. All documentation reflecting the identity of all agents of Israel who played any role in the planning, execution, or debriefing of the "birds," "speech elicitors," or "medovevim" utilized in Mr. Salah's interrogation in Ramallah, Hebron, and/or any other location. Please note that this request includes the identity of all "birds," speech elicitors, or "medovevim" used in Mr. Salah's case.

48. The complete case files for all "birds," speech elicitors, or "medovevim" used in Mr. Salah's case, in Ramallah, Hebron, and/or any other location, including but not limited to a complete criminal history/background check for each.

49. Any and all documentation, memoranda, or reports related to the planning, execution, and/or debriefing of the "birds", speech elicitors, or "medovevim" utilized during the course of Mr. Salah's interrogation in Ramallah, Hebron, and/or any other location, including but not limited to the "progress reports" prepared by GSS interrogators and the

6

"birds", speech elicitors, or "medovevim," as well as any handwritten documents that were presented by the "birds" to Mr. Salah during their interaction with him.

50. Any and all memos and/or documentation produced by interrogator Cohen related to the investigation and interrogation of Mr. Salah.

51. Any and all memos and/or documentation produced by interrogator Chaim/Chayim related to the investigation and interrogation of Mr. Salah.

52. Any and all electronic recordings of any communication between Mr. Salah and the "birds," speech elicitors, or "medovevim" in Ramallah, Hebron, and/or any other location.

53. The identity of all detainees interrogated during calendar years 1992, 1993, and 1994 by the same "birds," "speech elicitors," or "medovevim" who were utilized in the interrogation of Mr. Salah.

54. Documentation reflecting any payment, promise of payment, favor, benefit, advantage, or promise of any kind to any of the "birds," speech elicitors, or "medovevim" in Ramallah, Hebron, and/or any other location in exchange for their service in Mr. Salah's case.

55. Any and all documentation or guidelines related to the GSS policy or practice of using "birds," "speech elicitor gambits," or "medovevim" for interrogative purposes.

56. All documentation, including but not limited to statements and reports of other individuals and detainees alleged to have corroborated any statement allegedly written by Mr. Salah for the "birds," "speech elicitors," or "medovevim." *See* Tr. at 122.

57. Any and all GSS guidelines pursuant to which Mr. Salah was interrogated.

58. Any and all documentation reflecting GSS guidelines for interrogation, including but not limited to the use of hooding, handcuffs, shackles or other restraints, extreme temperature exposure, small chairs, use and type of cells, including but not limited to the "waiting cell," lighting, sound/music, sleep deprivation, hours of interrogation, "waiting" status, attorney visits, physical pressure or abuse, including rape, nudity, nude photographing, and/or denial of toilet use, edible food, bedding, or weather-appropriate clothing.

59. Any and all written or recorded documentation prior to 1993 reflecting specific GSS guidelines for the interrogation of American citizens and/or which reflect their exemption from general GSS interrogative practices.

60. Any and all documentation of a directive issued by Chaim/Chayim or any other command-level agent of the GSS that a hood must not be placed on Mr. Salah and/or that Mr. Salah would not be required to sit in the "small chair" and/or that Mr. Salah not be handcuffed during his interrogation and/or reflecting any "special instructions" for the interrogation or treatment of Mr. Salah.

7

61.    Any and all investigative and/or interrogative materials which were not produced by the prosecuting authority in Israel at or before the sub-trial pursuant to any claim of confidentiality, including a claim under the certificate of confidentiality with regard to the methodology of the GSS, the Order Regulating Security Issues, the Decree on Security Instructions, the Evidence Ordinance, and/or any GSS policy or procedure.

62.    Any and all documentation, including but not limited to guidelines, procedures, and instructions that govern the "collection of statements" by police officers as testified to by Meron Suleyman at the sub-trial in Israel.

63.    Any and all written guidelines, directives, orders, or other documentation which govern the conduct of Israeli soldiers in the execution of arrest warrants and/or transport orders.

64.    All documentation reflecting the identity and agency/governmental affiliation of each and every individual in Israel and in the United States who participated in the decision/determination to allow Judith Miller to observe Mr. Salah's interrogation.

65.    Any and all documentation reflecting or related to the decision allow Judith Miller to observe Mr. Salah's interrogation and any documentation created or maintained by any agent of Israel or the United States government pursuant to her observation of Mr. Salah's interrogation.

66.    Any and all documentation produced or maintained on Judith Miller by any branch, department, agency, or agent of Israel or the United States.

67.    Any and all documentation produced or maintained by any agent or official of any branch or department of the United States government or Israel related to Mr. Salah's 1992 visit to the middle east.

68.    Any and all documentation produced by any agent or official of any branch or department of the United States government or Israel pursuant to any investigation or surveillance of Mr. Salah and/or the Bridgeview Mosque prior to 1993, including but not limited to electronic surveillance, investigative reports, memoranda, notes, and records of warrants sought and/or obtained. This request includes information maintained and/or generated by FBI agents Robert Wright, John Vincent, and other agents involved in operation Vulgar Betrayal.

69.    Any and all documentation reflecting any communication - written, electronic, digital, verbal, or otherwise - between any agency or governmental branch or department of Israel and any agency or governmental branch or department of the United States government regarding the investigation, surveillance, arrest, detention, interrogation, or prosecution of Mr. Salah in 1993.

