UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 03 CR 978 |
| | ) | Hon. Amy J. St. Eve |
| MUHAMMAD HAMID KHALIL SALAH, | ) | |
| a/k/a "Muhammad Abd Al-'Hamid Salah," | ) | |
| a/k/a "Abu Ahmad," and | ) | |
| ABDELHALEEM HASAN ABDELRAZIQ ASHQAR, | ) | |
| a/k/a "Abu Hasan," | ) | |
| a/k/a "Abu Ali Hasan," | ) | |
| a/k/a "Samir" | ) | |

### GOVERNMENT'S MOTION *IN LIMINE* REGARDING PROPOSED TESTIMONY OF PROPOSED DEFENSE WITNESS MATTHEW PIERS

The United States of America, by its attorney, Patrick J. Fitzgerald, United States Attorney for the Northern District of Illinois, respectfully moves the Court, *in limine*, for a finding that the testimony of attorney Matthew Piers recently proposed by defendant Salah, is barred as irrelevant or, alternatively, constitutes a waiver of the attorney client privilege between defendant Salah and attorney Piers and his firm and entitles the government to discovery of files and communications relating to the representation of defendant Salah by attorney Piers and his law firm, Hughes, Socol, Piers, Resnick, Dym, Ltd. (Collectively referred to herein as "attorney Piers") on all matters based on allegations or findings of defendant Salah's involvement with Hamas.

I. **Background**

1. **Attorney Piers' Legal Representation of Defendant Salah**

Attorney Piers has represented defendant Salah continuously in criminal, civil and administrative settings and proceedings relating to defendant Salah's involvement with Hamas.

**i.** **Counsel for Defendant Salah in his Dealings with the Office of Foreign Asset Control Matters Stemming from Hamas and Salah Designations and Blocking Orders**

Beginning no later than 1998 and continuing to the present, attorney Piers has represented defendant Salah with respect to matters involving the Office of Foreign Assets Control of the Department of the Treasury. In particular, in February of 1998, the Office of Foreign Assets Control, pursuant to Executive Order 12,947 of January 23, 1995, blocked holdings in certain bank accounts in the Chicago area that were held in the name of or otherwise in the possession or control of defendant Salah on the grounds that the funds were assets of the Hamas terrorist organization. Those funds were further blocked along with other assets of defendant Salah, including Salah's 9229 South Thomas, Bridgeview, Illinois residence on the basis of Salah's July 1995 listing as a Specially Designated Terrorist (SDT) pursuant to E.O. 12,947 based on Salah's involvement with Hamas.[1] Attorney Piers and his firm have continuously served as defendant Salah's sole legal representative in his dealings with OFAC and have made myriad filings to OFAC on his behalf over the past nine years.

**ii.** **Counsel for Defendant Salah in Ongoing Civil Forfeiture Proceedings Related to the Instant Criminal Case**

Beginning in or about June 1998 and continuing to the present, attorney Piers has represented defendant Salah in civil forfeiture litigation concerning the above-referenced blocked and frozen assets. *United States v. One 1997 E35 Ford Van, et al.*, 98 C 3548 (N.D. Ill.) (Andersen, J.). In that action, the government seeks to forfeit the assets held or controlled by defendant Salah based on the claim that they constitute and are traceable to property involving various money laundering violations. More specifically, the defendant assets are alleged to have been property involved in or traceable to "funds [that] were transferred to financial institutions within the United States from abroad with the intent to support the international terrorist activities of the HAMAS organization."

---

[1] All of the assets are alleged as subject to forfeiture in the Forfeiture Allegation in the Second Superseding Indictment.

*United States v. One 1997 E25 Ford Van*, 50 F.Supp.2d 789, 792 (N.D. Ill. 1999).