70. Any and all documentation reflecting any communication - written, electronic, digital, verbal, or otherwise - between any agency, branch, or department of Israel and any agency, branch, or department of the United States government regarding Mr. Salah prior to 1993.

71. All documentation - written, electronic, digital, verbal, or otherwise - reflecting any cooperative law enforcement activities and/or efforts between any agency, branch, or department of Israel and any agency, branch, or department of the United States government which reflect cooperative law enforcement activities and/or efforts.

72. Any and all documentation of complaints of abuse, mistreatment, or torture of detainees by Abu Hassan, Nadav, Chaim/Chayim, Abu Razi/Rahzi/Ghazi, Dani, Carmel/Carmi, Benny, Majidi, Cohen, Abu Daoud, Victor, Tal, Arik, Itzik, Meron Suleyman, and/or Hezi Eliyahu, including but not limited to documentation reflecting the identity of complainants and their last known residence or whereabouts.

Sincerely,


Michael E. Deutsch

9

# PEOPLE'S LAW OFFICE

**1180 N. Milwaukee**
**Chicago, Illinois, 60622**
**(773) 235-0070**
**Fax (773) 235-6699**

PeoplesLaw@aol.com

Michael E. Deutsch
Ben H. Elson
Janine L. Hoft
Joey L. Mogul
John L. Stainthorp
Jan Susler
G. Flint Taylor, Jr.
Erica L. Thompson

*Of Counsel*
Jeffrey H. Haas

October 27, 2005

Joseph Ferguson
Assistant United States Attorney
219 South Dearborn Street
5th Floor
Chicago, Illinois 60604

Hand Delivery

RE:  *United States v. Marzook, et al.*, No. 03 CR 978

Dear Counsel:

What follows is a list of additional relevant discovery necessary for proceeding with a hearing on Mr. Salah's motion to suppress. Again, please note that unless otherwise specifically stated, all requests contained herein are requesting documentation in the possession of both the United States and Israel. To the extent that any of these requests is more specific or particularized than a previous request in our letter to you of October 17th, please be advised that we maintain our position that we are entitled to all the requested information and have merely referenced specific documents known to exist for your convenience.

1.  The "attached report" to the search warrant for the YMCA hotel, East Jerusalem, as reflected in Ezra Agassi's application to the Magistrate's Court of Jerusalem.

2.  The "attached report" to the search warrant for Technicomp Computers, Ltd. on El-Zaharah Street in East Jerusalem.

3.  All items seized pursuant to any search warrant executed on the YMCA, Technicomp Computers, Ltd., or any other location associated with the investigation and interrogation of Mr. Salah.

1

601 MBE

4. Any and all documentation reflecting the identity of all individuals responsible for the preparation of the content of the "interrogation logs".

5. The entire case files and all documentation produced and/or maintained on the following individuals, including but not limited to any indictments or documents reflecting the disposition of their cases: Bassam Mussa, Muhammad Jarad, Marwan Hawajah, Adel Awadallah, Muhammad Al Najar, Mussa Dudin, Rabhi Abu Awad, Dar Sulyeman/Al Arouri, Ahmed Ibrahim Ramhi, and Waeel Banat.

6. The "announcement" and "manuscript" that were seized and marked "MM 23 February 1993." *See* Madiuni Report on Awadalla of 2-23-93 at 11:45.

7. The "manuscript" seized by Hashem Halabi during his interrogation of Dar Suleyman/Al Arouri on 1-27-93 at 11:20. *See* Halabi Report on Dar Suleyman of 1-27-93 at 11:20.

8. The "manuscript" seized and marked, "Y.O. 15 April 1993" by Yossi Ohayun during his interrogation of Mussa Dudin on 4-15-93 at 08:40. *See* Ohayun Report on Dudin of 4-15-93 at 08:40.

9. The "manuscript" and "announcement" seized and marked "M.S. 16 February 1993" by Meron Suleyman during his interrogation of Marwan Hawaja on 2-16-93 at 11:10. *See* Suleyman Report on Hawaja of 2-26-93 at 11:10.

10. Any and all documentation reflecting the circumstances under which the "manuscripts" set forth in Request Nos. 6-9 *supra* and in Request No. 26 in our 10-17-95 letter were produced. If these "manuscripts" were produced pursuant to interrogation by any agent of Israel, including but not limited to "birds," speech elicitors, or "medovevim," please produce all documentation reflecting the identity of each such agent and all documentation produced by them that is related to the "manuscript."

11. Samiah Mansour's interrogation reports, memoranda, and/or other documentation for Bassam Mussa dated 1-30-93 and 1-31-93.

12. All documentation and/or physical evidence of any kind which is alleged to have belonged to or been in the possession of Mr. Salah prior to 1995.

13. All documentation reflecting any request for an attorney visit, consular visit, medical visit, or any other visit to Mr. Salah from January 25, 1993 until January 2, 1995.

14. All documentation reflecting contact or communication between any agent of Israel and Achlam Hadad and/or Avigdor Feldman during their representation of Mr. Salah.

15. Any and all documentation reflecting the identity of all individuals invited to observe or

2

who did observe any part of Mr. Salah's interrogation.

16. All documentation reflecting the identity of all persons responsible for the decision or who took part in the decision to invite any observer or allow any observation of any part of Mr. Salah's interrogation.

17. All memos, recordings, and/or other documentation, and any translations thereof, provided to or by Judith Miller or any other "observer" of Mr. Salah's interrogation by or to GSS agents or other agents of Israel.