The assets at issue in the pending civil forfeiture action are the same as those subject to the OFAC blocking orders stemming from the 1995 designations of both Hamas and defendant Salah and that are further the subject of criminal forfeiture allegations in this case. The allegations in the civil forfeiture action concern many of the same allegations advanced against defendant Salah in the instant criminal case. At the request of counsel for the various claimants, including defendant Salah, the civil forfeiture case has long been stayed pursuant to 21 U.S.C. § 881(i) in deference to related criminal proceedings. However, prior to the entry of the 881(i) stay, defendant Salah, through attorney Piers and his firm, filed a verified claim to certain of the defendant assets and challenged the civil forfeiture action through the filing and briefing of a complex and substantial motion to dismiss and motion for reconsideration.

### iii. Counsel for Defendant Salah in the Boim v. Quranic Literacy Institute Civil Suit

Beginning in 2000 and continuing to the present, attorney Piers also has represented defendant Salah in civil litigation filed against defendant Salah and numerous other individuals and organizations with alleged links to Hamas, including Hamas leader Mousa Abu Marzook. *Boim v. Quranic Literacy Institute, et al.*, 00 C 2905 (N.D. Ill.). The *Boim* suit was based in significant part upon information the United States surfaced in the *E35 Ford Van* forfeiture proceeding respecting Hamas and defendant Salah's relationship to and activities on behalf of Hamas.[2] In the *Boim* litigation defendant Salah, with the assistance of attorney Piers and his firm, verified and subscribed answers to interrogatories propounded by the plaintiffs.[3] Subsequent to paper discovery in the *Boim* litigation, including the aforementioned interrogatories, defendant Salah sat for a

---

[2] The affidavit containing extensive facts concerning Hamas and defendant Salah's relation to and activities on behalf of Hamas that supported the government's civil forfeiture complaint in *One 1997 E35 Ford Van* was attached to and incorporated by reference in the complaint and amended complaint in the *Boim* case.

[3] In the instant case, the United States has alleged those answers were false and falsely sworn and subscribed and has charged the falsely sworn answers as acts in furtherance of the Hamas racketeering conspiracy in Count One of the Second Superseding Indictment and as obstruction of justice in Count Three.

deposition during which he asserted his Fifth amendment privilege with respect to nearly every substantive question posed to him, including numerous questions concerning information he provided in his sworn answers to interrogatories. *See* Transcript of M. Salah in *Boim v. QLI et al.*, (attached hereto). The district court granted partial summary judgment against defendant Salah concerning liability. *Boim v. Quranic Literacy Institute, et al.*, 340 F.Supp.2d 885 (N.D. Ill. 2005). Following a trial on damages at which the court found defendant Salah jointly and severally liable with several other defendants, defendant Salah appealed the judgment to the Seventh Circuit. *See Boim v. Salah*, 05-1816 (7th Cir. ). Attorney Piers briefed and argued the appeal for defendant Salah and continues to represent him in that proceeding in which a ruling is pending.

### iv. Attorney Piers is Counsel of Record for Defendant Salah in the Instant Criminal Proceedings.

Finally, attorney Piers has been (and still is) one of a number of attorneys of record for defendant Salah in the instant case. Because attorney Piers was defendant Salah's counsel in the *Boim* litigation in which defendant Salah is alleged to lied in his sworn answers to interrogatories, the government, early in this case, raised concerns about a potential conflict of interest between defendant Salah and attorney Piers and his firm. The apparent response of attorney Piers and his firm to those concerns was to stand down as trial counsel, but to continue on behind the scenes as counsel of record with respect to non-courtroom matters. In that context, the government is aware that at least one member of attorney Piers' law firm has assisted in the researching and drafting of one or more pre-trial pleadings in the final run up to trial and was engaged in direct communication with the United States Attorney's Office on sensitive matters related to the instant case up to the eve of trial.

### 2. Procedural Setting

On Thursday, December 7, 2006, defendant Salah disclosed his intention of calling attorney Piers as a defense witness to testify about aspects of defendant Salah's verified answers to interrogatories in the *Boim* litigation. Defendant Salah's verified answers take varied forms.