18. All documentation reflecting any communication between any agent of Israel and any member of the American press regarding Mr. Salah's arrest, interrogation, detention from January 1, 1993 to January 2, 1995.

19. All indictments - amended or otherwise - of Mr. Salah in Sumaria, Judea, and Gaza.

20. Any and all documentation produced or maintained by any branch, department, or agency of the U.S. government or Israel regarding Mohammad Dawfiq Omar Hajja, including but not limited to surveillance reports, investigatory reports, arrest reports, detention reports, interrogation reports, memoranda, and logs, search warrants, "manuscripts" or statements, property or evidence inventories, case files, and documentation of case disposition.

21. Documentation reflecting the last known telephone number and address and/or whereabouts of Anwar Hamden and Mohammad Dawfiq Omar Hajja.

22. Documentation reflecting the last known telephone number and address and/or whereabouts of Bassam Mussa, Marwan Hawajah, Muhammad Al Najar, Mussa Dudin, Rabhi Abu Awad, Dar Sulyeman/Al Arouri, Ahmed Ibrahim Ramhi, and Waeel Banat.

23. The "archives" and "cassette tapes of collaborator interrogation" allegedly sent to Bassam Mussa and thereafter seized. *See* Mansour Report of 2-22-93 at 09:46.

24. The "Police Comptroller's Report on Israeli National Police Incidents of Brutality." *See* Gov't Bates Stamp No. 09509.

25. Transcript of the Awadalla subtrial and trial and all documentation on Fares Abad.

26. The entire court file for Case No. 4220/93, PA 542/93 (Muhammad Jarad).

27. All records and/or documentation of all calls made from "the call center" by Mr. Salah and/or any other individual detained pursuant to Mr. Salah's arrest or information allegedly obtained during the course of his interrogation.

3

28. Any and all documentation produced or maintained by any branch, department, or agency of the U.S. government or Israel regarding Anwar Hamden or Mohammad Dawfiq Omar Hajja, including but not limited to surveillance reports, investigatory reports, arrest reports, detention reports, interrogation reports, memoranda, and logs, search warrants, "manuscripts" or statements, property or evidence inventories, the entire case file, and documentation of case disposition.

29. All documentation associated with a claim of mistreatment by Mohammad Dawfiq Omar Hajja at the hands of any agent of Israel.

30. Documentation which reflects the full name, employee number, and present address of all embassy/consular officials, assistants, or otherwise who met with, communicated with, or observed Mr. Salah at any location. Please advise whether any embassy/consular documentation has been withheld under a claim of privilege and identify that document as requested in our letter of October 17, 2005.

In addition, please produce a record of all material stricken and/or redacted from any log entry, memo, or any other documentation, recording, or transcription produced to date and in the future. Please indicate the country and agency affiliation of the individual responsible for the redaction or stricken material. Also, to the extent that any documentation requested herein or in our letter of October 17, 2005 has been destroyed pursuant to a retention policy or otherwise, please indicate the name of the person responsible for destruction, the agency or department affiliation of the individual, the date of destruction, and the policy pursuant to which the documentation was destroyed.

Finally, we reiterate our request for you to provide us with a list of Mr. Salah's statements or other evidence allegedly seized from him that you intend to offer in evidence at the criminal trial. Moreover, we request that you provide us with a list of witnesses that you intend to call at the motion to suppress hearing. I look forward to meeting with you at your offices next Friday at 11:30 a.m. and thank you in advance for your prompt attention to these matters.

Sincerely,

Michael E. Deutsch

4

# PEOPLE'S LAW OFFICE

1180 N. Milwaukee
Chicago, Illinois, 60622
(773) 235-0070
Fax (773) 235-6699

PeoplesLaw@aol.com

Michael E. Deutsch
Ben H. Elson
Janine L. Hoft
Joey L. Mogul
John L. Stainthorp
Jan Susler
G. Flint Taylor, Jr.
Erica L. Thompson

*Of Counsel*
Jeffrey H. Haas

November 4, 2005

Joseph Ferguson
Assistant United States Attorney
219 South Dearborn Street
5th Floor
Chicago, Illinois 60604

Hand Delivery

RE:  *United States v. Marzook, et al.*, No. 03 CR 978

Dear Counsel:

What follows are additional requests for discovery necessary for proceeding with a hearing on the motion to suppress:

1.     All "Report of Contact" forms (form no. SSA-5002) and/or handwritten notes filled out by United States Consulate or American Embassy personnel pursuant to any contact with Mr. Salah.

2.     All documentation reflecting any contact or communication between Majed Razek on 1-31-93, including but not limited to a Report of Contact form or handwritten notes.

3.     The entire contents of the file reviewed by Kathleen Riley pursuant to her conversations with Baruch Weiss, United States Department of Justice, on 1-16-96, 1-17-96, or any other time. *See* Gvt 09421.

4.     All documentation reflecting the receipt for $30,000 from the American Consulate in Jerusalem alleged to have been found on either Mr. Salah, Mr. Jarad, or Mr. Omar.

5.     All documentation of communication between State Department's Daniel Kurtzer and Israel's Stein.

® ⬭ 601 MBE

6. Any and all documentation produced or maintained by the United States Department of Justice regarding an investigation and/or evaluation of Mr. Salah's allegations of mistreatment by Israeli agents and/or coerced statements, including but not limited to investigations and evaluations conducted by Baruch Weiss.