Certain of the interrogatories are answered without qualification or objection. *See* Gov. Exh. Salah Interrogatory Answers, Interrogatory Nos. 1, 3, 12-14, 19, 23. Still others are constituted wholly of legal objections to the corresponding interrogatory, with no information provided. *See id*. Interrogatory Nos. 17-18, 20, 22. Still other answers advance a variety of legal objections coupled with substantive statements of ostensibly responsive fact. *See id.*, Interrogatory Nos. 2, 4-11, 15-16, 18, 21. The answers to interrogatories are signed by a member of attorney Piers' law firm as "One of the Attorneys for Muhammad Salah," with attorney Piers' name listed first on the roster of attorneys from his firm representing listed on the signature page. The interrogatories additionally include a "Verification" signed by defendant Salah stating that "he has read the foregoing Answers to Plaintiffs' First Set of Interrogatories and state that they are true and correct to the best of his information, knowledge and belief."

Based on the Answers to Interrogatories and statements made by criminal trial counsel, it appears that defendant Salah does not dispute that the subject verified answers to interrogatories were prepared with the assistance of and through attorney Piers and other members of attorney Piers' law firm. Accordingly, in first disclosing his intent to call attorney Piers as a witness in the defense case, criminal trial counsel for defendant Salah indicated that defendant Salah was prepared to execute a complete waiver of his attorney client privilege to clear the way for attorney Piers to testify on the subject of the interrogatory answers. However, on the following day, December 8, 2006, defendant Salah changed course and through trial counsel stated that he would not waive his attorney client privilege, but nevertheless represented that he still intended to call attorney Piers as a witness.

The nature and scope of the intended testimony is wholly unclear. Defendant Salah has proffered vague, shifting and seemingly conflicting accounts of the substance, scope and relevance of the proposed attorney testimony. At various junctures, trial counsel for defendant Salah has suggested that attorney Piers would testify regarding the *Boim* litigation generally, the substance of the subject interrogatories and answers to the interrogatories, including attorney Piers' own interpretation and construction of various of the terms appearing in the interrogatories, his duty as

counsel for defendant Salah to investigate facts asserted in defendant Salah's sworn answers to interrogatories, and various of the objections advanced in the subject interrogatories, including so-called First Amendment objections. In the interstices of a meandering *ad hominem* attack on the government at the end of court on December 8, 2006, trial counsel for defendant Salah most recently appears to have suggested that attorney Piers would be called for the purpose of providing his personal and professional opinion regarding legal objections asserted in the verified answers to interrogatories, wholly separate and apart from any advice he gave to defendant Salah.

## II.     Discussion

### 1.     Law Regarding Waiver of Attorney-Client Privilege

Generally, the waiver of the attorney-client privilege as to one particular communication functions as a waiver of the privilege as to other communications on the same subject matter. *See In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1314 n. 18 (7th Cir. 1984) (affirmatively citing the Circuit Court of Columbia for the proposition "that partial disclosure of privileged material waives the privilege as to all other communications on the same subject; 'selective disclosure waives the privilege'") (quoting *In re Sealed Case*, 676 F.2d 793, 818 (D.C.Cir.1982)); *In re Consolidated Litig. Concerning Int'l Harvester's Disposition of Wisconsin Steel,* 666 F. Supp. 1148, 1153 (N.D. Ill.1987) ("The general rule is that voluntary disclosure of privileged attorney-client communication constitutes waiver of the privilege as to all other such communications on the same subject."); *Goldman, Sachs & Co. v. Blondis*, 412 F. Supp. 286, 288 (N.D. Ill. 1976) ("testimony as to a specific communication to the attorney is a waiver as to all other communications to the attorney on the same matter"); *see also In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d 251, 25 (6th Cir. 1996) (noting that case law finds that "waiver applies to the rest of the communications on the same subject matter").