7. All documentation produced or maintained by any branch or department of the United States government and/or Israel associated with claims of mistreatment by Israeli agents against American citizens Anwar Hamden, Faisl Ismail Awadallah, Abdelaziz Munjed, Majed Mokles Hamdalla, and Rawhi Mohammed.

8. All documentation produced or maintained by Israel associated with claims of mistreatment by Israel agents against Bassem Tamimi, Nawwaf Al Qaisi, and Assam Mahmud Faruk.

9. All documentation produced or maintained by any branch or department of the United States government and/or Israel associated with the killing of Dr. Albert Glock.

10. All documentation associated with the employment, retention, or utilization of "Tzior," Abu Ghazal (Ghazi), or any other Israeli agent to operate for, with, or on behalf of the FBI or any other department, branch, or agency of the United States government from 1992 to the present.

11. All documentation generated by the United States Consulate in Jerusalem, the American Embassy in Tel Aviv, and the State Department regarding the arrest, interrogation, and detention of Mr. Salah, Mr. Jarad, and Mr. Omar.

Finally, we reiterate our request for a list of the statements and evidence that you intend to offer against Mr. Salah at the trial of this matter. Thank you in advance for your cooperation.

Sincerely,


Michael E. Deutsch

# PEOPLE'S LAW OFFICE

**1180 N. Milwaukee**
**Chicago, Illinois, 60622**
**(773) 235-0070**
**Fax (773) 235-6699**

PeoplesLaw@aol.com

Michael E. Deutsch
Ben H. Elson
Janine L. Hoft
Joey L. Mogul
John L. Stainthorp
Jan Susler
G. Flint Taylor, Jr.
Erica L. Thompson

*Of Counsel*
Jeffrey H. Haas

November 7, 2005

Joseph Ferguson
Assistant United States Attorney
219 South Dearborn Street                          Hand Delivery
5th Floor
Chicago, Illinois 60604

RE:  *United States v. Marzook, et al.*, No. 03 CR 978

Dear Counsel,

Pursuant to our "meet and confer" meeting on Friday, November 4, 2005 and your request that we restate and combine all our requests which specifically concern the interrogation of Mr. Salah, I am sending you this letter.

A.  Prior to restating these requests I want to memorialize the categories of requests that you indicated are not in possession of and which you decline to request that the government of Israel produce:

1.  All documents pertinent to the basis for the arrest of Mr. Salah, including all documents authored by agents of the government of Israel, the United States government, and any communication between the two governments.

2.  All documents pertaining to the arrest and interrogation of other subjects who were part of or related to the Salah investigation and interrogation.

3.  All documents authored by the government of Israel or the United States pertaining to the role of Judith Miller in the interrogation of Mr. Salah.

1

601 MBE

4.     All requests for documents authored by employees of the State Department and Embassy and Consulate offices in Tel Aviv and Jerusalem pertinent to the arrest and interrogation of Mr. Salah. You indicated that the government has produced what it intends to produce, and we should make additional requests through the Freedom of Information Act.

B.     With regard to the following documents, you indicated that you would ask the government of Israel whether or not such documents exist, and if they do, whether or not they will produce them:

1.     Documents pertaining to the circumstances of Mr. Salah arrest on January 25, 1993 and his transport to the Ramallah interrogation center, including but not limited to the names of those involved in the arrest and transport.

2.     Memoranda written by GSS interrogators concerning the use of the "birds" in the course of the interrogation of Mr. Salah.

3.     Copies of all physical evidence alleged to have been seized from Mr. Salah, his hotel room, or any area deemed to have been under his control or possession.

4.     All documentation produced or maintained by Israel associated with claims of mistreatment by Israel agents against Bassem Tamimi, Nawwaf Al Qaisi, and Assam Mahmud Faruk. [These are people who claim to have been tortured or otherwise mistreated by the same GSS agents who interrogated Mr. Salah.]

C.     Also you agreed to investigate the existence of additional Justice Department files regarding an investigation and/or evaluation of Mr. Salah's allegations of mistreatment by Israeli agents and/or coerced statements, including but not limited to investigations and evaluations conducted by Baruch Weiss.

D.     You also agreed to include the names of Anwar Hamden, Faisl Ismail Awadallah, Abdelaziz Munjed, Majed Mokles Hamdalla, and Rawhi Mohammed in the list provided to the State Department, Embassy, and Consulate Offices of Americans with claims of mistreatment by Israeli agents.

## E. RESTATED REQUEST FOR DOCUMENTS CONCERNING THE INTERROGATION OF MR. SALAH

1.     Documents related to the processing of Mr. Salah after his arrest, including but not limited to personal and property processing reports, intake forms, fingerprint sheets, scan reports, and photographs. (Letter of 10/17/05, No. 9)

2

2.    Documentation reflecting the identity of any Israeli agent who came into contact with Mr. Salah during the course of his arrest, interrogation, and detention, including but not limited to GSS agents and officials, police officers, soldiers, and medical personnel. (Letter of 10/17/05, No. 10)

3.    Any and all memos and/or documentation produced by any Israeli agent related to the investigation and interrogation of Mr. Salah. (Letter of 10/17/05, No. 11)