This "subject matter" waiver rule is applied when there has been a waiver by the client of the attorney client privilege through a variety of situations, including where a client calls the attorney as a witness. *See United States v. Suarez*, 820 F.2d 1158, 1159-1160 (11th Cir. 1987) (finding that

6

defendant waived his attorney-client privilege by calling a former defense attorney to testify at an evidentiary hearing); *In re Shearman & Sterling*, 1986 WL 6157, at *1 (S.D.N.Y. May 30, 1986) ("The client's offer of his own or the attorney's testimony as to a specific communication to the attorney is [therefore] a waiver as to all other communications to the attorney on the same matter."). In addition, once waived, the attorney-client privilege cannot be reasserted. *United States v. Blackburn*, 446 F.2d 1089, 1091 (5th Cir. 1971); *Drimmer v. Appleton*, 628 F. Supp. 1249 (S.D.N.Y.1986); *United States v. Krasnov*, 143 F. Supp. 184, 190-91 (E.D. Pa.1956).

This "subject matter" waiver doctrine "reflects two general principles: (1) only confidential matters are protected by the attorney-client privilege; and (2) a party should not be allowed to exploit selective disclosures for tactical advantage." *In re Consolidated Litig. Concerning Int'l Harvester's Disposition of Wisconsin Steel,* 666 F. Supp. at 1153; *see also Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 222(3d Cir. 2006) ("the attorney-client privilege cannot be used as both a "shield" and a "sword"); *Weil v. Investment/Indicators, Research and Management, Inc.*, 647 F.2d 18, 24 (9th Cir. 1981) ("[W]hen [the privilege holder's] conduct touches a certain point of disclosure, fairness requires that his privilege shall cease . . . . He cannot be allowed, after disclosing as much as he pleases, to withhold the remainder."); *Chinnici v. Central DuPage Hosp. Assoc.*, 136 F.R.D. 464, 465 (N.D. Ill. 1991) (stating that parties can not selectively divulge privileged information). The scope of the "subject matter" waiver is, by nature, fact-specific to the circumstances of each individual case. *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349-50 (Fed. Cir. 2005); *In re Keeper of the Records XYZ Corp.*, 348 F.3d 16, 23 (1st Cir. 2003). Fairness in litigating issues is a central theme in determining the scope of a subject-matter waiver. *Export-Import Bank of the U.S. v. Asia Pulp & Paper Co., Ltd.*, 232 F.R.D. 103, 114 (S.D.N.Y. 2005); *Eco Mfg. LLC v. Honeywell Intern., Inc.*, 2003 WL 1888988, at *2 (S.D. Ind. 2003).

**2.      Analysis**

In the instant case, it appears that the defendant intends to call a lawyer who has represented him in numerous legal and administrative contexts all concerning matters stemming from allegations

of his involvement with Hamas, the very subject of the instant case. Defendant's recent representation that the attorney would testify only to his opinions regarding certain legal objections to the subject interrogatories separate and apart from any advice he gave to his client is unavailing for a number of reasons.[4]

As a practical matter, the proposal is patently absurd in concept and not possible in the execution. Legal objections to interrogatories take shape and are exercised within the framework of a particular set of legal claims advanced on the basis of a particular allegations of fact. Simply put, objections are not formed and exercised in a void. Thus, for attorney Piers to offer an opinion on legal objections would require him to testify regarding the claims and specific facts attending the *Boim* litigation (which necessarily includes the civil forfeiture action as well). Thus, both direct and cross examinations would necessarily entail inquiry and testimony into the facts of the *Boim* case and attorney Piers' view of them. However, the attorney's personal and legally informed views of those facts on their own are irrelavant.

Furthermore, common sense dictates that it is not humanly possible for attorney Piers to state an opinion regarding legal objections to the *Boim* interrogatories separate and distinct from his advice to his client. Not only were attorney Piers' opinions regarding objections to the interrogatories based on the alleged facts of the case, but they most certainly were grounded in information disclosed to him in privileged communications with his client as well as further facts he developed in investigating his client's disclosures to him. Such communications prior to the receipt of the interrogatories could be assumed, but need not be. Defendant Salah answered the *Boim*