4.    Documentation reflecting the identity of any and all other persons who met with, visited, or communicated with Mr. Salah from January 25, 1993 until January 2, 1995, including but not limited to rosters, logs, or registers. (Letter of 10/17/05, No. 12)

5.    Documentation, including but not limited to "waiting cell," interrogation room, and cell assignment logs reflecting Mr. Salah's movement within and outside of the Ramallah, Hebron, and/or other military interrogation, detention, and/or other facility. (Letter of 10/17/05, No. 13)

6.    All videotapes, audio tapes, or other electronic recordings of Mr. Salah recorded at any time during his interrogation or detention in Ramallah, Hebron, or any other location. (Letter of 10/17/05, No. 14)

7.    Documentation reflecting statements made or information allegedly obtained from other detainees, arrestees and/or individuals, reports, or other documents alleged to have been shown by any agent of Israel to Mr. Salah at any point during the course of his interrogation. (Letter of 10/17/05, No. 15)

8.    The complete case files for Mr. Salah, emanating from the Gaza Strip, the Judea or Samaria regions. *See* Porat Submission to Military Tribunal of 7-15-93. (Letter of 10/17/05, No. 17)

9.    Documents reflecting the identity of arrestees, detainees, or individuals brought into the presence of Mr. Salah during his interrogation by Israeli agents for the purpose of furthering the interrogation of Mr. Salah. (Letter of 10/17/05, No. 18)

10.   All documentation produced pursuant to and/or reflecting an interrogation or other conversation between Mr. Salah and GSS interrogators Nadav and Chaim/Chayim or any other agent of Israel in June, July, or August of 1993. (Letter of 10/17/05, No. 19)

11.   All documentation reflecting the identity of individuals arrested or for whom an arrest warrant was sought and/or obtained based upon information allegedly obtained from Mr. Salah during the course of his interrogation and all documentation reflecting the identity of the Israeli agent(s) responsible for the interrogation of these detained individuals, and all documentation generated by these agents pursuant to their interrogation of the detained

3

individuals. (Letter of 10/17/05, No. 20)

12. The entire case and/or investigatory file and/or any and all documentation of any complaint of mistreatment and/or abuse made by Mr. Salah in Israel regarding his treatment by any agent of Israel. (Letter of 10/17/05, No. 23)

13. The identity and agency/governmental affiliation of each and every individual responsible for "decoding" the alleged statement of Mr. Salah, dated March 18, 1993. (Letter of 10/17/05, No. 27)

14. All photographs taken of Mr. Salah during the course of his arrest, interrogation, and detention. (Letter of 10/17/05, No. 29)

15. Any and all documentation, recorded or otherwise, of any telephone calls made by Mr. Salah during the course of his interrogation and detention. (Letter of 10/17/05, No. 30)

16. The handwritten document/agreement alleged to have been written by Mr. Salah in Arabic regarding the location of the soldier Sa'adon's body. (Letter of 10/17/05, No. 31)

17. Documentation reflecting the identity of all individuals responsible for creating a written, printed, electronic, digital, or other transcription and/or recording of all proceedings pertaining to Mr. Salah before the military tribunal in Israel. (Letter of 10/17/05, No. 35)

18. Documentation regarding the polygraph examination administered to Mr. Salah during his interrogation and detention, including but not limited to all questions asked, answers recorded or otherwise memorialized, and determinations/findings/results. And documentation reflecting the identity of all individuals who took part in the decision to administer a polygraph examination to Mr. Salah, who administered the polygraph, who determined the results, and/or who were present in any capacity during the examination and/or evaluation of results. (Letter of 10/17/05, Nos. 37 & 38). We acknowledge your response regarding the results of the polygraph examination contained in your letter of 10-7-05. Additionally, please provide us with any documents reflecting the chain of custody of the missing polygraph results.

19. Any and all documentation related to any visit between Mr. Salah and any medical personnel during the course of his detention and interrogation. (Letter of 10/17/05, No. 39)

20. Any and all photographs shown to Mr. Salah during the course of his interrogation as well as any documentation or reports memorializing the results of photographic arrays shown to Mr. Salah. (Letter of 10/17/05, No. 40)

21. All documentation of the "morning meetings" and/or "staff meetings" that took place

4

regarding the interrogation of Mr. Salah as testified to by Abu Razi at the sub-trial in Israel. *See* Tr. at 316, 318. (Letter of 10/17/05, No. 42)

22.   Any and all photographs, videotapes, maps, drawings, or graphic documentation depicting the inside of any interrogation facility, interrogation room, cell, holding area, housing area, hallway, "waiting" area, or other location where Mr. Salah was held at any time in Ramallah, Hebron, and/or any other location. (Letter of 10/17/05, No. 43)

23.   All documentation of "periodic evaluations" and the "determination of desired directions for the interrogation," which contain "directions and stages of the investigation" of Mr. Salah which are contained in the military prosecutor's "information collection pages" and which were not produced at the military tribunal in Israel. *See* Tr. at 90. (Letter of 10/17/05, No. 44)

24.   Any and all documentation reflecting any attorney visit with Mr. Salah from the time of his arrest on January 25, 1993 until January 2, 1995, including but not limited to visits with Achlam Hadad and Avigdor Feldman. (Letter of 10/17/05, No. 45)

25.   Any press statements, documentation, or record of information provided to any press agency by any individual affiliated with any agency or governmental branch or department of Israel with regard to the arrest, investigation, interrogation, or prosecution of Mr. Salah in Israel in 1993. (Letter of 10/17/05, No. 46)