---

[4] At one point during the December 8, 2006 colloquy, trial counsel suggested that attorney Piers may also testify regarding an attorney's obligation to conduct a good faith inquiry into the facts that are proffered in answers to interrogatories. An attorney's general obligation in this respect is wholly irrelevant. To the extent such testimony is in intended respecting the *Boim* litigation, it plainly is a blatant and wholly improper attempt to bolster the truth of the factual statements contained in the defendant's verified answers. What attorney Piers may or may not have done in investigating the *bona fides* of those stated facts does not make the stated facts any more or less true and, as such, testimony of such measures is wholly irrelevant to this case. Any such testimony clearly would be offered solely for the purpose of putting before the jury the attorney's implied, if not express, opinion that the facts as stated and verified are true and, as such, would invade the jury's province as sole finder of fact.

complaint close in time to his tender of defendant Salah's verified answers to the interrogatories. The answer was responsive to the specific facts alleged in the complaint. Attorney Piers therefore may reasonably be presumed (unless he is prepared to admit to blatant malpractice) to have interviewed his client regarding the allegations in the complaint and then conducted his own preliminary investigation of the allegations prior or contemporaneous to his drafting and filing of the answers to the complaint. Attorney Piers thus did not approach the *Boim* interrogatories in a vacuum and cannot now reliably claim to be able to separate out what he heard and learned before, during and after the interrogatory stage of the *Boim* proceedings, to offer an opinion undiluted from his engagement of the case his advice to defendant Salah.[5] To the extent attorney Piers might claim to be able to do so, the government should not be required to accept his claim, but rather explore it through cross examination. However, cross examination on the point would not be meaningful without inquiry into privileged attorney-client communications and activities.

Of course, attorney Piers' ability to compartmentalize his opinions divorced from what he has learned through privileged communications with his client and information he learned in investigating what his client told him in the context of the *Boim* case is hopelessly complicated by the fact that attorney Piers represented defendant Salah in litigation respecting the same litigated facts years before the *Boim* suit was even filed. As detailed above, attorney Piers represented Salah in the civil forfeiture action filed in the Northern District of Illinois that was based on allegations regarding defendant Salah's involvement with Hamas contained in the very affidavit that the *Boim* plaintiffs incorporated into their suit. Similarly, attorney Piers would have to erase what he learned from post-interrogatory litigation of the case (which continues today) as well as whatever else he learned, through his client or otherwise, through his involvement in the present case.

_____

[5] The varied form the answers to interrogatories took further suggest the impossibility of attorney Piers separating legal opinions regarding objections from the facts of the case and what his client had revealed to him to that point. The most frequent form of answer was a series of objections coupled with statements of responsive fact. Given that coupling, it would be absurd to say that the latter had no role in informing the former. Given that the facts presumably were based on privileged exchanges with the defendant, as well as work product of the attorney himself, effective cross examination would necessarily entail inquiry into privileged communications and activities.

At bottom, it is necessarily the case that attorney Piers' opinions, both at the time he fashioned objections to the *Boim* interrogatories, as well as today were and are necessarily forged from information learned from privileged communications with his client. Meaningful cross examination therefore would necessarily require inquiry into those privileged communications.

Second, and of greater significance, the legal objections lodged in the answers to interrogatories are not the basis for the acts of obstruction at issue in this case. It is the falsity of the *facts* stated by the *defendant* in the answers to interrogatories that the were personally verified by the *defendant* himself that are at issue. Thus, if divorced from advice given to defendant Salah, attorney Piers is simply offering opinion testimony about legal matters not relevant to the case. Any such testimony should be excluded under Fed. R. Evid. 402. To the extent some faint wisp of relevance might be divined from such testimony, it should be barred under Fed. R. Evid. 403 since it will only mislead and confuse the jury and waste its time by diverting attention from the matters truly at issue to consideration of collateral legal nuances.