26.   All documentation reflecting the identity of all agents of Israel who played any role in the planning, execution, or debriefing of the "birds," "speech elicitors," or "medovevim" utilized in Mr. Salah's interrogation in Ramallah, Hebron, and/or any other location. Please note that this request includes the identity of all "birds," speech elicitors, or "medovevim" used in Mr. Salah's case. (Letter of 10/17/05, No. 47)

27.   The complete case files for all "birds," speech elicitors, or "medovevim" used in Mr. Salah's case, in Ramallah, Hebron, and/or any other location, including but not limited to a complete criminal history/background check for each. (Letter of 10/17/05, No. 48)

28.   Any and all documentation, memoranda, or reports related to the planning, execution, and/or debriefing of the "birds", speech elicitors, or "medovevim" utilized during the course of Mr. Salah's interrogation in Ramallah, Hebron, and/or any other location, including but not limited to the "progress reports" prepared by GSS interrogators and the "birds", speech elicitors, or "medovevim," as well as any handwritten documents that were presented by the "birds" to Mr. Salah during their interaction with him. (Letter of 10/17/05, No. 49)

29.   Any and all memos and/or documentation produced by interrogator Cohen related to the investigation and interrogation of Mr. Salah. (Letter of 10/17/05, No. 50). If you know of the existence of any such memoranda or documentation that have not been produced

5

by Israel, please so indicate.

30. Any and all memos and/or documentation produced by interrogator Chaim/Chayim related to the investigation and interrogation of Mr. Salah. (Letter of 10/17/05, No. 51). If you know of the existence of any such memoranda or documentation that have not been produced by Israel, please so indicate.

31. Any and all electronic recordings of any communication between Mr. Salah and the "birds," speech elicitors, or "medovevim" in Ramallah, Hebron, and/or any other location. (Letter of 10/17/05, No. 52)

32. Documentation reflecting any payment, promise of payment, favor, benefit, advantage, or promise of any kind to any of the "birds," speech elicitors, or "medovevim" in Ramallah, Hebron, and/or any other location in exchange for their service in Mr. Salah's case. (Letter of 10/17/05, No. 54)

33. Documentation of a directive issued by Chaim/Chayim or any other command-level agent of the GSS that a hood must not be placed on Mr. Salah and/or that Mr. Salah would not be required to sit in the "small chair" and/or that Mr. Salah not be handcuffed during his interrogation and/or reflecting any "special instructions" for the interrogation or treatment of Mr. Salah. (Letter of 10/17/05, No. 60)

34. Any and all investigative and/or interrogative materials which were not produced by the prosecuting authority in Israel at or before the sub-trial pursuant to any claim of confidentiality, including a claim under the certificate of confidentiality with regard to the methodology of the GSS, the Order Regulating Security Issues, the Decree on Security Instructions, the Evidence Ordinance, and/or any GSS policy or procedure. (Letter of 10/17/05, No. 61)

35. Any and all documentation produced or maintained by any agent or official of any branch or department of the United States government or Israel related to Mr. Salah's 1992 visit to the middle east. (Letter of 10/17/05, No. 67)

36. The "attached report" to the search warrant for the YMCA hotel, East Jerusalem, as reflected in Ezra Agassi's application to the Magistrate's Court of Jerusalem. (Letter of 10/27/05, No. 1)

37. The "attached report" to the search warrant for Technicomp Computers, Ltd. on El-Zaharah Street in East Jerusalem. (Letter of 10/27/05, No. 2)

38. All items seized pursuant to any search warrant executed on the YMCA, Technicomp Computers, Ltd., or any other location associated with the investigation and interrogation of Mr. Salah. (Letter of 10/27/05, No. 3)

6

39. Any and all documentation reflecting the identity of all individuals responsible for the preparation of the content of the "interrogation logs". (Letter of 10/27/05, No. 4)

40. All documentation and/or physical evidence of any kind which is alleged to have belonged to or been in the possession of Mr. Salah prior to 1995. (Letter of 10/27/05, No. 12)

41. All documentation reflecting any request for an attorney visit, consular visit, medical visit, or any other visit to Mr. Salah from January 25, 1993 until January 2, 1995. (Letter of 10/27/05, No. 13)

42. All documentation reflecting contact or communication between any agent of Israel and Achlam Hadad and/or Avigdor Feldman during their representation of Mr. Salah. (Letter of 10/27/05, No. 14)

43. Any and all documentation reflecting the identity of all individuals invited to observe or who did observe any part of Mr. Salah's interrogation. (Letter of 10/27/05, No. 15)

44. All indictments - amended or otherwise - of Mr. Salah in Sumaria, Judea, and Gaza. (Letter of 10/27/05, No. 19)

45. The "Police Comptroller's Report on Israeli National Police Incidents of Brutality." *See* Gov't Bates Stamp No. 09509. (Letter of 10/27/05, No. 24)

46. All records and/or documentation of all calls made from "the call center" by Mr. Salah and/or any other individual detained pursuant to Mr. Salah's arrest or information allegedly obtained during the course of his interrogation. (Letter of 10/27/05, No. 27)

## F. OTHER ITEMS REQUESTED

Please be advised that we requested several policy and guideline documents, and it is not clear whether or not you are agreeing to formally ask that the government of Israel produce this documentation. Specifically we are asking for the following policy guideline statements:

1. Guidelines and procedures for the investigation, evaluation and review of complaints of abuse against detainees. (Letter of 10/17/05, No. 24)

2. Guidelines which govern the transcription and recording of military tribunal proceedings. (Letter of 10/17/05, No. 36)

3. Guidelines for use of birds. (Letter of 10/17/05, No. 55)

4. Guidelines pursuant to which Mr. Salah was interrogated. (Letter of 10/17/05, No. 57)

5. Specific guidelines for use of hooding, small chairs, refrigerator cell, sleep deprivation,

7

sensory deprivation, *et al.* (Letter of 10/17/05, No. 58)

6. Interrogation guidelines for U.S. citizens. (Letter of 10/17/05, No. 59)

7. Collection of statement guidelines. (Letter of 10/17/05, No. 62)

8. Execution of arrests and transport guidelines. (Letter of 10/17/05, No. 63)

Finally we ask that you provide us with the full name, employee number, and present address of all embassy/consular officials, assistants, or otherwise who met with, communicated with, or observed Mr. Salah at any location. (Letter of 10/27/05, No. 30)

Also, we assume that you have declined to produce or request from Israel any matter not covered by this letter that appears in our original letters. We thus understand those matters to be ripe for resolution by the Court. Please get back to me as soon as possible, so that we can prepare a written motion to the Court without delay.

Sincerely,


Michael E. Deutsch

.

8



# U.S. Department of Justice

*United States Attorney*
*Northern District of Illinois*

---

*Joseph M. Ferguson*
*Assistant United States Attorney*

*Everett McKinley Dirksen Federal Building*
*219 South Dearborn Street*
*Room 5000*
*Chicago, Illinois 60604*

*(312) 353-1414*
*FAX: (312) 353-4324*

November 17, 2005

*Via U.S. Mail and fax (773) 235-6699*
Michael E. Deutsch
People's Law Office
1180 North Milwaukee Avenue
Chicago, Illinois 60622

*Via U.S. Mail*
Robert Bloom
3355 Richmond
Oakland, CA 94611

Dear Counsel:

This letter is in response to your letters of October 17, October 27, November 4, November 7, and our "meet and confer session on November 4, collectively regarding 113 separately enumerated requests for documents as further reconstituted in your November 7 letter.

As generally discussed during our November 4th meeting, nearly all of the material you seek is not in the possession of the United States government, or any entity that the United States might control or direct. More particularly, most of the materials you seek, to the extent they exist, are in the possession or control of the government of Israel, a foreign sovereign. As we do not possess or otherwise control such materials, we have no capacity and are under no general obligation to produce them to you in discovery.

At numerous junctures, both in private conference and in open court, we have made clear that this office has no authority to and cannot dictate the actions of Government of Israel, including requiring of the production materials in their exclusive possession. We additionally have repeatedly urged you to make formal requests to the Government of Israel, through appropriate legal channels and mechanisms, for the materials you seek. It is our understanding you have not done so. Nevertheless, in recognition of your circumstances and at the request of the court, we have, with respect to some materials you previously requested, made inquiry to appropriate Israeli authorities as to the existence of particular materials sought and will produce such responsive materials as are appropriately discoverable if and when we receive them.

Along the same lines, you have requested that this office produce documents that are in the possession and control of the Department of State including, among others, documents pertaining to actions taken by that agency with respect to your own client. It is our understanding (and you have acknowledged) that in the year that you have represented Mr. Salah, you similarly have not requested those materials, either formally or informally, from the State Department, including through the filing of a Freedom of Information Act request. Again, at the request of the court, we have directed

Messrs. Deutsch & Bloom
November 17, 2005

a formal request to the State Department for materials *you* are interested in having. As reflected in the foregoing, we have attempted to make reasonable accommodation to you in pursuing certain materials of possible relevance to your defense. Your response to these accommodations has been lengthy lists of demands for more such materials, many of which are patently overbroad, irrelevant and cast in terms that might generously be described as an unfocused fishing expedition. For example, request No. 33 in your October 17th letter requests "All documentation reflecting any assistance or information *received by agents of Israel from any public or private organization or entity in the United States* related to Mr. Salah prior to January 2, 1995." (Emphasis supplied.) Your November 4th letter requests "All documentation of communications between State Department's Daniel Kurtzer and Israeli's Stein." This request contains no limitation or definition on even such basics as time frame or subject matter; it merely asks for every communication between the U.S. Ambassador to Israel and an Israeli counterpart. Moreover, these continuing requests are advanced against the backdrop of a mystifying continuing refusal to take any steps to secure the desired materials on your own. In light of this history, and beyond the present requests addressed below, we will not accommodate future requests to track down materials we do not possess or control.