Accordingly, testimony about attorney Piers' opinions regarding legal objections to or the legally objectionable nature of the *Boim* interrogatories may be relevant only if he testifies about the legal opinions he gave to the defendant respecting the propounded interrogatories. Such testimony alone would require defendant Salah to waive the attorney-client privilege because the privilege exists to protect the giving of professional advice to those who can act on it as well as the the giving of information to a lawyer to enable him to give informed advice. *See Upjohn v. United States*, 449 U.S. 383, 390 (1981).[6] *See also Pitney -Bowes, Inc. V. Mestre*, 86 F.R.D. 444, 446 (S.D. Fla. 1980)(attorney-client privilege extends to communications from attorneys to clients as well as the

---

[6] This waiver may be all the more required here because attorney Piers' legal opinions to defendant Salah necessarily would have been grounded in numerous privileged communications arising from their extensive attorney-client relationship on prior closely related matters. *See Ohio-Sealy Mattress Mfg. Co. V. Kaplan*, 90 F.R.D. 21, 28 (N.D. Ill. 1980) (communication from attorney to client is privileged "[i]f the statement reflects a client communication that was 'necessary to obtain informed legal advice (and) which might not have been made absent the privilege.'")

reverse). More problematic, however, is that focusing attorney Piers' testimony on the legal opinions he provided to defendant Salah is merely a necessary but not a sufficient condition to qualify it as relevant to the instant case. Legal opinions given by his attorney to defendant Salah can only be relevant if the defendant relied on those opinions to make decisions about which facts to offer and verify in the subject answers to interrogatories. If defendant Salah either ignored his attorney's opinions, or his attorney's opinions had no impact on the stated facts defendant Salah chose to provide and personally verify, then the attorney's opinions would be irrelevant to the case. Thus, attorney Piers' testimony regarding legal objections to the interrogatories should be allowed only if defendant Salah takes the witness stand to testify both that he relied on his attorney's opinions and how they impacted his decisions about the facts he personally provided and verified in the answers to interrogatories.

Satisfaction of the predicates necessary to render the attorney's testimony relevant would equate to an advice of counsel defense to the obstruction of justice charged in Count Three. Such a defense, regardless of whether express or implied, constitutes a waiver of the attorney-client privilege. *See generally Restatement of the Law Governing Lawyers*, § 130(1) (Final Draft No. 1, 1996) ("The attorney-client privilege is waived for any relevant communication if the client asserts as a material issue in a proceeding that: (a) the client acted upon the advice of a lawyer or that the advice was otherwise relevant to the legal significance of the client's conduct.") *See also Garcia v. Zenith Electronics Corp.*, 58 F.3d 1171, 1175 (7th Cir.1995) ("[T]he attorney-client privilege is generally waived when the client asserts claims or defenses that put his attorney's advice at issue in the litigation."); *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir.1994) ("[A] party can waive the attorney client privilege by asserting claims that put his or her attorney's advice in issue in the litigation."). The same applies to any interpretation, legal or otherwise, of

terms used in the interrogatories.[7]  *See Pitney -Bowes, Inc. V. Mestre*, 86 F.R.D. 444, 447 (S.D. Fla. 1980) (when party relied on counsel's "interpretation" of a document as its defense, that advice was put into issue and the privilege was waived).

At bottom, in proposing attorney Piers as a witness, defendant Salah is attempting to slip an implied advice of counsel defense in through the back door without having to subject himself to the full consequences of the waiver that attends such a defense.  In so doing, defendant Salah is attempting to use the attorney client-privilege as both a "shield" and a "sword."  The case law is clear that such an attempt is improper.  *Berckeley Inv. Group, Ltd. v. Colkitt*,  455 F.3d at 222;  *In re Grand Jury Proceedings*, 219 F.3d 175, 188 (2nd Cir. 2000) (finding, in considering the scope of subject matter waiver of attorney-client privilege, that the client's offer of his own or the attorney's testimony as to a specific communication to the attorney is a broad waiver as to all other communications to the attorney on the same matter); *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) (noting "the attorney client privilege cannot at once be used as a shield and a sword . . . [and a] defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communication for self-serving purposes"); *In re Consolidated Litigation Concerning Intern. Harvester's Disposition of Wisconsin Steel*, 1987 WL 20408, at \*3 (affirming that privilege holder can not use privilege as an "offensive weapon by using it to reveal only those portions of confidential matters favorable to its case while hiding portions which might be harmful").