## November 4 "Meet and Confer"

During our November 4th meeting, a collective effort was made, with varying degrees of success, to break down your enumerated requests into categories. From that process the following positions were reached:

1. The United States agreed to ask the government of Israel to disclose the following:

    i. The individuals who arrested Muhammad Salah and transported him from the Erez, Gaza checkpoint, where he was arrested, to Ramallah and documentation of the arrest and transport;

    ii. Items seized from Muhammad Salah at the time of his arrest at the Erez, Gaza checkpoint and, later, from his East Jerusalem hotel room (with the acknowledged caveat that copies of all such materials known by the United States to exist and previously obtained and have been turned over in discovery);

    iii. Israeli medical records relating to the treatment of Muhammad Salah (with the acknowledged caveat that all such records in the possession of the United States have been previously turned over in discovery);

    iv. Memoranda or notes of meetings with "the Birds" concerning Muhammad Salah;

We further agreed to inquire into the existence of complaints or claims of mistreatment of Bassem Tamimi, Nawaf Al Qaisi and Assam Mahmud Faruk to determine whether the ISA agents

2

11/17/2005 12:02 FAX 312 353 4324 &#x2610;004/006

Messrs. Deutsch & Bloom
November 17, 2005

who interrogated Mr. Salah were the subject of those complaints and further determine whether any adverse findings and/or sanctions were imposed against the agents as a result of such complaints.

2. The United States refused to ask the government of Israel to disclose the following:

   i. Israeli pre-arrest investigation materials and materials that served as the basis for Israel's arrest of Muhammad Salah on January 25, 1993. With respect to this category of materials, the government reiterated its understanding that there are no materials, or information suggestive of a joint venture between the United States and Israel respecting the investigation and arrest of Muhammad Salah;

   ii. Identity of "the Birds" and policies regarding the use of the Birds;

   iii. Materials utilized by Israeli interrogators in questioning Muhammad Salah;

   iv. Reports supporting and attached to Search Warrant for hotel room of Muhammad Salah;

   v. materials from or relating to individuals arrested as part of the Israeli investigation that led to the arrest of Muhammad Salah, including, specifically, documents pertaining to the arrest and interrogation of other subjects who were part of or related to the investigation and interrogation of Muhammad Salah;

   vi. Documents pertaining to the role of a reporter permitted to observe a Salah interrogation session.

3. The United States agreed to request the following additional materials from the United States Department of State:

   i. All consular documents, including those generated by the U.S. Consulate in Jerusalem, the American Embassy in Tel Aviv, and the State Department, relating to the arrest, interrogation and detention of Muhammad Salah.

      (Your November 7th letter reflects that the government refused this request and produced all that it intends to. That is incorrect. We have provided you with the materials in the possession of this office. We agreed to pursue the question of the existence of any possible additional materials, but insisted that you would be better served by filing a specific FOIA request of your own, which should be done for all future materials you might seek from the State Department.)

3

Messrs. Deutsch & Bloom
November 17, 2005

     ii.     Documentation concerning claims or complaints of mistreatment by Israeli agents against American citizens Anwar Hamdan, Faisl Ismail Awadallah, Abdelaziz Munjed, Majed Mokles Hamdalla, and Rawhi Mohammed (this request being a supplement to a prior request for documentation of complaints of mistreatment by other specific Americans detained by Israeli authorities)

Finally, the government agreed to investigate the existence of files reflecting prior investigation by the Justice Department of allegations of mistreatment of Mr. Salah by his Israeli interrogators in obtaining statements from him.

With respect to the items requested in your sequential letters, and with the caveat that discoverable materials in the possession of the United States have been provided in prior discovery tenders, and subject to the above-stated agreements, our position is as follows:

**October 17 Request Items**

The United States will not take further action to obtain and produce the following enumerated items in your October 17, 2005 letter:

Items 1-4, 10-11, 13, 15-18, 20-22, 24-25, 27-28, 31, 33-38, 40-48, 50-51, 53-71

The United States will make inquiry to Israeli authorities as to the existence and possible disclosure of the following items

Items 5-9, 12, 14, 19, 23, 29-30, 39, 49, 52

Further elaboration is required respecting the following enumerated items:

Items: 26

With respect to Item 32, and as previously requested by the Court, the government will continue its pursuit of materials that might bear upon a claim of "joint venture."

With respect to Item 72, the government has previously reported that there exists no systematic way of identifying mere complaints against the Israeli agents identified in this or any other request, and that such materials exist in the files of an agent only in the instance of adverse findings and/or action in response to a complaint, following full investigation. The government will continue to act to meet its *Gigio* and *Brady* obligations with respect to such materials.

**October 27 Requests**

The United States will not take further action to obtain and produce additional the following enumerated items in your October 27, 2005 letter:

4

Messrs. Deutsch & Bloom
November 17, 2005

Items: 1-11, 14-26, 28-29

The United States will make inquiry to Israeli authorities as to the existence and possible disclosure of the following items

Items: 12, 13, 27

With respect to Item 30, the government has agreed to make inquiry to the State Department regarding present contact information for State Department employees who met with Mr. Salah during his period of interrogation. No other information regarding these individuals will be sought on your behalf.

**November 4 Requests**

The United States will not take further action to obtain and produce additional the following enumerated items in your November 4, 2005 letter:

Items: 5, 9-10

With respect to Items 1-3, and 11, the United States will ask the State Department to locate and make available for disclosure any such items as may exist respecting Mr. Salah and only Mr. Salah.

With respect to Item 4, the government will investigate the existence of and produce properly discoverable materials within the scope of this request.

With respect to Item 7, the government will forward a request to the government of Israel as to the existence of any such materials.

Finally, the government will not comply with your request for immediate specification of statements made by Mr. Salah that the government intends to introduce at trial 11 months from now. The government reiterates that it has previously produced in discovery all known statements of Mr. Salah in its possession.

PATRICK J. FITZGERALD
United States Attorney


By: _____
Joseph Ferguson
Assistant U.S. Attorney

5