---

[7] Attorney Piers' interpretations and legal opinions regarding certain of the interrogatories and significant terms appearing appears to have evolved during the *Boim* litigation.  During the December 7. 2006 cross-examination of *Boim* attorney Stephen J. Landes, trial counsel for defendant Salah repeatedly pressed the point that the *Boim* plainitffs did not follow up on the answers and objections stated in the interrogatories, highlighting particularly the absence of a motion to compel in those proceedings.  In fact, and as Salah's trial counsel well knows, the *Boim* plaintiffs did follow up on defendant Salah's verified answers to interrogatories by taking his deposition. In response to deposition questions regarding certain of defendant Salah's answers to interrogatories, neither the defendant nor his attorney reasserted the objections advanced in the interrogatories, nor did defendant Salah provide any additional information to that which provided in the interrogatories.  The government should be permitted to correct defendant Salah purposeful mischaracterization of the *Boim* proceedings through cross-examination of attorney Piers, particularly since the different approaches taken to similar inquiries in the interrogatories and deposition raise substantial question about precisely what advice was given when and the reasons for any change of position.

12

Accordingly, the Court should conclude that if the defendant opts to proceed with testimony from attorney Piers, the defendant has waived the attorney-client privilege with regard to the representation of defendant Salah by attorney Piers and his law firm in all litigation and matters concerning defendant's relationship to and involvement with Hamas, including not only the *Boim* case, but also the instant case and the still pending and related civil forfeiture action, all of which arise from a similar core set of litigated facts. This waiver should reach both written work related to the representation of defendant Salah by the law firm of attorney Piers throughout the course of the aforementioned as well as all communications. Disclosure of all such materials to the government should be directed to occur immediately so that the government has adequate opportunity to review the likely voluminous files in advance of attorney Piers taking the witness stand. Any alternative course would prejudice the government by permitting defendant Salah to wield as a sword testimony rooted in privileged communications that he deems helpful while improperly shielding from scrutiny other privileged communications and information necessary for a complete and fair presentation of evidence necessary to the jury's search for the truth.

## III. Conclusion

For the foregoing reasons, the government requests that the Court bar the testimony of defendant Piers as irrelevant. Alternatively, the government request that the Court: (1) find that by calling attorney Piers to testify, the defendant has waived his attorney-client privilege with regard to all matters in which attorney Piers and his firm has represented defendant Salah's concerning or arising from defendant Salah's relation to and involvement with Hamas: and (2) order the defendant to immediately produce the complete the attorney files of attorney Piers and his firm in those matters, including specifically *Boim v. Quranic Literacy Institute, et al.*, 00 C 2905 (N.D. Ill.), 05-05-1816 (7th Cir.) ; *United States v. One 1997 E35 Ford Van*, 98 C 3548 (N.D. Ill.) (Andersen, J.); and the

13

instant case.[8]

Respectfully submitted,
PATRICK J. FITZGERALD
United States Attorney


By:     s\Joseph Ferguson
        JOSEPH FERGUSON
        REID SCHAR
        CARRIE HAMILTON
        Assistant United States Attorneys
        219 South Dearborn
        Chicago, Illinois  60604
        (312) 353-5300

---

[8] When an advice of counsel claim is raised, the reasonableness of that reliance becomes a means of challenging the claim.  Accordingly, not only does the entirety of the attorney's advice on the same subject matter become discoverable, but any collorary advice given by other attorneys on the same issues becomes discoverable. *See In re Gaming Lottery Sec. Litig.*, 2000 WL 340897 at *2 (S.D.N.Y. 2000) ("Since the defendants claim they were relying on [counsel's] legal advice as their attorney, the legal advice they received from any other lawyers on that subject relates to the reasonableness of defendants' reliance and is not subject to the attorney/client privilege.

14