```
 1                 IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
 2                       EASTERN DIVISION

 3
      UNITED STATES OF AMERICA,        ) Docket No. 03 CR 978
 4                                     )
                      Plaintiff,       )
 5                                     )
             vs.                       )
 6                                     )
      MUHAMMAD HAMID KHALIL SALAH AND   )
 7    ABDELHALEEM HASAN ABDELRAZIQ ASHQAR, ) Chicago, Illinois
                                       ) January 3, 2007
 8                      Defendants.    ) 10:00 o'clock a.m.

 9
                    TRANSCRIPT OF TRIAL PROCEEDINGS
10          BEFORE THE HONORABLE AMY J. ST. EVE

11
      APPEARANCES:
12
      For the Plaintiff:        HON. PATRICK J. FITZGERALD
13                              United States Attorney
                                BY:  MR. JOSEPH M. FERGUSON
14                                   MR. REID J. SCHAR
                                     MS. CARRIE E. HAMILTON
15                              219 S. Dearborn St., Suite 500
                                Chicago, Illinois  60604
16

17    For Deft. Salah:          PEOPLE'S LAW OFFICES
                                BY:  MR. MICHAEL EDWARD DEUTSCH
18                                   MS. ERICA THOMPSON
                                     MR. BENJAMIN ELSON
19                              1180 North Milwaukee Avenue
                                Chicago, Illinois  60622
20
      For Deft. Ashqar:         MR. KEITH ALLAN SPIELFOGEL
21                              20 North Clark Street, Suite 1200
                                Chicago, Illinois  60602
22
                                MR. WILLIAM MOFFITT
23                              11582 Greenwich Point Road
                                Reston, Virginia  20194
24

25    Also Present:             S/A BRADLEY BENAVIDES, FBI
                                S/A JILL PETORELLI, FBI
```

1    APPEARANCES (Cont'd):

2

Court Reporter:                MR. JOSEPH RICKHOFF
3                              Official Court Reporter
                               219 S. Dearborn St., Suite 1232
4                              Chicago, Illinois  60604
                               (312) 435-5562
5

6                  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

7                       PROCEEDINGS RECORDED BY
                        MECHANICAL STENOGRAPHY
8                  TRANSCRIPT PRODUCED BY COMPUTER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        (Proceedings heard in open court:)

2             THE COURT:  You may be seated.

3             03 CR 978.  We're here for a jury instruction

4   conference.

5             I also have some additional issues for you.

6             MR. FERGUSON:  Judge, Mr. Schar will be taking the

7   lead.  I say that only to save you the trouble of saying

8   Mr. Ferguson in response, with respect to the jury

9   instructions, and yes, there are a couple of other things we

10  want to follow up on with respect to the remainder of the

11  trial proceedings themselves.

12            THE COURT:  Okay.

13            And while we're doing this, the test is on for Dr.

14  Basoglu, so we should have an answer for that.

15            I left -- I resolved the issue on the State

16  Department documents, but I left it in my chambers.  So, I

17  will give that to you before you leave today.

18            Before we get to jury instructions, it is my practice

19  to send back a copy of the indictment, cleansed, to the jury,

20  taking out the signature on the last page.  Obviously, Count

21  Two has to come out.  I would like -- don't lose sight of

22  that.  I'd like you to turn over to defense counsel by Friday

23  your proposed copy of what should go back.

24            MR. SCHAR:  Judge, on that, two quick questions as to

25  what you prefer.  Count Two is gone.  Typically what we've

1   done in the past is renumber the remaining counts so there's

2   not a gap in the indictment, which is what we did with the

3   proposed jury instructions on the presumption that we would do

4   that.  And that's what we would propose.  So Count Three will

5   become Count Two and likewise onward.

6           In addition, there are a number of co-conspirators

7   indicated by letter within the indictment.  That was obviously

8   done to protect the identities of those individuals.

9           There's two options on how to address that for

10  purposes of the jury.  I think all the names have come in, but

11  the jury wouldn't necessarily know who co-conspirator A, B or

12  C is without some guide.

13          We can either literally redo the indictment to put in

14  the actual names of the co-conspirators, or what might be

15  easier is just simply give them a sheet indicating

16  co-conspirator A is so-and-so, co-conspirator B is so-and-so

17  as a guide for them doing that.

18          So those are two issues that I just wanted to raise.

19          THE COURT:  The numbering of counts, my thought is to

20  renumber them so you don't have a blank because I think that

21  raises more questions than it answers.

22          Mr. Moffitt, Mr. Deutsch?

23          MR. DEUTSCH:  I don't see a problem with that.  What

24  I'm concerned about is in Count One, there are allegations

25  that are no longer -- which related to what was in Count Two.

1          MR. SCHAR:  And I think those are coming out.

2          MR. FERGUSON:  Yeah.

3          THE COURT:  Okay.  That's why I'm going to have to

4   have them give you a draft Friday.

5          MR. DEUTSCH:  And then the numbering would change.

6          MR. FERGUSON:  With the lettering of the subsections,

7   they would change to reflect that.

8          THE COURT:  Is that okay?  Mr. Moffitt is that okay

9   with you?

10          MR. MOFFITT:  Yes, ma'am.

11          THE COURT:  All right.

12          And what's your position on the co-conspirators that

13   are identified by letter in the indictment, leaving it that

14   way with some guide as to who A, B, C and D are, or putting in

15   the actual names?  My inclination is to leave it A, B, C, D

16   and then give them some guide as to who the government

17   thinks -- rather than tinkering with the indictment and adding

18   something.  I don't have a problem taking things out of the

19   indictment, but --

20          MR. MOFFITT:  Is there going to be some explanation

21   to them why it's co-conspirator A, B and C and not named if we

22   do it that way?  I mean, are they going to be told that

23   there's a reason for doing it that way?

24          THE COURT:  I am open to any suggestions.

25          MR. MOFFITT:  Okay.  Well, I --

1          THE COURT:  If you think that's prejudicial and you

2     would prefer to have names put in --

3          MR. MOFFITT:  I'm trying to think my way through it

4     with the Court; but, you know, I'm wondering whether it raises

5     more questions in the end about why they were labeled A, B and

6     C in the first instance, and then to just sort of put the

7     names in.  I mean, at this particular point if they had been

8     placed in evidence, it's not -- we're not protecting anybody

9     at this point.

10          MR. FERGUSON:  Judge, I've gone through the same

11     process in thinking about closing and, quite frankly, I would

12     be inclined to make some comment as to why it appears that way

13     and in explaining who the names actually are.

14          So, if that bodes one direction or another,

15     obviously, it wouldn't be an elaborate explanation, but --

16          MR. MOFFITT:  The trouble I'm having is you saying it

17     in closing is not evidence in the case.  You might say it in

18     the closing, but it's not evidence that the reason that they

19     were not there, it's something you're saying, it's not

20     something that was proved up.

21          THE COURT:  I can give an instruction if you think

22     that's appropriate.

23          MR. MOFFITT:  My inclination is to put the names in

24     if they're going to prove it up.

25          THE COURT:  That's fine with me, too, if that's what

1    you're proposing.

2           MR. DEUTSCH:  I have an objection to putting the

3    indictment to the jury.

4           I don't see why, if the indictment is really not

5    evidence in the case and, in fact, the jury is supposed to

6    decide what the government has proven beyond a reasonable

7    doubt, that's their burden.  I think the indictment here is a

8    distraction, and particularly given the fact that it's full of

9    A, B, C, D co-conspirators, that it would be my position that

10   the indictment not be given to the jury in this particular

11   case.  And I would make that motion.

12          THE COURT:  Mr. Schar?

13          MR. SCHAR:  Judge, we object.  Obviously, the

14   indictment is a guide and lays out what the counts are and how

15   the conspiracy is charged and everything else.

16          THE COURT:  I will send a cleansed version of the

17   indictment back.

18          MR. DEUTSCH:  And I assume -- I was looking for it --

19   we have an instruction that says the indictment is not

20   evidence in this case.

21          THE COURT:  Yes.  That's one of the patterns.  And

22   I'm happy, when I give them the indictment to go back, to

23   remind them of that if you want.

24          MR. DEUTSCH:  As far as the letters go, my feeling

25   is, is that the government put letters in under some theory of

1    protection.  And, of course, we don't want that implied to the

2    jury and if we just leave the letters in and then some kind

3    of, you know, legend that they can refer to, that seems to

4    raise a question in the minds of the jury, well, why didn't

5    they put the names in to begin with.  And I don't know -- I

6    don't think either side wants to get into that in their

7    closing argument because there's really no evidence of it.

8            So, I don't know.  I guess I would prefer to put the

9    names in there.

10           But I would, you know, consult with co-counsel about

11   what they thought.

12           MR. MOFFITT:  Well, my feeling is that I think the

13   names are more appropriate than the letters, particularly if

14   the government believes that they have proved it up, it was

15   proved in a public courtroom, there's really nothing to

16   protect at this particular point.

17           THE COURT:  Okay.  That's fine.  Put them in.

18           MR. SCHAR:  Yes, Judge.

19           THE COURT:  Put them in.

20           MR. DEUTSCH:  Judge, Ms. Thompson raises another

21   point, which I'm not clear about.  Of course, Marzook has

22   not -- was not -- is he going to be out as a defendant in this

23   case?

24           THE COURT:  He will be out as a defendant.

25           MR. SCHAR:  We'll take him off the caption.

1          THE COURT:  Not necessarily as a co-conspirator --

2          MR. DEUTSCH:  Yes.

3          THE COURT:  -- but out as a defendant.  That's part

4    of the cleansing.

5          MR. SCHAR:  And part of the cleansing, there is a

6    paragraph that lays out the defendants, and one of them is

7    Mr. Marzook.  Obviously, it's easy to take him out of the

8    caption.  That's easy.

9          THE COURT:  I think he should come out as a

10   defendant, too.

11         MR. SCHAR:  Should we change him into a -- move him

12   to the conspiracy section as a co-conspirator then?  Because I

13   think throughout the indictment, he is named as defendant

14   Marzook, defendant Marzook.

15         THE COURT:  Yeah, you can name him co-conspirator.

16         MR. SCHAR:  Okay.

17         THE COURT:  Do you have any thoughts on that?

18         MR. DEUTSCH:  No.

19         MR. MOFFITT:  No, ma'am.

20         MR. DEUTSCH:  No.

21         MR. SCHAR:  We'll clean it up and we'll get them

22   something by Friday.

23         THE COURT:  Give me a copy on Friday, too --

24         MR. SCHAR:  Yes.

25         THE COURT:  -- of what you propose.

 1          The next thing, exhibits for the jury.  A lot of

 2     exhibits have been entered into evidence, and I don't want

 3     you, after I instruct the jury, to take an hour or two to

 4     figure out what goes back to the jury.  I want those to be

 5     ready to go back, but everybody needs to look at them and be

 6     in agreement that the exhibits have been admitted into

 7     evidence.

 8          So, I would suggest tomorrow after court, Friday,

 9     that you take whatever time and get those exhibits in order.

10     We'll have some time next week, but you're going to be

11     distracted by your closings.

12          MR. SCHAR:  Okay, Judge.

13          MR. DEUTSCH:  Judge, we intend to put together our

14     exhibits in a book, like a notebook.

15          THE COURT:  That's fine.

16          MR. DEUTSCH:  But there are some -- there is one

17     question, and obviously we can show them to the government.

18     But one of the exhibits, which is not really marked as an

19     exhibit, but has been read to the jury is these substitutions.

20     And we would like the jury to have a copy of those

21     substitutions.

22          THE COURT:  That's fine.

23          MR. DEUTSCH:  Okay.

24          THE COURT:  They can have a copy.

25          MR. DEUTSCH:  All right.  And I will show the

1    government the other exhibits that we --

2           THE COURT:  Okay.

3           MR. DEUTSCH:  Some of them are not obviously in

4    evidence yet.

5           THE COURT:  Right.

6           But by end of tomorrow, I assume they will be.

7           MR. DEUTSCH:  Yes, they will be.

8           THE COURT:  If you want to move them in.

9           Mr. Deutsch, your client is not here.  Is he --

10          MR. DEUTSCH:  Judge, actually, I thought we were just

11   doing jury instructions --

12          THE COURT:  Fine.

13          MR. DEUTSCH:  -- and told him he really didn't have

14   to come.

15          THE COURT:  I can waive his presence for today.  I

16   just wanted to make sure.

17          The media has called my chambers, and they have

18   requested the names, hometowns, and ages of the jurors so, if

19   they want to attempt to interview them after the verdict, they

20   can.

21          They can't figure out -- the jury was not anonymous.

22   They can't figure out from the voir dire who these individuals

23   are.  I think it was Ms. Lyon's suggestion that we refer to

24   them by first names only during voir dire.

25          Whoever is ringing, will you please turn off?

1           What are your thoughts on that?

2           If we do it, it will be post-verdict so there's no

3    investigation like we've seen happen in the past --

4           MR. MOFFITT:  Well --

5           THE COURT:  -- of the jurors while they're

6    deliberating.

7           MR. MOFFITT:  That's the only thing I'm willing to

8    agree to is that it would be post-verdict if it was done at

9    all.

10          THE COURT:  Is there an objection to doing it at all?

11          I will not do it while they're deliberating.  I don't

12   want stories about the jurors while they're out deliberating.

13          MR. MOFFITT:  Will you make a suggestion to them

14   about whether they talk to the press or not?

15          THE COURT:  I will tell them that the press may try

16   to contact them.  It's up to them if they want to talk to them

17   or not.

18          MR. FERGUSON:  Judge, I'm not sure that we have a

19   particular position.  We do not object to Mr. Moffitt's

20   suggestion that whatever the Court deems appropriate in this

21   circumstance be done post-verdict.

22          THE COURT:  I won't do it before.  I will not do it

23   before, but is there any objection to doing it post?

24          MR. DEUTSCH:  No objection.

25          THE COURT:  Think about it.

1          MR. MOFFITT:  Your Honor, I think we go back.  We had

2     a suggestion earlier about the idea that this wasn't going

3     to -- the questionnaire and their answers and various other

4     things weren't going to be made public.

5          THE COURT:  I won't give the questionnaires and the

6     answers.

7          MR. MOFFITT:  Well, part of the answers were where

8     they live, right?  And their addresses and who they were.

9          THE COURT:  Their names, and some of them I think

10    gave hometowns in voir dire.

11         MR. MOFFITT:  So, I'm a little concerned about that

12    in that in they were probably told they didn't need to worry

13    about that.

14         THE COURT:  What I told them was the questionnaires

15    would be viewed only by the Court and the lawyers and would

16    not be made public.

17         MR. MOFFITT:  If we make their addresses public,

18    aren't we making part of the questionnaire public?

19         THE COURT:  To the extent they didn't say it in open

20    court.

21         MR. MOFFITT:  That's the concern that I have.  You

22    know, I'm sure they relied on that in being candid about their

23    answers and what have you.

24         THE COURT:  Although I don't know that their hometown

25    would be affected by that.

1          Do you have any proposals, suggestions, or do you

2   want to think it over?

3          MR. MOFFITT:  I think when the verdict comes back,

4   you can ask them.  I think their sense of what they want to do

5   is probably the most appropriate thing here.  And if they want

6   to -- if they collectively want to be involved with the press,

7   they can be.  If they don't, they ought not be bothered, it

8   seems to me.

9          MR. FERGUSON:  Judge, I'm not sure that the three

10  attorneys for the government sitting here are authorized to

11  take a position on this one way or the other.

12         THE COURT:  Okay.

13         Think about it, and we'll -- Mr. Deutsch, do you want

14  to take any other position or stand on your no objection?

15         MR. DEUTSCH:  Let me think about it, too.

16         THE COURT:  All right.  I will re-raise this.  I've

17  had several calls, so, I'm sure I haven't heard the last of

18  it.  I will re-raise it with you.

19         Let's turn -- any other issues before I turn to the

20  jury instructions which are going to take some time?

21         MR. DEUTSCH:  We're still waiting for your decision

22  on that --

23         THE COURT:  The stipulation.

24         MR. DEUTSCH:  Yes.

25         THE COURT:  I'll do that when I give you the jury

 1    instruction -- the State Department documents.

 2           MR. DEUTSCH:  Okay.

 3           THE COURT:  The one thing I'm going to give you

 4    before we start, which might be the easiest thing we do all

 5    day, I did not see a note-taking instruction and I had given

 6    you Court Instruction 1, which is a note-taking instruction

 7    that I think is quite appropriate.

 8           (Document tendered.)

 9           THE COURT:  That is the Seventh Circuit pattern

10    instruction from the civil jury instructions.  They don't have

11    a pattern for note taking in the criminal, which were done

12    quite some time ago.

13           Given that some jurors have taken voluminous notes

14    and some jurors have not taken any, I think this is

15    appropriate.

16           Is there any objection?

17           MR. SCHAR:  No objection, Judge.  And there were --

18    there's one other instruction the government had in a draft

19    verdict form, which I don't think we had addressed.

20           THE COURT:  No.

21           MR. SCHAR:  One was a clear admission on the

22    government's part.  Typically there's the instruction about

23    not speculating about other names you've heard.

24           THE COURT:  Yes.

25           MR. SCHAR:  And for whatever reason that was omitted.

1            THE COURT:  I thought Mr. Spielfogel included that.

2  But --

3            MR. SCHAR:  At least in the government's version, it

4  wasn't.  It usually comes in relation to you shouldn't be

5  concerned about punishment, and then there's usually you

6  shouldn't be concerned about --

7            THE COURT:  Okay.

8            MR. SCHAR:  So, that we wanted to remedy, and there

9  have been no verdict -- proposed verdict forms so we wanted to

10 also --

11           THE COURT:  Do you have one for me, please?

12           Is there any objection to the note-taking

13 instruction?  The government said no.

14           Mr. Deutsch?

15           MR. DEUTSCH:  No, I have none.

16           MR. SPIELFOGEL:  No, Judge.

17           THE COURT:  All right.  That will be included.

18           Mr. Schar, I'm going to put the burden on the

19 government to --

20           MR. SCHAR:  Yes.

21           THE COURT:  -- come up with the final set of

22 instructions, so you should make sure that you include --

23           MR. SCHAR:  Yes, Judge.

24           THE COURT:  -- in there the note-taking instruction,

25 as well as the Court's rulings on any instructions today.

1          MR. SCHAR:  Yes, Judge.

2          THE COURT:  Is there any objection to Government

3   Instruction No. 78-A, "You should not speculate why another

4   person whose name you may have heard during the trial or who

5   is named in the indictment is not currently on trial before

6   you"?

7          MR. MOFFITT:  We're telling them earlier that they

8   can draw certain inferences from certain facts.  Doesn't this

9   counter that?  They shouldn't speculate, but they still have

10  the right to draw certain inferences from that fact.

11         THE COURT:  But there's a difference between drawing

12  inferences because we also tell them any inferences you draw

13  must be reasonable and based upon the evidence before the

14  Court.

15         MR. MOFFITT:  Well, let me give you an example.

16         Mr. Jarad is not on trial in this case.  Mr. Jarad,

17  the proof in the case has been Mr. Jarad lives in Chicago, is

18  present.  The acts concerning Mr. Jarad, some of which

19  occurred in Chicago, he's not on trial in this case.

20         Now, the government's instruction would say you

21  should not speculate; but if Mr. Jarad and Mr. Ashqar did the

22  exact same thing and Mr. Ashqar is on trial for the same

23  thing, they could infer from that perhaps that what Mr. Jarad

24  did is not a crime and, therefore, what Mr. Ashqar did is not

25  a crime.

1        MR. SCHAR:  No, Judge, I don't think they could do

2   that.

3        THE COURT:  Yeah, that's speculative.

4        MR. SCHAR:  It's speculating, and it would be an

5   improper inference to have a jury draw.

6        MR. MOFFITT:  Why would that be an improper inference

7   if they did the exact same thing?

8        MR. SCHAR:  It's a selective --

9        THE COURT:  Putting aside what you think you might

10  argue in closing, what's your objection to this instruction?

11        MR. MOFFITT:  I still think -- I think it counters

12  the reasonable inference instruction, that reasonable

13  inferences can be drawn from the fact certain people are not

14  here.

15        MR. SCHAR:  Judge --

16        THE COURT:  Mr. Deutsch, do you have an objection to

17  this?

18        MR. DEUTSCH:  I join Mr. Moffitt's objection.

19        But there's also a related issue, which doesn't

20  necessarily directly involve this instruction, but I have

21  what's called a missing witness instruction.

22        THE COURT:  Yes.

23        MR. DEUTSCH:  And I definitely want something along

24  those lines to be given to the jury.  And it's obviously it's

25  complicated because of all the background issues here.  We'll

1   need to talk about that.

2          So, I know it's not directly implicated by this.

3          THE COURT:  We will definitely get to your missing

4   witness.

5          Mr. Schar?

6          MR. SCHAR:  Judge, what I hear Mr. Moffitt saying is

7   that basically it's a selective prosecution argument, which is

8   something for you.  And if that's an argument he plans on

9   making, we're going to have real objections to it.

10         But, nonetheless, I think this is a fairly common

11  instruction that's given, and I don't think they should

12  speculate.

13         THE COURT:  Your objection is overruled.  I will give

14  Government Instruction No. 78-A.  It is not inconsistent with

15  the other instructions, which talk about reasonable

16  inferences.

17         Okay.  Let's go through these.  I'm going to start

18  with the government's second amended draft jury instructions,

19  document 858 on the docket sheet filed on December 22nd.  I am

20  going to work through first defendant Ashqar's objections,

21  second defendant Salah's objections, and then I will look to

22  the defendants' proposed jury instructions.

23         This may overlap to some extent, so I may bounce back

24  and forth between government and defense instructions where

25  appropriate.

1          The defendant Ashqar's objections to the government's

2    second amended draft jury instructions.

3          Instruction 24 at Page 27, you have -- this is the

4    joint venture pattern instruction 5.05.  I am overruling your

5    objection.  Looking at U.S. vs. Bailey, 763 F.2d 862, U.S. vs.

6    Guyton, G-U-Y-T-O-N, 36 F.3d 655, and U.S. vs. Goudy,

7    G-O-U-D-Y, 729 F.2d 664, all Seventh Circuit cases where joint

8    venture instructions were given at the same time as conspiracy

9    instructions, and the Seventh Circuit affirmed as long as the

10   conspiracy instructions are clear, the elements are clear,

11   it's perfectly appropriate to give a joint venture, as well,

12   and the conspiracy instructions here will be clear with the

13   elements.  So, your objection is overruled.

14         We are going to take a quick time-out to do an audio

15   check.

16         (Brief interruption in proceedings.)

17         THE COURT:  Okay.  Instruction 25, Page 28.

18   Mr. Spielfogel, you have objected to this aiding and abetting

19   instruction but have not said or given any basis for your

20   objection.  So, this is pattern 5.06.  Rather than trying to

21   read your mind, what is your objection?

22         MR. SPIELFOGEL:  Your Honor, as Mr. Schar is taking

23   the lead for the government, Mr. Moffitt will be taking the

24   lead for us on these instructions.  They were submitted in my

25   name, but --

1          THE COURT:  Okay.  Mr. Moffitt, what's the objection?

2          MR. MOFFITT:  Your Honor, the same objection.  It's

3   covered by the conspiracy instruction.  It repeats almost

4   exactly the language of the conspiracy instruction.

5          The person must knowingly associate with a criminal

6   act, participate in the act, and try to make it succeed.

7   That's exactly what an overt act in furtherance of the

8   conspiracy is.  It's no different.  It just pounds into the

9   head of the jury, and it repeats the same notion of a joint

10  venture such as the conspiracy does.

11         MR. SCHAR:  Judge, aiding and abetting is a separate

12  basis for liability.  It's 18, United States Code, Section 2.

13  That's charged, although it doesn't even have to be, it is

14  actually specifically charged in Count One.  This lays out

15  what aiding and abetting is.

16         I think there's also later an instruction that deals

17  with specifically aiding and abetting the conspiracy in Count

18  One.  The only way to understand that instruction is to

19  actually understand the definition, the pattern definition of

20  aiding and abetting, which is 5.06, the Seventh Circuit

21  committee pattern instructions.

22         MR. MOFFITT:  How is it any different than an overt

23  act in furtherance of a conspiracy?  I mean, by its very

24  terms, it's exactly the same thing.  If you're going to define

25  overt act, you define this instruction.

1          MR. SCHAR:  An overt act can be taken by any number

2     of individuals.  This deals specifically with criminal

3     liability of a defendant.

4          THE COURT:  I agree.

5          I will give Government Instruction 25 over your

6     objection.  Aiding and abetting is charged here.  There is a

7     separate instruction dealing with the unanimity issue on

8     aiding and abetting versus the substantive charge.  This is

9     appropriate, and I will give Government Instruction 25.

10          Government Instruction --

11          MR. DEUTSCH:  Judge, just so I can be -- I just want

12    to make clear the record for Mr. Salah.

13          It seems to me that one additional problem with this

14    instruction is that it kind of -- it doesn't deal with the

15    problem of the First Amendment or strictissimi juris issue.

16          THE COURT:  To the extent those instructions are

17    given, certainly the First Amendment, I will give separate

18    instructions on those.  I don't think those are properly

19    combined with this.  So, the jury will be instructed on it.

20    But I don't think it's appropriate to do it multiple times.

21    They will get one instruction, and I will get to those

22    instructions when I turn to yours.

23          MR. DEUTSCH:  I understand what you're saying, Judge,

24    but what I would -- if you're going to give this Government

25    25, I would request that you add any person who knowingly

1    aids, counsels, commands, induces or procures the commission

2    of an offense who knowingly, with specific intent, I would ask

3    that the words "specific intent" be added after "knowingly."

4         THE COURT:  I'm going to overrule your objection and

5    give the pattern as set forth in 5.06 because that is an

6    accurate statement of the law.

7         MR. MOFFITT:  May -- I'm still trying to understand

8    this, ma'am.  And my problem is does aiding and abetting

9    convert conspiracy into a substantive offense --

10        THE COURT:  No.

11        MR. MOFFITT:  -- where it's an inchoate offense in

12   its first?  How could it ever be converted into a substantive

13   offense?

14        THE COURT:  The defendants are charged with both the

15   RICO conspiracy and aiding and abetting a RICO conspiracy.

16   And the law recognizes both as offenses.  And there's a

17   separate instruction later on in here telling the jury that if

18   they find the defendant guilty of one or the other, that they

19   must be unanimous as to whether or not it's aiding and

20   abetting or the underlying substantive RICO.

21        So, this is appropriate because they are --

22        MR. MOFFITT:  But it's a RICO conspiracy.

23        THE COURT:  But -- correct.  They're charged with

24   both.  Section 2 is a separate --

25        MR. MOFFITT:  But they're not charged with a

1   substantive RICO.  That's my problem.

2          THE COURT:  They're charged with RICO -- when I say

3   substantive RICO, maybe I misspoke or you misunderstood me, I

4   mean the RICO conspiracy.

5          The RICO conspiracy is separate from aiding and

6   abetting a RICO conspiracy.  The law is clear on that.

7          MR. MOFFITT:  All right.  For purposes of the record,

8   I would object to that.

9          THE COURT:  Okay.  Your objection will be noted for

10   the record.

11          The next objection is to Instruction 27 at Page 31.

12   This is setting forth the statute that the defendants are

13   charged under.  You have objected, Mr. Moffitt.

14          MR. MOFFITT:  It has "associated with any

15   enterprise."  Under our theory of the case, you could be

16   associated with Hamas and not have violated the law.  This

17   is -- this begins to look like guilt by association because

18   all it says is you need to associate with the enterprise.

19          MR. SCHAR:  Judge, this is a -- would be a recurring

20   theme throughout what I see as the objections of the

21   defendants.

22          It goes both to the First Amendment issue, bifarious

23   nature of the organization and other issues that have been

24   raised and some in Latin that I can't pronounce very well.

25          The point of this is that these are not speech crimes

1   that are charged.  These are not association crimes that have

2   been charged.  In order to be convicted of RICO, and I think

3   you wrote about this in one of your earlier opinions in this

4   case, 2005 Westlaw 3095543, November of 2005, United States

5   vs. Marzook, the defendants must be convicted of agreeing to

6   run the affairs of an enterprise through a pattern of

7   racketeering activities.  Those are the elements that are laid

8   out through RICO.

9         There is no way to convict them based merely on their

10  speech or based merely on their association with Hamas.

11        Hamas itself, under RICO law, the enterprise itself

12  could be not only not multifarious, it can be completely

13  legal.  It could be IBM, it could be McDonald's, it could be

14  any number of corporations.  That's not the crime.  The

15  association with the enterprise isn't the crime, and that's

16  not what RICO criminalizes or RICO conspiracy.

17        It criminalizes the agreement to run the enterprise,

18  whether it be purely legal, partially illegal or totally

19  illegal, through a pattern of racketeering activity.

20        The only way for these defendants to be convicted of

21  RICO conspiracy is a finding by the jury that they agreed to

22  run the enterprise through a pattern of racketeering activity.

23  So, there is no need to attempt to define or discuss the

24  enterprise as bifarious or not bifarious.  That's done in the

25  enterprise instruction, which, in fact, says it can be both

1  legal and illegal, and again I think this goes to the

2  strict- --

3          THE COURT:  Juris.

4          MR. MOFFITT:  Strictissimi juris.

5          MR. SCHAR:  -- issue and all the other issues related

6  to that of the bifarious nature.  The elements of this resolve

7  all of these issues.

8          THE COURT:  Mr. Moffitt, and this does go beyond

9  Instruction 27.  You have raised this issue, as has

10 Mr. Deutsch, with respect to the RICO -- the various RICO

11 conspiracy instructions.

12         Why doesn't -- and I'm looking at the Seventh Circuit

13 patterns, if you have your pattern book, Page 320, the

14 enterprise association and fact instruction.  That

15 specifically says -- the first paragraph, in talking about an

16 enterprise, this group may be associated together for purposes

17 that are both legal and illegal.

18         Why doesn't that take care of this issue, and why

19 aren't your arguments better placed in a theory of the defense

20 instruction?

21         MR. MOFFITT:  Well, first of all, if we examine the

22 proof in the case, among the proof in the case is the

23 Philadelphia meeting.  The government spent day after day on

24 the Philadelphia meeting, which is a meeting where people were

25 associated together to discuss political events, historical

1   events, things happening in the Middle East, and what have

2   you.  If the only proof that the government sought to put

3   before this jury is the idea that it was a pattern of

4   racketeering activity, how would the Philadelphia meeting be

5   relevant to any of that in as much as the Philadelphia meeting

6   does not involve any particular pattern of racketeering and

7   clearly involves First Amendment issues, it seems to me.

8           Second of all, this does not discuss -- this does not

9   discuss the multifarious nature of this particular

10  organization, that it has both legal and illegal activity,

11  according to the government, and it doesn't discuss the

12  meaning of whether or not, if the defendant's association was

13  with the legal activity, that the defendants should not be

14  found guilty.  This presupposes that the defendants'

15  involvement was with both the legal and the illegal activity,

16  and that's exactly what we're arguing here.

17          THE COURT:  How does it presuppose that when the

18  instruction, the pattern instructions indicate that an

19  enterprise can be both and that in order to be liable, setting

20  forth the elements, you have to find the pattern of

21  racketeering which --

22          MR. MOFFITT:  Well, it says --

23          THE COURT:  -- of the illegal?

24          MR. MOFFITT:  The government must prove that the

25  group described in the indictment was the enterprise charged,

1   but need not prove each and every allegation in the

2   indictment.  The government must prove the association had

3   some form, structure, beyond the minimum necessary.

4          It says nothing about the idea that Hamas is a

5   political organization; that a defendant could associate with

6   it as an enterprise in that context and be completely not

7   guilty of a crime.

8          What I'm saying is that these instructions ultimately

9   do not contemplate an organization like Hamas.

10          MR. SCHAR:  Judge, these --

11          MR. MOFFITT:  They don't --

12          MR. SCHAR:  Sorry.

13          MR. MOFFITT:  They're as inapplicable in this sense

14   as they would be to the Republican Party.  And I could create

15   a racketeering indictment for the Republican Party in light of

16   the corruption and Abramoff and all the rest of that.  But

17   that would mean that every person who was a member of the

18   Republican Party or who associated themselves with the

19   Republican Party was involved in the enterprise that was

20   illegal, and that's the problem with these instructions.

21   These instructions contemplate organized crime.  That's what

22   the purpose of RICO was from the very beginning.

23          I would suggest to you that the reason that this is

24   different is because of the nature of the organization

25   involved.  They do not contemplate -- they did not contemplate

1    a multifarious organization.  What they contemplated is an

2    illegal organization that had both legal and illegal activity,

3    but they did not contemplate an organization like the

4    Communist Party or like Hamas or something somebody could

5    join, be a part of and what have you and, for instance, send

6    money overseas for the purposes of furthering education.

7         They just don't contemplate that -- the existence of

8    that kind of organization.  They contemplate the existence of

9    a wholly criminal enterprise that may have some illegal or may

10   have some illegal or have some legal activity but that the

11   enterprise itself is entirely illegal, and they just do not

12   contemplate this kind of organization.

13        And to assume that they do under these circumstances

14   assumes more than the instruction itself says.  What we have

15   here is this is an enterprise involved in an illegal activity

16   and whether anybody, if they associated with it, they

17   therefore are involved in that activity.  And it's clearly

18   guilt by association and what have you.  They do not

19   contemplate a political organization.

20        MR. SCHAR:  Judge, I just don't see how you can read

21   these instructions in their totality and come up with that

22   conclusion.

23        Not only do the instructions on their face suggest

24   they can be a completely legal organization and has been

25   charged in this building repeatedly, such as the Secretary of

 1    State's office.  But it's not -- the Republican Party arguably

 2    could be an enterprise and if all someone did was associate

 3    with it and the jury followed the instructions, there's no way

 4    they would be convicted because what the instructions will

 5    require when you look at them as a whole is that the

 6    individual defendants be judged as to whether they agreed to

 7    run the enterprise through a pattern of racketeering activity.

 8         And if the evidence -- and this is argument now -- if

 9    the evidence is only that they associated and did not come to

10    that agreement, then the jury will have no choice if they

11    follow the instructions, which they'll be obviously instructed

12    and presumed to do, than to find the defendants not guilty.

13         When you read them as a whole, the instructions

14    clearly contemplate both legal, wholly legal, wholly illegal,

15    and some combination in terms of an enterprise and only permit

16    guilt through the agreement to run that enterprise through a

17    pattern of racketeering activity.

18         THE COURT:  Well -- and I'll hear you on the next

19    instruction.

20         Your objection to Government Instruction 27 is

21    overruled because all 27 does is set forth the statute that

22    Count One covers.  The substantive jury instructions follow.

23         So, Instruction 27 quotes from 1962(d), which is the

24    defendants are charged with.  That is overruled.

25         Now, the next instructions -- and I'm looking at --

1  so, Government Instruction 27 I will give.

2       Government Instruction 28, which is pattern from the

3  Seventh Circuit committee 1962(d), setting forth the elements,

4  you raised the objection that a specific intent must be

5  included in there.  And you raise -- you call it your specific

6  intent objection, that it must include a reference to the

7  specific intent mandated by the doctrine of strictissimi juris

8  when the First Amendment is implicated by a person's

9  membership in a multifarious organization.

10       Mr. Moffitt, address that specific argument; namely,

11  the specific intent.

12       MR. MOFFITT:  Well, again, the proof in this case

13  involves, with respect to Dr. Ashqar, the keeping of

14  documents, the organizing of the Philadelphia meeting, and

15  those things.  Substantial evidence has been offered that his

16  association with Hamas -- in fact, in opening statement, they

17  called him an archivist, as I remember.

18       And that seems to be a part of the pattern of

19  racketeering activity that they're suggesting here, that he

20  was a person who was -- who kept documents, kept a history,

21  who also organized a meeting in Philadelphia, among other

22  things.

23       Keeping documents, the mere possession of documents

24  is not illicit.  All right?  The evidence in the case doesn't

25  show how he used a document to further the pattern of

1    racketeering activity.  It just shows that he kept the

2    document.  Nor does the evidence show anything about the

3    Philadelphia meeting.

4         What they suggest here is exactly what I suggest to

5    you, that all you need do is declare your association with

6    Hamas and that's enough; that Hamas was the enterprise.  Did

7    the activities of Hamas affect interstate commerce?  Well,

8    having a meeting in Philadelphia where you invite people to

9    speak affects interstate commerce.  All right?  And that's all

10   you have to prove, according to this.

11        There's just nothing here that allows a juror to

12   decide anything beyond, well, if he has an association with

13   Hamas, that's the end of it.

14        THE COURT:  But how can you say that when the first

15   element here, that the government has to prove beyond a

16   reasonable doubt is that the defendant knowingly conspired to

17   conduct or participate in the conduct of the affairs of Hamas,

18   an enterprise, through a pattern of racketeering activity?

19        MR. MOFFITT:  Well, remember, again, this is a

20   conspiracy case.

21        THE COURT:  I'm reading from the conspiracy element.

22        MR. MOFFITT:  So, the question, again, becomes how do

23   you distinguish conducting this -- the government can take any

24   act and say it's in furtherance of a conspiracy.  They can

25   take a phone call made to set up the Philadelphia meeting.

1          THE COURT:  But they can't take any act and say it's

2     a racketeering activity because the racketeering activities

3     are described by law, and they must conduct this through a

4     pattern of racketeering activity, and holding documents

5     doesn't constitute racketeering activity.

6          MR. MOFFITT:  Well, if -- you know, I wish I had

7     asked you that before because I would have objected to any

8     document that they put in.

9          But I think I did say --

10          THE COURT:  Well, that objection would have gone the

11     same line as your book objection.  Evidence of something is

12     different than telling the jury they must find this element.

13          But we're not going to revisit that.

14          MR. MOFFITT:  Well --

15          THE COURT:  How can you -- I don't -- you're asking

16     me to throw in another element that isn't in the pattern

17     instructions.

18          MR. MOFFITT:  I understand.  And I still say to you

19     that these instructions do not contemplate charging an

20     organization such as Hamas, which is the government of a

21     country where 60 percent of the people in the country voted

22     for Hamas -- all right?  -- in the last election.  These do

23     not -- do not -- contemplate that type of organization any

24     more than they would have contemplated the Communist Party.

25          THE COURT:  But these instructions are used in all

 1   sorts of criminal cases where the enterprise itself is not

 2   illegal.  Secretary of State's Office is a perfect example.

 3   These instructions were used in the Ryan case.

 4           MR. MOFFITT:  I understand.

 5           But let me try to explain the difference between the

 6   Secretary of State's Office and a political party.  There is

 7   no question that turning Hamas into a RICO enterprise and not

 8   distinguishing between its good and bad issues has an adverse

 9   effect on people's ability to exercise their First Amendment

10   right.

11           Why would anybody under those circumstances associate

12   in any way with Hamas?

13           THE COURT:  But --

14           MR. MOFFITT:  So, to the extent that this chills

15   First Amendment rights, it clearly does.  The --

16           THE COURT:  I will take up your First Amendment

17   proposed instructions later.  I'm just now focusing on the

18   elements instruction, which, back to the enterprise element

19   that we've gone over --

20           MR. MOFFITT:  Well, to the --

21           THE COURT:  -- clearly contemplates an enterprise

22   that engages in both legal and illegal activities, and the

23   instructions make clear that you can't just find associating

24   with an enterprise to be illegal.  You've got to find a

25   pattern of racketeering activity as one of the elements.

1    Without that --

2            MR. MOFFITT:  Well, what you --

3            THE COURT:  -- you win.

4            MR. MOFFITT:  Are you suggesting that the only way we

5    could lose this case is if the government -- understanding

6    that the pattern of racketeering activity, that somebody has

7    to show that Dr. Ashqar was engaged in a pattern of activity

8    involving kidnapping, that he personally was engaged in it?

9            THE COURT:  No, I'm not suggesting that at all.

10           I am suggesting that if the jury finds that the

11   government has proven beyond a reasonable doubt each of the

12   elements set forth in the pattern instruction on Page 317 --

13           MR. MOFFITT:  But, ma'am, you can prove each of the

14   elements by simply saying Hamas did X.

15           THE COURT:  Beyond a reasonable doubt?  I don't think

16   so.

17           MR. MOFFITT:  Well, wait a minute.  No, let's assume

18   for the sake of argument, let's talk about the proof here.

19           We've got proof, according to the government, that

20   Hamas was engaged in kidnapping.  We have proof that Hamas was

21   engaged, in their view, in murder.  All right?

22           Now we have a defendant who voluntarily associates

23   himself with Hamas, the political entity.  Therefore, how do

24   you -- how does a jury distinguish between those two things

25   without dealing with the specific intent of the defendant?

1    Because if the defendant voluntarily associated with Hamas,

2    knowing that some of the things that Hamas does are those

3    things and yet it does other things, for instance, fund

4    hospitals and create hospitals and fund education and various

5    other things, and the defendant chooses to associate, why

6    isn't it proof then sufficient to establish that the defendant

7    willingly associated with Hamas, the illegal entity?

8              THE COURT:  Mr. Schar?

9              MR. MOFFITT:  That's the problem here.

10             THE COURT:  Because the first element takes care of

11   that.

12             Mr. Schar?

13             MR. SCHAR:  Yes, Judge.  In order to meet the first

14   element, you must show each individual defendant agreed to run

15   the affairs through a pattern of racketeering activity.

16             THE COURT:  Knowingly did so.

17             MR. SCHAR:  Yes.  And the pattern of racketeering

18   actually has instruction in and of itself which lays out what

19   the defendants need to agree to have done.

20             THE COURT:  Mr. Deutsch, you wanted to ask something.

21             MR. DEUTSCH:  I know you wanted to go to my

22   objections second, but obviously we have the same --

23             THE COURT:  You have the same objection.

24             MR. DEUTSCH:  Yeah.  And, actually, I tried to draft

25   an instruction that I thought captured what the pattern says,

1   as well as dealt with this kind of peculiar issue about

2   dealing with a political organization, not a governmental

3   organization, but an organization that has First Amendment

4   rights of association and speech.

5           And what I --

6           THE COURT:  Where are you?  What --

7           MR. DEUTSCH:  This is my Salah Instruction No. 1.

8           THE COURT:  Okay.  Hold on.

9           Okay.

10          MR. DEUTSCH:  And if you look at the propositions

11  that the government must prove -- and I think this is

12  important to deal with this right in this instruction because

13  this is telling the jury what do they have to prove to prove

14  them guilty of Count One.  And I would say to you that it

15  should read, "First, a defendant knowingly conspired to

16  conduct or participate in the conduct of the illegal affairs

17  of Hamas."

18          And, therefore, it differentiates with knowingly

19  participating in the legal affairs of Hamas as opposed to the

20  illegal affairs.

21          Now, I know you saying through a pattern of

22  racketeering activity and you're saying, well, that kind of

23  captures it.  But in this case, I think you have to be

24  specific with the jury, telling them that if somebody

25  participated in the legal affairs of Hamas, then that does not

1   make them part of a pattern of racketeering activity.

2           And, therefore, I would ask that that be added, "the

3   illegal affairs of Hamas," because I don't think the

4   government is arguing or saying that if somebody participated

5   in the legal affairs of Hamas, they should be found guilty of

6   RICO.

7           So, that kind of clarifies it.  And, then, I also,

8   you know, asked, going down, "In deciding whether defendant

9   knowingly conspired, you may consider whether at the time of

10  defendant's actions it was a violation of United States law to

11  provide material aid or do business with Hamas."

12          I think that's also important because it goes to the

13  issue of notice and knowledge, and you're saying they have to

14  knowingly conspire, but you're also telling the jury they can

15  consider the fact that it wasn't illegal to be -- to do

16  business with Hamas or aid Hamas at the time of the -- their

17  actions.

18          Now, you're not saying that they didn't -- one way or

19  the other, but you're saying they can consider it.

20          And, then, second, finally, on the first thing, it

21  says, "You must also consider that the law of the United

22  States does not criminalize mere membership in an

23  organization, nor does it criminalize those who are in

24  sympathy with an organization that carries out legal and

25  illegal acts in the absence of proof beyond a reasonable doubt

1    that a person had the specific intent to further the illegal

2    acts of the racketeering enterprise."

3            And that gets down to Scales and what the judge

4    instructed in Al-Arian and I think the Boim case.  I think the

5    Court is -- understanding Boim was a civil case, it was under

6    a different statute, but I think what Judge Rovner was saying

7    is that you have to show a specific intent to further the

8    illegal aims of the organization because you're dealing with

9    an organization that does legal and illegal activities in --

10   under the guise of the First Amendment.

11           And I think that's what makes it different than the

12   Secretary of State's Office or Cook County Sheriff's

13   Department or all these other organizations.

14           No one argues that, you know, you have a First

15   Amendment right to, you know, be part of the Secretary of

16   State's Office.  I mean, you're not really -- you're working

17   for a governmental entity.  But when you're talking about a

18   political party, a political movement, I think it's very

19   important to put those caveats right in the -- what the

20   government has to prove.  And then it follows exactly the

21   pattern instruction.

22           So, it just adds a little bit of clarification in

23   that first definition of what they have to prove.

24           THE COURT:  Mr. Schar, what about that?  Starting

25   with the first.

1       MR. SCHAR:  Judge --

2       THE COURT:  Government's Instruction No. 28, adding

3  "to the illegal affairs of Hamas."

4       MR. SCHAR:  That's an inaccurate statement of the

5  law, Judge.  You can conduct the legal affairs of Hamas and be

6  guilty if you are conducting through a pattern of racketeering

7  activity.

8       I mean, it would be the same as deciding to build a

9  hospital through a series of frauds.  It's completely legal to

10  build a hospital, but it's not the illegal affairs of Hamas.

11  Putting aside the fact you have to then define what the

12  illegal affairs of Hamas are, the whole point of this crime is

13  running the affairs of an enterprise, whether it be legal or

14  illegal, through a pattern of racketeering activity.  That's

15  what makes it a crime, the agreement to run it through a

16  pattern of criminal activity.

17       So, not only is it a misstatement of the law, I think

18  it's confusing as well and would require further explanation

19  as to what the illegal affairs of Hamas were.

20       As to the second point, that's also a misstatement of

21  the law.  It was not -- you couldn't provide material aid if

22  that material aid was in furtherance of a racketeering

23  conspiracy.  In other words, that material aid was providing

24  money and money laundering and that was part of a pattern of

25  racketeering activity, then it was prior to -- prior to 1995,

1    which I assume this is what this has been trying to go to, and

2    again, it's been a misstatement and a misapplication of the

3    reason that Hamas and the purpose and the illegal effect of

4    Hamas being designated in 1995.

5          And then this whole Scales argument about specific

6    intent.  Not only is it not supported by Boim, it's the exact

7    opposite.  What Boim says very clearly is for association

8    crimes, crimes that are purely of association or purely of

9    speech, Scales and its progeny would be in effect at that

10   point if you must intend to specifically further the illegal

11   aims.  That's not RICO.

12         RICO is not an association crime.  It's not a speech

13   crime.  It is a crime that would specifically and conspiracy

14   specifically requires an agreement to run the affairs of an

15   enterprise through a pattern of racketeering activity.  So

16   Scales and its progeny have no application to racketeering law

17   whatsoever.

18         And, accordingly, the pattern instruction, the

19   instruction given over and over again, Judge, for legal and

20   illegal and any combination of enterprises is what should be

21   given in this case.

22         THE COURT:  Briefly, Mr. Moffitt.

23         MR. MOFFITT:  Ma'am, that's exactly the problem with

24   the pattern.  The problem is that it would cover virtually any

25   association with the organization because you could then tie

1    that association to its illegal aims and say that that

2    association furthered its illegal aims.  You could say that

3    the association of ten people furthered its illegal aims no

4    matter what those people did because that populated the

5    organization.

6         So, if you go out and you recruit somebody

7    politically for the organization, you're furthering the aims

8    of the organization; and, therefore, you would be guilty of

9    aiding the pattern of racketeering activity by simply

10   recruiting a person to support Hamas.  That's the problem with

11   this statute.

12        THE COURT:  I will take Government Instruction No. 28

13   under advisement, as well as Salah's 1.  I want to go back and

14   look at Judge Rovner's opinion in Boim, and I will give you a

15   ruling.

16        Government Instruction 29, there is an objection --

17   the same objection.  This is, again, a pattern instruction,

18   Pattern 5.08.

19        I am overruling your specific intent objection to

20   this instruction.  To the extent such an instruction is

21   required, the appropriate place for it would be in the

22   elements instruction, not in the definition of a conspiracy as

23   set forth in Pattern 5.08.

24        I do have one question.  Bear with me a minute.

25        The language, Mr. Schar, in deciding whether the

1   charged conspiracy exists, the third paragraph, which you have

2   taken from the committee notes, Page 82 of the pattern, you

3   have left out the second sentence, "An agreement may be proved

4   from all the circumstances and the words and conduct of all

5   the alleged participants which are shown by the evidence."

6           You have left that language out, and I think --

7           MR. SCHAR:  That should be in there, Judge.

8           THE COURT:  -- that should be in there.

9           So, put "which are shown by the evidence" back in.

10          MR. DEUTSCH:  Judge, again, I also have a different

11  objection which we might as well take up now.

12          THE COURT:  Sure.

13          MR. DEUTSCH:  And that's --

14          THE COURT:  Wait a minute.  Let me find yours --

15          MR. DEUTSCH:  Okay.

16          THE COURT:  -- because I've got my notes all over

17  them.

18          Your objection to 29, Mr. Deutsch, is that in

19  determining what the defendant did or said, you may consider

20  only the defendant's own words --

21          MR. DEUTSCH:  Word and acts.

22          THE COURT:  -- or acts.

23          MR. DEUTSCH:  And then I would deplete the last

24  sentence, "You may also consider the words or acts of other

25  persons to decide what the defendant did or said, and you may

 1    use them to help you understand what the defendant did or

 2    said."

 3             I don't see that as part of the -- maybe I'm wrong,

 4    but I don't see that as part of the pattern.  And I think it's

 5    in contradiction to what the pattern says, which is in

 6    determining what the defendant did or said, you may consider

 7    the defendant's own words and acts.  I think that's what the

 8    law is.

 9             Now, to start to tell them that they can consider

10    what the defendant did or said by somebody else's words or

11    acts, I think, goes beyond what's contemplated by the law.

12             THE COURT:  I did quite a bit of research on this.

13             MR. DEUTSCH:  Okay.

14             THE COURT:  And your objection is overruled, given

15    clear Seventh Circuit law.  U.S. vs. Jones, 950 F.2d, 1309, a

16    1991 Seventh Circuit case, as well as the comments to the

17    committee -- the comments as to Pattern Instruction 5.08.

18             The first statement is correct, that they must base

19    their decision only on what the defendant did or said.  But in

20    determining what the defendant did or said, the law is clear

21    in the Seventh Circuit, which I am bound by, that they don't

22    only look at the defendant's own words or acts.  They can also

23    consider co-conspirator statements in deciding what the

24    defendant's acts or words were.

25             So, that objection is overruled to 29.  I will give

1    Government Instruction 29 with the additional language, Mr.

2    Schar, that I have given you, to go at the end of the third

3    paragraph.

4            Government Instruction 30 --

5            MR. MOFFITT:  We object to.

6            THE COURT:  -- you did not object to it.

7            MR. MOFFITT:  Right.

8            THE COURT:  Are you objecting now?

9            MR. MOFFITT:  No.

10           MR. DEUTSCH:  I did.

11           THE COURT:  I thought you said you were.

12           All right.  You did not object.

13           Mr. Deutsch, you did, and I will -- I'm going to

14   overrule your objection, Mr. Deutsch, as long as I'm on it.

15   This is a clear statement of the law.  I will give Government

16   Instruction No. 30.

17           Government Instruction 31, the Pinkerton instruction,

18   Pattern 5.09, Mr. Moffitt, you have objected that it should

19   not -- Pinkerton should not be given where an organization

20   such as Hamas has a multifarious nature.

21           If you want to expand on that at all, go ahead.

22           MR. MOFFITT:  It falls within the same framework.  If

23   Pinkerton liability is -- essentially says that you're liable

24   for the acts of others.  Here we have a conspiracy or an

25   organization that sends money to provide for hospitals and

1    supposedly kidnaps people and does suicide bombings.  Okay?

2          The question here is you can associate with the

3    organization legally and not be involved in the suicide

4    bombings at all.

5          But under our theory of Pinkerton liability, you're

6    liable for all of that.  And that's just not appropriate here.

7          THE COURT:  Mr. Schar?

8          And Mr. Deutsch has --

9          MR. DEUTSCH:  I also -- I don't under -- there's a

10   mistake in the counts here.  Count Two is out.  I don't

11   know --

12         THE COURT:  I thought the reference here may have

13   been the renumbering.

14         MR. DEUTSCH:  Oh.

15         THE COURT:  But, otherwise, you're absolutely right,

16   that that is formerly Count Three that they've now made Count

17   Two.

18         But let me -- Mr. Schar, what about that?

19         MR. SCHAR:  Judge, I think we're going to withdraw

20   this instruction.

21         THE COURT:  Good idea.

22         Government 31 is withdrawn.  So, I will not give the

23   Pinkerton instruction.

24         Government 32 is the pattern instruction on

25   enterprise that I have already read to you.  I am overruling

1  your specific intent objection which was given by both

2  defendants because to the extent that's required, I think it

3  goes in the elements, the initial elements instruction, and

4  not in these subsequent instructions.

5          And as I have said before, the enterprise definition

6  here makes clear that an enterprise may include legal and

7  illegal activities.

8          Government Instruction 33, again, that's a pattern.

9  I am overruling your objection for the reasons I just stated.

10  I will give Government 33.

11          Same for Government 34, and same for Government 35.

12  I will give each of those instructions.

13          MR. MOFFITT:  May I just make an argument on

14  Government 33?

15          THE COURT:  Sure.

16          This is -- wait a minute.  My pages have slipped

17  here.  To be associated with an enterprise.  This is the

18  pattern.

19          Yes?

20          MR. MOFFITT:  If a person associates with the

21  enterprise for the purpose of ending the occupation, and

22  that's their purpose, they would be, under this circumstance,

23  under this instruction, guilty of being associated with an --

24  a RICO enterprise.

25          So, ostensibly, Hamas' purpose is to end the

1  occupation.  It is -- its definition is resistance to the

2  occupation.  So, if a person resists the occupation under the

3  guise of Hamas and does nothing else, participates in a

4  non-violent resistance to the occupation, a demonstration,

5  under these circumstances, it could further the illegal goals

6  of Hamas.  That's the -- that, again, is the problem here.

7       You don't have to do anything other than something

8  that can be construed by the government to further Hamas'

9  goals.  And if one of those goals is mere resistance to the

10  occupation or getting rid of the occupation and you do

11  something in that way, you violated the law.  You've become a

12  member associated with a RICO enterprise.  And I think that's

13  inappropriate.

14       MR. SCHAR:  You have become associated with a RICO

15  enterprise, but you haven't committed a crime.

16       THE COURT:  Right.

17       MR. SCHAR:  That requires the elements.

18       THE COURT:  Yes.

19       As I said before, objection is overruled.  I will

20  give Government Instruction 33.

21       Government Instruction 35, and 34 I've indicated I

22  will give.

23       I'm going to take about a ten-minute break and pick

24  up with Government Instruction 36.

25    (Brief recess.)

```
 1            THE COURT:  Did we lose Mr. Ferguson?

 2            MR. SCHAR:  He will be back.  We can keep going.

 3            THE COURT:  I have a question for you not related to

 4   jury instructions.

 5            As you know, we have a lawyer on our jury who Monday

 6   morning at 10:00 o'clock has a fairness hearing scheduled in

 7   this building.  He is not sure that anybody could cover it for

 8   him.  Notice has already gone out.  Otherwise, it would be

 9   easy to move.  But notice has been sent out.

10            I have asked my law clerk to call -- it's one thing

11   after another.  I've asked my law clerk to call him and see if

12   there's anyway anybody else can cover it or if objections have

13   been filed to see if there's an issue.

14            MR. SCHAR:  Is it something that would be

15   inappropriate for you to try to request --

16            THE COURT:  Well, I called the judge --

17            MR. SCHAR:  Okay.

18            THE COURT:  -- to move it.  The judge doesn't have a

19   problem, but the problem is it's a fairness hearing in a class

20   action where hundreds of notices have gone out to the

21   potential class members saying 10:00 o'clock on January 8th.

22            MR. DEUTSCH:  Will they know how long it's likely to

23   take?  They don't know how many people.

24            THE COURT:  It depends how many people show up.  It

25   could be three seconds.
```

1          MR. DEUTSCH:  Yeah.

2          THE COURT:  Nobody shows up, which is the norm.  But

3   I don't know that anything normal has happened, and I'm not

4   betting on the norm.

5          We could start at 10:30 on Monday because it sounds

6   like the government is going to take a full day anyway.  I

7   guess we could start on Tuesday, although I don't like that

8   idea.  I'd rather get started, even if it's a little later, on

9   Monday.  I don't know what your thoughts are.

10          MR. SCHAR:  Will we --

11          THE COURT:  And I know Mr. Ferguson isn't here,

12   but --

13          MR. SCHAR:  I think our preference would be to start

14   on Monday, as well, Judge.

15          I'm wondering if there's any way that by tomorrow

16   we'll have a little bit more information.

17          THE COURT:  The only additional information -- it's

18   very hard to move this because notice has gone out, and it

19   would be extremely expensive to re-notice everybody.

20          The only open question is, is there anybody else who

21   can cover it.

22          I know when my law clerk spoke with him, when he

23   raised this a little while ago and we weren't sure of timing

24   of things, that he said he really wanted to be there.  And he

25   wasn't sure if anybody else could cover.  It sounds like it's

1    something he's put a lot into.

2           MR. SPIELFOGEL:  That he really wanted to be there?

3           THE COURT:  Yes, he really wanted to be at the

4    hearing, not that he didn't want to be here.

5           MR. DEUTSCH:  It's supposed to start at 10:00, the

6    fairness hearing?

7           THE COURT:  Correct.

8           MR. SCHAR:  Seems to me, just given the history of

9    those types of hearings, to try and maybe push it a half hour;

10   and if it turns out 500 people show up and he lets us know

11   it's going to be an all-day affair, you know --

12          THE COURT:  That I would be shocked.

13          MR. SCHAR:  Yes.

14          THE COURT:  If that happened.

15          MR. SCHAR:  I would agree with your Honor that to at

16   least get rolling on Monday would be preferable.

17          THE COURT:  Because I assume we'd end up ending early

18   because I wasn't going to make you start your closing and get

19   halfway through and stop and finish it the next day.

20          MR. DEUTSCH:  I understand, Judge.  Here's my view.

21   I don't have a problem with starting a little later, but I

22   think the government should go until they're done on Monday.

23          THE COURT:  I agree.

24          MR. DEUTSCH:  Okay.  So that we can start on the next

25   day fresh and they have completed theirs.

```
 1            THE COURT:  I agree.  And it sounds like that
 2   wouldn't be an issue.
 3            MR. SCHAR:  I mean, I think the difficulty is knowing
 4   how long the closing is going to take.  If we get to 5:00 and
 5   Mr. Ferguson says I have two more hours, I guess, it's up to
 6   your Honor whether you want to stay until 7:00 or not.
 7            THE COURT:  Well, I won't keep the jury that late.
 8            But certainly once Mr. Ferguson starts -- I guess the
 9   other thing we could do is start at 9:00 and break at 10:00
10   for a half hour and pick back up.
11            MR. SPIELFOGEL:  Or we could start at 6:00 a.m.
12   and --
13            THE COURT:  I would do that.  But I won't make the
14   jury.
15            Let's see when Mr. Ferguson comes.  Do you have a
16   preference one way or the other?
17            MR. SCHAR:  We prefer to start it a little later than
18   try to start it and take a break for a half hour or 45
19   minutes.  That would be our preference.
20            Judge, I think it's very difficult to predict how
21   long any of these arguments are going to go.
22            MR. MOFFITT:  What I'm concerned about, being the
23   caboose here, is that I don't get stuck with my argument
24   because Mr. Ferguson goes over into the next day, me getting
25   my argument split up.
```

1          THE COURT:  I won't make anybody split their argument

2    up.  If you think that's a possibility, I would let you do it

3    on Wednesday.

4          MR. MOFFITT:  Okay.

5          THE COURT:  It sounded to me, from what you said

6    before, that the government would go Monday and both

7    defendants would go Tuesday, possibly rebuttal, although

8    rebuttal may go into Wednesday, and under any scenario, it

9    sounds like instructions on Wednesday.

10         But I won't make you split yours, Mr. Moffitt.

11         Is Mr. Ferguson coming back?

12         MR. SCHAR:  He is, Judge.  He had to address

13   something downstairs.

14         THE COURT:  I'll raise this with him, but I would --

15   Mr. Lapertosa has called again, so I would like to give him an

16   answer.

17         Here's Mr. Ferguson.

18         Mr. Ferguson, do you have any better idea of how long

19   your closing is going to be?  The reason I raise this is I've

20   just informed the lawyers that our lawyer on the jury has a

21   fairness hearing on Monday in this building at 10:00 o'clock,

22   and it's a fairness for a class action settlement which means

23   notice has already gone out to the whole class.  The judge

24   wouldn't mind moving it, but it's difficult to move because

25   notice has gone out to the whole class.  So there are hundreds

1   of people who, if they choose to object, would object at 10:00

2   o'clock on Monday.

3         Our lawyer sounds like he's put a lot into this,

4   would really like to be there is what he has conveyed.  My law

5   clerk is calling him to see if any other objections have been

6   filed or if he thinks anybody else can cover or how long he

7   anticipates it might be.

8         Having said that, my question to you is, and I've had

9   several proposals, that we start at 10:30 on Monday, that we

10  start at 9:00 and break at 10:00 for a half hour, that we

11  start on Tuesday instead of Monday, although I'm reluctant to

12  do that.  I'd rather do this on Monday.

13        MR. FERGUSON:  Judge, with respect to 9:00 and

14  breaking versus 10:30, absolutely 10:30.

15        THE COURT:  Okay.

16        MR. FERGUSON:  In part, because however long this is

17  going to take would seem at the moment unclear.  So, I don't

18  want to start and then break.

19        So, it would be 10:30.

20        Beyond that, I mean, this is a work in progress.  My

21  anticipation was, given the way that our trial days have

22  generally gone, it was going to be a day.  So, this may put us

23  in a situation where there's a carryover into the next morning

24  of a little bit, but I can't -- I haven't timed it yet.

25        THE COURT:  Okay.  I'll get the answer to that

1    question.

2          What I may do is propose to the jury 10:30 to 5:30.

3    But I know we have two jurors who have a three-hour commute,

4    and I don't know what the train schedule is.  So, I don't know

5    if that extra half hour would be a problem or not.

6          All right.  We will -- I'll get some answers.  My law

7    clerk is calling him, and I will let you know.

8          Government Instruction 36.

9          MR. DEUTSCH:  Judge, I have just a minor thing on 35.

10   Sorry.  Again, because we're going with Mr. Moffitt --

11         THE COURT:  No, that's fine.

12         MR. DEUTSCH:  And, again, I don't have the pattern in

13   front of me, but looking at the last sentence of 35, it says,

14   "For the purposes of Count One, the United States does not

15   have to prove that any racketeering acts were actually

16   committed at all or that defendant agreed to personally

17   committing any such acts," and then it says "or that defendant

18   agreed that two or more specific acts would be committed."

19         It seems like we've already said they don't even have

20   to agree that any acts are committed at all --

21         THE COURT:  This is for --

22         MR. DEUTSCH:  -- or that he committed any act, so, I

23   don't understand why that last phrase is in there.  But I

24   guess if it's in the pattern --

25         THE COURT:  It's verbatim from the pattern.

1           MR. DEUTSCH:  Okay.

2           MR. MOFFITT:  For purposes of that, I would renew my

3    objection because it doesn't seem to follow Mr. Schar's

4    argument that they've got to prove what the defendants did

5    here.  It seems to go completely in another direction, that

6    the defendant -- that nothing needs to be -- that for purposes

7    of Count One, the United States didn't have to prove that any

8    activity or that defendant agreed to personally commit any

9    such act or the defendant agreed to two or more specific acts

10   would be -- so, again, all the defendant has to do is

11   associate himself with the illegal entity of Hamas and,

12   therefore, that would be enough.

13          THE COURT:  I've already ruled on that in the context

14   of the elements.  Your objection is overruled.

15          Government Instruction 36.  I will take up both of

16   your objections.  You are requesting, Mr. Deutsch, that beyond

17   a reasonable doubt standard added --

18          MR. DEUTSCH:  Yes.

19          THE COURT:  -- and objecting to the type of

20   racketeering activity as vague and confusing.

21          And Mr. Moffitt, this is your after the effective

22   date of statute argument.

23          MR. MOFFITT:  Well, it's several things, your Honor.

24   Maybe we weren't clear.  One type of -- you must be unanimous

25   as to one of the following for each defendant:  One type of

1  racketeering activity for which there was an agreement that it

2  be committed by some member of the conspiracy which would

3  include -- could include the defendant as set forth, or at

4  least twice two or more types of racketeering activity for

5  which there was an agreement that each was committed by some

6  other member of the conspiracy.

7        What I would suggest to you is that under this

8  instruction, mere knowledge of the fact that Hamas commits

9  racketeering activity, illegal activity, would be sufficient

10  to place you under this instruction; and, therefore, that

11  alone, once you associated with Hamas, you read in the

12  newspaper that Hamas did something like this, that would place

13  you under the guise of this instruction because you don't have

14  to do anything.

15        And, again, the association with Hamas would be

16  enough under these -- that's why I suggested to you earlier

17  that these do not -- these instructions do not contemplate an

18  organization which is political in character, that has

19  legitimate and illegitimate goals, an organization such as

20  Hamas or any other political party because by the very nature

21  of these instructions, it impinges upon a defendant's First

22  Amendment right, and they don't contemplate an organization

23  where there are First Amendment rights here.

24        I mean, I could join Hamas, as I said earlier, simply

25  because I wanted to resist the occupation.

1    THE COURT:  Mr. Schar?

2    MR. DEUTSCH:  Judge, can I just add so that Mr. Schar

3  can respond to both?

4    THE COURT:  Sure.

5    MR. DEUTSCH:  Here's what I don't really understand.

6  First of all, this is a modified Seventh Circuit instruction

7  as to 18 USC 1962(d).  We don't have a 1962(d) case.  It's a

8  1962(c) case.

9    THE COURT:  It's (d).

10    MR. DEUTSCH:  Oh, (d) is the conspiracy?

11    THE COURT:  Correct; (c) is the substantive.

12    MR. DEUTSCH:  Okay.  Sorry.

13    The other thing I don't understand, and one type of

14  racketeering activity for which -- I don't know what -- what

15  does that mean, one type of racketeering activity?  Is that

16  defined somewhere in another instruction?  What is the jury --

17  what's the type of racketeering activity?

18    It seems -- I mean, again, is it a Seventh Circuit

19  instruction?  But if I were sitting on the jury, I wouldn't

20  know what they meant by one type of racketeering activity.

21    And even as Mr. Moffitt read it, it just seems very

22  incomprehensible to follow.  So, I'm not sure what the import

23  of it is; but, of course, if you're going to put in you must

24  be unanimous, you should put in beyond a reasonable doubt.

25    THE COURT:  I agree on the beyond a reasonable doubt.

1          "You must be unanimous that the government has proven

2     beyond a reasonable doubt as to one of the following for each

3     defendant."

4          Does that make sense?  Work in some "beyond a

5     reasonable doubt" language.

6          MR. SCHAR:  Yes, Judge.

7          THE COURT:  Okay, Mr. Schar, address both

8     Mr. Moffitt's argument, as well as Mr. Deutsch's objection to

9     type.

10          MR. SCHAR:  Judge, as to -- let me lay out the

11     government's position on this particular modification of the

12     instruction.

13          We actually don't think this instruction is necessary

14     under the law.  This is a unanimity requirement as to the

15     types of racketeering activity, and this was -- really follows

16     from the Salinas Supreme Court case that suggests to the jury

17     that they actually must be unanimous as to the type; that is,

18     whether it's murder or money laundering, the type of

19     racketeering activity.

20          The case law is extremely unclear.  In fact, Judge

21     Pallmeyer has written, as you might know, in her post-trial

22     motions that, given the fact that in Salinas there only needs

23     to be an agreement to type and not even specific acts, there

24     wouldn't necessarily need to be a unanimity requirement as to

25     the particular types.

1          That being said, for this particular case on trial in

2   this case alone, because the law is in some ways unclear, we

3   wanted to add a unanimity instruction that basically says, and

4   it follows from 35, which is the defendants -- the pattern

5   agrees that defendants must conspire that at least some member

6   of the conspiracy would commit at least two acts of

7   racketeering.

8          What that part of the pattern does not do is say that

9   there does, in fact, need to be unanimity among the jurors as

10  to which types of racketeering activity.  Again, there needn't

11  be no specific acts agreed to whatsoever.  It's just the

12  running the affairs of an enterprise through a pattern of

13  racketeering activity.

14         So, what this instruction does is tell the jurors,

15  okay, there must be an agreement, a unanimous agreement now

16  beyond a reasonable doubt, for each defendant that they agreed

17  to run the affairs of the enterprise through types of

18  racketeering activity which all 12 jurors agree upon, and that

19  includes either the defendants themselves or an agreement that

20  other members of the conspiracy commit the same type of

21  racketeering activity, whether it's two instances of money

22  laundering, two instances of conspiracy to commit murder at

23  least twice, which is what's required under racketeering, or

24  that there were separate types of racketeering activity, which

25  either, again, the defendant or they've agreed that other

1    members of the conspiracy would commit at least one, and those

2    are the options one and two.

3         So, I think this adds a unanimity requirement, which

4    at least the law is unclear is necessary, but it's the safer

5    bet and does it in a way that complements the pattern in No.

6    35 which lays out that -- which does not include the

7    unanimity.  In fact, it could probably in some ways just be

8    combined in a particular way.

9         THE COURT:  This -- do you want to say anything about

10   Mr. Moffitt's objection?

11        MR. SCHAR:  Mr. Moffitt's objection, Judge, I think

12   that the instruction is clear that for each defendant, so,

13   we're instructing the jury you must decide for both defendant

14   Ashqar and defendant Salah that you're unanimous as to the

15   types of racketeering activity that they agree would be part

16   of the pattern.

17        MR. MOFFITT:  But it also must occur after the

18   effective date of the statute.

19        MR. SCHAR:  Effective date of the statute is 1970,

20   Judge, and the conspiracy doesn't begin until 1988.

21        So, I don't see that being an issue.

22        MR. MOFFITT:  But some of --

23        THE COURT:  He's talking about the predicate act

24   statute.

25        MR. MOFFITT:  Yes.

1          MR. SCHAR:  Judge, that's addressed -- I mean, we can

2    address that later, but I don't think that's accurate.  The

3    later instructions related to when predicates must be decided

4    comes in later.

5          THE COURT:  We'll get to that, and to the extent that

6    is appropriate, I will put that in the particular racketeering

7    activity instructions.

8          With respect to Government Instruction No. 36 -- and

9    I have looked at the law on this quite a bit.  And the law is

10   not resolved on whether the jury has to agree unanimously as

11   to the type of racketeering activity for the two predicate

12   acts.

13         Judge Pallmeyer, in U.S. vs. Ryan in her September of

14   '06 I think it was opinion post-trial, ruled that the jury did

15   not have to agree unanimously.  The law is unsettled.  I will

16   tell you that this instruction is beneficial to the

17   defendants.  And the law is unclear, but I don't --

18         MR. DEUTSCH:  Yeah, I would --

19         MR. MOFFITT:  With that comment, I will withdraw my

20   objection to the instruction.

21         MR. DEUTSCH:  And I will, as well, other than

22   reasonable doubt as you already agreed to go in there.

23         Actually, as Mr. Schar explained it, I understood it

24   for the first time.

25         THE COURT:  But I don't think it's artfully drafted.

1    I think it needs some tweaking.

2         But I think it's wise to leave this in here because I

3    do think it is beneficial to the defendants.

4         I agree, Mr. Schar, I'm not sure the law requires it,

5    but why don't you work on the language, unless you want me to

6    try it.

7         MR. SCHAR:  Judge, we will continue to try to work on

8    the language to try and make it --

9         THE COURT:  Submit a revised 36 by the end of today,

10   and then I'll work with it and see if I can make it a little

11   more clear.

12        It might -- here's a suggestion.  It might make sense

13   to have more in the introductory language.  You must be

14   unanimous as to each defendant -- you must be unanimous as to

15   the types of the racketeering activity as to each defendant in

16   being unanimous or in reaching -- in your unanimity -- and

17   then put 1 or 2.  But have more in the introductory --

18        MR. SCHAR:  Well, if there's a concern about

19   vagueness, I think what we could do is one type of

20   racketeering activity as set forth in the indictment, which

21   does -- I think actually the instructions, as well, it lays

22   out the types of racketeering activity.  So, I think that's --

23        THE COURT:  I think that would be helpful in the

24   introductory, as well as the beyond a reasonable doubt.

25        MR. SCHAR:  Okay.

1          THE COURT:  Okay.

2          I will consider your objections withdrawn to No. 36.

3          No. 37.

4          MR. MOFFITT:  Your Honor, I should have objected to

5     this, as well.

6          THE COURT:  Pardon me?

7          MR. MOFFITT:  I should have objected to this, as

8     well.

9          THE COURT:  Okay.

10         This is the pattern on interstate commerce.  What's

11    your objection?  Same?

12         MR. MOFFITT:  If you find beyond a reasonable doubt

13    either the enterprise may have purchased, sold or moved goods

14    or services that had been originated or original destination

15    outside the states in which the enterprise was located, the

16    actions of the enterprise affected or in any degree the

17    movement of money, goods or service across state lines, then

18    interstate commerce was engaged or affected.

19         There's virtually no way that under the circumstances

20    of this case -- we have information that Dr. Ashqar bought

21    books and purchased books and got money to purchase books.

22    That's -- I would suggest to you that is a completely

23    legitimate activity that the enterprise engaged in.

24         But it seems to me this is another instruction that

25    says any -- any engagement in any activity by the enterprise

1    that affects interstate commerce is sufficient to put it

2    within the ambit of this.  And clearly, you know, money was

3    raised and various other things were done.  And, again, for --

4    this would subject any political enterprise into violating the

5    RICO law.

6         THE COURT:  Your objection is overruled.  This is a

7    pattern instruction.  And it's just one element.  It's the

8    interstate commerce element.  It may be true that the sale of

9    books would satisfy that element, but it doesn't mean it's

10   criminal because the reasons I've stated before.  They have --

11   the government must prove beyond a reasonable doubt the

12   multiple elements that are set forth in the pattern

13   instructions.

14        So, No. 37 is overruled.

15        Instruction 39 -- Instruction 39, 40, 42, 43, 45,

16   this is the Illinois murder statute.

17        MR. SCHAR:  Judge --

18        THE COURT:  Do either of you have any law on either

19   side?  Your objection is that in order for Illinois' statute

20   for murder to be part of the racketeering activity, the murder

21   must have occurred in Illinois.

22        MR. MOFFITT:  Some act furthering the murder has to

23   occur in Illinois.  I mean, I don't think you can take a

24   murder in Wisconsin and make it in Illinois or make it part of

25   a racketeering occurrence using the Illinois statute.  You

1   might be able to use the Wisconsin statute.

2           MR. SCHAR:  Judge, we would refine our position on

3   this, and I think we can address it because there isn't, even

4   under Illinois law, there's not a particular good body of law

5   on this.

6           THE COURT:  Yeah, I haven't found it.

7           MR. DEUTSCH:  Actually, I had a case in which an

8   airplane was flying and there was a crime committed on the

9   airplane, and I found law which said that if the airplane was

10  not over Illinois space, then they didn't have jurisdiction.

11  And, in fact, in the cases, they talk about venue as

12  jurisdiction.

13          THE COURT:  Right.

14          MR. DEUTSCH:  They kind of confuse those two things.

15          So, I don't have the case with me, but I can --

16          THE COURT:  I remember that case.

17          MR. DEUTSCH:  Yeah.

18          MR. SCHAR:  Judge, I think what the government's

19  position would be is actually we would strike as a

20  racketeering predicate the substantive first-degree murder,

21  keeping conspiracy and solicitation which I think resolves a

22  lot of these issues as to the substance of where the murder

23  actually needs to have occurred because now we're just

24  changing it to conspiracy and solicitation.

25          And we would suggest a government instruction that

1   comes at the end of these murder -- Illinois murder

2   instructions which basically says, "In order to charge a

3   conspiracy to commit Illinois first-degree murder or

4   solicitation of Illinois first-degree murder, an act related

5   to the conspiracy or solicitation must occur in Illinois."

6          THE COURT:  So, would you withdraw 39, 40, 42, 43,

7   45?

8          MR. SCHAR:  No.  Those still need to -- they still

9   need to be instructed because the predicates of conspiracy to

10  commit Illinois first-degree murder and solicitation of

11  Illinois first-degree murder still exist.  It's just the

12  substantive Illinois first-degree murder, and then for

13  purposes of conspiracy and solicitation, again -- and these

14  are just -- none of these had to have happened.

15         THE COURT:  Would you take out the first-degree

16  murder instruction No. 39?

17         MR. SCHAR:  I think 39 --

18         THE COURT:  Or is that part of conspiracy?

19         MR. SCHAR:  Well, I think -- yeah, I think that's the

20  issue.  I think 39, as it lays out the statute, probably is

21  not needed.  I think 40, which lays out the elements of

22  first-degree murder, is still needed because of the predicate

23  conspiracy and solicitation to commit first-degree murder.

24         MR. MOFFITT:  It doesn't --

25         MR. SCHAR:  It needs to be reordered.

1          THE COURT:  Why don't you redo those and submit a

2    revised package and think through that and submit -- if you

3    could do it by the end of the day, great.  Certainly tomorrow

4    morning when you come to court.

5          So, 40 -- I'm sorry, 39, 40, 42, 43, 45 and 40 -- no,

6    that's it.  45.

7          I will take those under advisement subject to your

8    revised submission.

9          MR. SCHAR:  I also think Instruction 40 is the

10   elements of first-degree murder, I think needs to be in

11   either-or.  So we'll change that, as well.

12         THE COURT:  There was not an objection to 41, but --

13   and I guess that's a conspiracy.  Just look at that in

14   connection with what you're going to resubmit, as well.

15         MR. SCHAR:  Yes, Judge.

16         MR. DEUTSCH:  Judge, just so I'm clear, would 38 also

17   change then?

18         MR. FERGUSON:  Yes.

19         MR. SCHAR:  Yes.

20         MR. DEUTSCH:  Okay.

21         THE COURT:  Yes.  Thank you.  That would.

22         MR. DEUTSCH:  And I have -- maybe we can wait until

23   we see how it looks, but in Mr. Moffitt's proposed

24   instructions, he explains the difference between first-degree

25   murder and second-degree murder and manslaughter, and from

1   what I understand, there is going to be a solicitation and a

2   conspiracy to commit murder which requires a

3   first-degree-murder basis.  You have to conspire to commit a

4   first-degree murder.

5          And it seems to me that if we're going to use any

6   definition of first-degree murder, we have to contrast it to

7   what second-degree murder and manslaughter is.  Otherwise, the

8   jury is not going to be able to understand what is

9   first-degree murder.  And I say this particularly in the

10  context of this case because to the extent that we're talking

11  about people who were killed, there is an issue about the

12  context in which that is carried out.  Is it carried out with

13  the first-degree intent or second-degree or even a

14  manslaughter intent here?

15         MR. SCHAR:  Judge, we would certainly object to that

16  because, first of all now, there is no substantive murder.  It

17  is a conspiracy and solicitation of which there actually not

18  be -- need be any murder whatsoever.

19         On top of that, the elements -- the burden is on the

20  government now to show that one of the predicates was

21  conspiracy to commit first-degree murder, and those are the

22  elements that are laid out.

23         THE COURT:  Submit your revised proposal --

24         MR. SCHAR:  Okay.

25         THE COURT:  -- by tomorrow, and I will consider it in

1    context.

2            MR. DEUTSCH:  Okay.

3            Let me just say very quickly that as I read the

4    Illinois statute, a person commits solicitation of murder when

5    with the intent that the offense of first-degree murder be

6    committed.  So, in other words, there's an intent to commit a

7    first-degree murder.

8            And I know the government is basically saying that

9    people who are killed, armed belligerents, armed soldiers,

10   armed settlers who are killed in the course of a conflict in a

11   foreign country falls under first-degree murder, and I don't

12   believe the jury necessarily has to accept that.  They can

13   think, well, maybe it's murder, but it might not be

14   first-degree murder, there's extenuating circumstances.

15           MR. SCHAR:  Judge, if that's the case then, then they

16   won't convict them of the conspiracy on first-degree murder

17   because the elements are laid out.  And just to finish this

18   point, we will submit it.

19           The way the Illinois statute works is if the jury

20   finds the elements of first-degree murder are met in a

21   substantive first-degree murder case, not a conspiracy or

22   solicitation, they're then instructed to determine whether

23   there were particular justifications that would knock it down

24   to second-degree murder.  If you actually look at what those

25   justifications are, none of them would apply in this.

1          Secondly, it wouldn't apply to conspiracy or

2   solicitation where there doesn't have to be a murder at all.

3          THE COURT:  Submit your revised proposal by tomorrow,

4   and I will look at it in context.

5          Okay.  Instruction 47.  This is an objection that you

6   had with respect to various predicates, what you have deemed

7   the effective date objection.  Specifically, you argued that

8   because certain predicates, including Section 956, were added

9   to the RICO statute effective on April 24th of 1996, that

10   those predicate acts must have taken place post-April 24th,

11   1996.  If they took place before April 24th, 1996, they cannot

12   be included as a racketeering act, essentially an ex post

13   facto it sounds like.

14          To the extent -- and you have repeated this argument

15   with respect to various statutes, the passport one and others.

16   To the extent you are making that argument with respect to the

17   money laundering statute, which I understood you were,

18   although there was something inconsistent with that, but that

19   I will overrule because money laundering was added as a

20   predicate RICO offense on October 27th of 1986.  So, that

21   predates this.

22          Now, with respect to the other statutes that were

23   added as RICO activity effective April 24, 1996, Mr. Schar?

24          MR. SCHAR:  Judge --

25          THE COURT:  And I may need law on this.

1          MR. SCHAR:  We have tried to lay it out in the

2     simplest terms we can for the jury through these instructions.

3     The law is fairly clear, and I think we cited it in some of

4     these instructions, particularly the one that deals with 1203

5     and 956, a number of cases that deal with kind of straddle

6     offenses; that is, where the conspiracy predates the

7     implementation of a predicate, even I think one of those cases

8     predates the actual crime even existing, such as 956.

9          And in both Opa (phonetic) and, I think, Caporale in

10    addition to a number of other Seventh Circuit cases and other

11    circuit cases, Bailey, dealing with straddle cases, the

12    arguments have been made, which are very similar to this,

13    which is somehow that all the activity could have occurred

14    before a certain predicate was added or actually in several of

15    those cases before RICO even became a crime itself.

16          And what the law makes clear is that as long as an

17    individual continues within the conspiracy after the date the

18    predicate is added, then the fact that that predicate may have

19    been violated as long as it was actually a crime prior to the

20    date it was actually added is one of the types of racketeering

21    activity that can be included because the continuation of the

22    defendant in the particular conspiracy; that is, if the

23    conspiracy hasn't ended or there's no withdrawal, is a renewal

24    of the conspiracy basically for every day he was in it.

25          So, the question is in these instructions how do you

1   instruct the jury, given the fact that there are certain

2   predicates added at certain times, that they must find these

3   defendants, if they find they were part of the conspiracy,

4   continued to be a part of the conspiracy after the dates the

5   predicates were added.  And there are predicates added in 1996

6   and there are predicates added in 2001.

7        For the predicates added in 1996, the withdrawal

8   instruction actually resolves that issue.  Both defendants,

9   based on the government's instructions, are going to get the

10  withdrawal instruction, which instructs the jury they must

11  find the defendants were still members of the conspiracy after

12  August of 1999.  So, for predicates that were added in 1996,

13  by definition, if the defendants are convicted, they have not

14  withdrawn prior to that date.

15       THE COURT:  Okay.

16       MR. SCHAR:  The complication comes when you add

17  predicates in 2001, and that is 1203, the hostage taking, and

18  956.  And, of course, it's doubly complicated by the fact that

19  956 wasn't a substantive crime as it's charged in the

20  racketeering predicate until 1996.

21       So, we have added an additional instruction that

22  comes, I think, towards the end of the racketeering predicates

23  and that is Instruction No. 65, which, in fact, cites a number

24  of the different types of cases that apply to this concept of

25  the law.

1           And, again, we tried to be as clear as we could.  But

2    what this says, that, again, the withdrawal instruction will

3    not be enough for 1203 and 956, since those were added in

4    October of 2001.  What this instruction, Instruction 65, does

5    is tells the jury that if they're going to use 1203, which has

6    been a crime for the entire history of this conspiracy, they

7    must find that the conspiracy continued until on or after

8    October, 2001, and the particular defendant under

9    consideration was a member of that conspiracy on or after that

10   date.

11           For 956, the added complication, of course, is that

12   it wasn't a crime till April 24th of 1996.  So, we have added

13   language in Instruction 65 which says that that is a

14   particular type of pattern or type of activity that can only

15   be considered on or after April 24th, 1996, the date upon

16   which it became a crime to conspire, kill, kidnap or maim.

17           And then at the end, obviously, all the evidence is

18   relevant to this; but that resolves -- that additional

19   instruction, instead of adding this to each particular

20   racketeering activity, that instruction tells the jury

21   combined with the withdrawal instructions that they must find

22   the defendants were part of the conspiracy after October, 2001

23   to consider 1203 and 956, and then 956 itself can't be

24   considered until April 24th of '96.

25           THE COURT:  I need some law on this.  This is a legal

1    issue, and I need some law.

2         If you have cases, I'd like some from you.  Why don't

3    you call my chambers or submit something by the end of the

4    day, both sides, with law on the effective date objection.

5         MR. MOFFITT:  May I add a point?

6         THE COURT:  Yes.

7         MR. MOFFITT:  If the conspiracy changes as Hamas has

8    changed over the course of time, doesn't the government --

9    wouldn't the government be required to prove that the same

10   agreement was in effect at the time of the effective date of

11   the statute and merely not assume that the same agreement was

12   in effect at the time of the effective date of the statute?

13   Because it seems to me what they're doing by these

14   instructions are assuming that the conspiracy remained the

15   same.

16        THE COURT:  Mr. Schar?

17        MR. SCHAR:  Judge --

18        MR. MOFFITT:  I don't think they have the right to do

19   that.

20        MR. SCHAR:  Well, it specifically instructs they

21   might find that the charged conspiracy continued and the

22   defendant was a member of the conspiracy.  So, I think by

23   defining it as the charged conspiracy, that becomes a

24   non-issue.

25        MR. DEUTSCH:  Judge, in addition to --

1          MR. MOFFITT:  I think it raises a Kotteakos issue.

2          THE COURT:  Give me law by the end of the day.  I

3    don't care if you call chambers and give me the statutes and

4    let defense counsel know the statute and let the government

5    know the -- I'm sorry -- the cases or submit something.  You

6    don't have to do a full-blown brief unless you want to, but I

7    need some law.

8          MR. DEUTSCH:  Judge, I would -- in addition to the

9    law, it seems to me that to separate the date that the statute

10   came into effect from the definition of the predicate act, the

11   legal definition, and put it, you know, 20 instructions later

12   is confusing.  I mean, the jury, if they're going to focus on

13   the predicate act, they should focus on it, when it was

14   passed, what it means, and whether they're going to apply it.

15         And it seems to me to separate those -- that proposed

16   instruction that the government has, which is, I think, 65,

17   from the individual predicate instructions makes it more

18   confusing than it should be.

19         THE COURT:  I don't necessarily give the instructions

20   in the order they've been -- in fact, I generally don't.  I

21   shuffle them around.  So, I will take that into consideration.

22         But I need to resolve the first legal premise of if

23   the activities took place before the effective date, can they

24   still be predicate RICO activity?

25         So, that's what I want the law on.

1          The 48 and 49, that will take up the same issue.

2    That will also address 53 in part, 52 in part, 54, 58 in part,

3    65 in part, and that's it.

4          Instruction 50, I have your specific-intent

5    objection.  I am overruling your objection on Instruction 50.

6    Again, this is just setting forth what the statute says to the

7    extent that specific intent is required.  I have taken the

8    substantive RICO elements instruction under advisement.  That

9    will be the appropriate place for that.

10         Instruction 51, you have the same objection.

11         MR. DEUTSCH:  Judge, on this one, there is actually a

12   Seventh Circuit case, Fassnacht, which --

13         THE COURT:  I have read that --

14         MR. DEUTSCH:  Yeah.

15         THE COURT:  -- and subsequent to that is Macari and

16   in Macari, the pattern instruction was given and affirmed.

17         I am overruling your objections, both defendants, to

18   Page 51 in light of Macari, a Seventh Circuit 2006 opinion,

19   453 F.3d 926.

20         I will give Government Instruction 51.

21         52, I am overruling your specific intent objection to

22   52 on the same grounds that I addressed before.  All

23   Government Instruction 52 does is set forth the language of

24   the statute.  To the extent specific intent is an issue, that

25   should be addressed in the substantive instruction.

1           Instruction 53 -- and this is addressing both

2   defendants' instructions, Mr. Deutsch, since you have joined

3   in the objection of defendant Ashqar to these instructions.

4   53 you have an effective date argument, which I will address

5   once I see what the law is, the racketeering activity date and

6   the specific intent objection.

7           You also argue that the government has omitted an

8   additional element that must be proven if the conduct

9   constituting the offense occurred outside of the United

10  States.

11          What is that element, and what is that based on?

12          MR. MOFFITT:  I'm not sure.

13          THE COURT:  You're not sure?

14          MR. MOFFITT:  I was once, but I'm not.

15          THE COURT:  Okay.

16          I don't see it.  I'm overruling your objection unless

17  you can give me something more specific.

18          Now, your racketeering activity date, is that the

19  same argument as the effective date, Mr. Moffitt?

20          MR. MOFFITT:  Yes.

21          THE COURT:  Okay.

22          So, I will take that under advisement once I see the

23  law.

24          And then your specific intent objection on Government

25  Instruction 53, I'm not clear if your objection is that this

1   instruction on Section 1203(a) should have a specific intent

2   or if you are looping back to the specific intent of the RICO

3   conspiracy elements instruction.

4        MR. MOFFITT:  I'm thinking it's about the conspiracy

5   instruction.

6        THE COURT:  Okay.

7        So, I am overruling your specific intent objection

8   for the reasons I've already stated.  I will give Government

9   Instruction 53.

10        Government Instruction 54 --

11        MR. MOFFITT:  Isn't that the one you're talking about

12   the effective date, as well, your Honor, 53?

13        THE COURT:  53, yes.  I'm taking that under

14   advisement until I see the law.

15        MR. MOFFITT:  Right.

16        THE COURT:  54, you have the -- again, the

17   racketeering activity date objection.  I will take that under

18   advisement until I see what the law is.

19        Government Instruction 55, you have objected to the

20   last sentence.  The government proposes the last sentence to

21   read, "A violation occurs equally with respect to foreign

22   travel documents in addition to those issued by the United

23   States."

24        I'm overruling your objection in part.  United States

25   vs. Hollingsworth, 27 F.3d 1196, a Seventh Circuit case, makes

1    clear that a violation -- that this pertains to foreign travel

2    documents --

3            MR. MOFFITT:  Are there any --

4            THE COURT:  -- in addition to the United States.

5            MR. MOFFITT:  Is there any proof of any foreign

6    travel documents in this case?

7            THE COURT:  That's a different objection.

8            Mr. Schar?

9            MR. FERGUSON:  Judge, there is evidence that, for

10   example, with respect to the situation with Adil Awadallah

11   that there were acts taken specifically for the purpose of

12   obtaining passport or travel documents from him.  The evidence

13   does not specify, does not indicate specifically whether it's

14   domestic or it's foreign, which is partly why this is in here.

15   But it's clear that it's a travel document, and given that the

16   law says that it matters not whether it's domestic or foreign,

17   we put this particular provision in.

18           MR. MOFFITT:  It seems to me that, as I recall that

19   evidence, it had to do with Mr. Hamdan with getting documents

20   for Mr. -- and there's no evidence that they were foreign

21   travel documents.

22           THE COURT:  Weren't they U.S. documents?

23           MR. FERGUSON:  Judge, the evidence that's in on that

24   is that Mr. Hamdan traveled to the United States, met with

25   Mr. Salah here in the Chicago area, and that further acts were

1    taken by Mr. Salah traveling, meeting with Abu Obadah in

2    London and Abu Obadah directing Mr. Salah to pass on the

3    message to Mr. Awadallah, which he did, that the obtaining of

4    the passport that he requested was in progress.

5            So, what we have is a meeting in Chicago, a meeting

6    in London, conferences occurring in Palestine for someone to

7    escape from Palestine because they're a fugitive from the

8    Israeli authorities.

9            THE COURT:  Okay.

10           MR. MOFFITT:  But there's no evidence of a foreign

11   travel document anywhere.

12           MR. FERGUSON:  And the point is, Judge, it isn't

13   specified and the statute does not require that it be

14   specified.

15           THE COURT:  That's enough to have this language

16   included, although I would take out the word "equally."  I

17   think it's sufficient and consistent with Hollingsworth to say

18   a violation occurs with respect to foreign travel documents in

19   addition to those issued by the United States.

20           Government Instruction 56, I am overruling your

21   objection.  This is the specific intent objection which links

22   back to the RICO element offense.  This is also just setting

23   forth the money laundering statute.

24           Government Exhibit -- Instruction --

25           MR. MOFFITT:  Your Honor, may I go back to 53 for a

1    second?

2          THE COURT:  53.

3          MR. MOFFITT:  The additional element I'm reminded is

4    "However, it is not an offense under this section if the

5    conduct required for the offense occurred outside the United

6    States unless one of the following was found beyond a

7    reasonable doubt:

8          "One, the offender or person seized or detained is a

9    national of the United States, or the offender is found in the

10   United States, or the governmental organization shown to be

11   compelled is the government of the United States."

12         THE COURT:  What are you reading from?

13         MR. MOFFITT:  I think I'm reading from the full

14   instruction and the statute.

15         THE COURT:  From the instruction?

16         MR. McDERMOTT:  It's our instruction, but it's from

17   the statute.

18         MR. SCHAR:  1203(b)(2).

19         THE COURT:  This is 1203(a).  Is 1203(b)(2) a

20   predicate?

21         MR. SCHAR:  No, Judge, it's not a predicate.

22         THE COURT:  Is it part of the RICO activity charged?

23         MR. SCHAR:  It's a further definition of what's not

24   an offense, I think.

25         THE COURT:  What's your position on that?

1          MR. SCHAR:  I don't think we would have an objection

2     to adding language addressing what is not an offense.

3          THE COURT:  Okay.  Include that.

4          MR. SCHAR:  So we'll include that language.

5          MR. MOFFITT:  Thank you, your Honor.

6          THE COURT:  And submit that by tomorrow.

7          Government Instruction 57, this is the money

8     laundering element instruction.  And I think this was taken

9     from the pattern, wasn't it?

10         MR. SCHAR:  Judge, actually, I'm not sure there's a

11    pattern for 1956(a)(2)(A).  I think this came from the Ninth

12    Circuit pattern instructions.  Also, looking at the statute.

13         THE COURT:  Address Mr. Moffitt's objection that this

14    does not recognize the bifarious or multifarious nature of

15    Hamas.

16         MR. SCHAR:  Yes, Judge.  That's resolved with Element

17    No. 2, the intent to promote the carrying on of an unlawful

18    activity.  So, if for some reason the money was transported

19    purely for purposes that were proper, and obviously the

20    carrying out of the unlawful activity, unlawful activity is, I

21    think, then defined in Instruction 58.

22         So it has to be with the intent, much like the RICO,

23    through a pattern of racketeering activity, the intent to

24    promote unlawful, specified unlawful activity as further

25    defined in the next instruction.

1          MR. DEUTSCH:  That's what I wanted to put in the RICO

2     instruction, that very language.

3          THE COURT:  Your objection is overruled to

4     Instruction 57.  The unlawful activity aspect of the second

5     element does take that into consideration.  And, again, this

6     is a predicate or part of the RICO activity which would again

7     pick up the requisite for unlawful activity.

8          Government Instruction 58.  This is your objection,

9     although the way you have it here is somewhat confusing.  This

10    is a money laundering instruction.

11         MR. MOFFITT:  But inside the money laundering statute

12    is the predicate acts, which are 1203, 1952, 1956 and --

13         THE COURT:  Okay.

14         MR. MOFFITT:  -- 1543, which are all -- have the

15    problem with the effective date of the statute.

16         THE COURT:  Mr. Schar?

17         MR. SCHAR:  Judge, in one regard, it's apples and

18    oranges.  I don't see how -- I mean, this defines when certain

19    activity became specified unlawful activity and, therefore,

20    could not have been money laundering as a RICO predicate until

21    the date that the particular specified unlawful activity was

22    included in 19 -- well, in the 1956 definition of SUA.

23         It doesn't have anything to do with -- those also

24    additionally became RICO predicates.  As I understood the

25    objection, maybe I misunderstood it, was that there was some

1   argument that we had misstated the dates that particular

2   things became SUA's inaccurately.  And I've gone back and

3   looked, and I think we did accurately state that.  I've got

4   the 1988 code book and the 1993 code book here if we want to

5   look at them again.

6          But I don't think this has anything to do with when

7   they also became RICO predicates.

8          THE COURT:  I will take that under advisement.

9          There's another objection, murder.  There's an

10  objection to the extent this includes murder because it must

11  occur in Illinois.  I don't see the murder.  I see conspiracy

12  to kill.  I don't see the Illinois murder referenced here.

13         Oh, under 1.

14         MR. SCHAR:  It will be 1.  Because we're taking out

15  murder, we'll take acts involving conspiracy to commit murder,

16  but it's an SUA issue, Judge.  It's not the same as a --

17         THE COURT:  But you're talking about as I have

18  previously instructed you in subparagraph 1.  So, you need to

19  modify that consistent with what you're going to give me

20  tomorrow, the revised instructions 38 through, I think, 44.

21         So, revise this one, as well.

22         MR. SCHAR:  Judge, I'm not sure I'm following that.

23  I mean, we'll take out murder and then --

24         THE COURT:  I think that may be all you need to do --

25         MR. SCHAR:  Okay.

1          THE COURT:  -- is take out murder.

2          MR. SCHAR:  I understand.

3          THE COURT:  Because if I am no longer instructing

4    them on murder --

5          MR. SCHAR:  I understand.

6          THE COURT:  -- and this says, "As I've previously

7    instructed you," if you're going to leave it in here, then you

8    need to change it.  But if you are taking murder out

9    previously, I haven't instructed them on it.

10         MR. SCHAR:  Okay.

11         THE COURT:  Objection to "with the intent to promote

12   the carrying on of specified unlawful activity" and the

13   definition of specified unlawful activity.  That's coming

14   right from the statute.  That objection is overruled.

15         And, finally, on Instruction 58, you object to the

16   wording of the last paragraph, instructing the jury that it

17   must unanimously agree as to which specified --

18         MR. MOFFITT:  I will withdraw that objection.

19         THE COURT:  Yeah, I would think you would.  I will

20   consider that objection withdrawn.

21         Okay.  Instruction 59.  Dr. Ashqar did not object to

22   that.  Mr. Deutsch, you objected to it, jumping on

23   Dr. Ashqar's objection.  So, I'm not sure if you are agreeing

24   to it or if you have a separate objection.

25         MR. DEUTSCH:  No, I don't.  I was just looking at the

1 proposed instruction by Dr. Ashqar and I thought it was more

2 complete than the one offered by the government.

3          THE COURT:  I think maybe 59 should come out of there

4 because I don't think there was a proposal, given they didn't

5 object to it.

6          MR. DEUTSCH:  Okay.  So, that's just a mistake.

7          THE COURT:  Okay.  I will consider your objection to

8 59 withdrawn in light of that.

9          Page -- instruction 60, again, the specific intent

10 objection, I am overruling that for the reasons I've already

11 stated.

12          And the same with respect to Instruction 61.  I am

13 overruling that.  To the extent a specific intent is required

14 under the elements, you're referring to the RICO element

15 instruction, and I have taken that under advisement.  And

16 Instruction 60 just sets forth what the statute says in

17 Section 1952.

18          Instruction 62, there was no objection to.

19          Instruction 63.

20          MR. DEUTSCH:  Judge, on this one, I submitted a --

21          THE COURT:  Yes.

22          MR. DEUTSCH:  -- proposed instruction.

23          THE COURT:  You have submitted some additional

24 language.

25          MR. DEUTSCH:  Yes.

1            I think the Supreme Court in the Gypsum case

2    basically said if the defense wants specific evidence which

3    supports his argument of withdrawal, then he's entitled to

4    that and failure to hear that is error.  And I believe --

5            THE COURT:  In the Gypsum case, is that what you --

6            MR. DEUTSCH:  U.S. vs. Gypsum.

7            THE COURT:  Gypsum.

8            MR. DEUTSCH:  G-Y-P-S-U-M, 438 U.S. 422.

9            And it's cited with -- by the Seventh Circuit in I

10   think U.S. vs. Reed -- oh, it's cited in the comments, in the

11   Seventh Circuit comments.

12           THE COURT:  Okay.

13           MR. DEUTSCH:  I can --

14           THE COURT:  Is there any objection, Mr. Schar, to the

15   inclusion of this language that -- I'm referring to the

16   language you have Paragraph 22, Page 3 of your December 27th

17   letter to me.

18           MR. DEUTSCH:  Well, Judge, I actually faxed to you

19   yesterday after getting the government's one, I faxed to you

20   an amended instruction.

21           THE COURT:  Okay.  I did receive that.  Is that

22   different from what you put in your letter?

23           MR. DEUTSCH:  Yes, it is different.  It takes some of

24   the language of the government's and it clarifies it and puts

25   in my request for the specific evidence supporting my argument

1   of withdrawal.

2         Also --

3         THE COURT:  Is there an objection?

4         MR. SCHAR:  Judge, I think there is an objection

5   because as I read Gypsum, that what needs to be tailored are

6   the types, which are given in the pattern of A, B, C and D,

7   but not specific actions because then it becomes an issue of

8   all the actions, it seems the government would be permitted to

9   put in all the actions that would suggest there was not a

10  withdrawal.

11        THE COURT:  I'll take that under advisement.  Here's

12  your letter.  I need to read Gypsum.

13        MR. DEUTSCH:  Okay.  And look at -- there's actually

14  in the Seventh Circuit comments to 5.13, they specifically

15  cite to Gypsum and say you have to give -- if the defense

16  requests, you have to give the evidence that supports --

17        MR. SCHAR:  That's not what this says.

18        THE COURT:  I'll look at it.  I will read Gypsum and

19  look at the comments and take your objections to No. 63 and

20  your proposed withdrawal instruction based on your fax to me

21  of yesterday --

22        MR. DEUTSCH:  Right.

23        THE COURT:  -- under advisement.

24        And I assume, Mr. Deutsch, you mean this to

25  supersede --

1          MR. DEUTSCH:  Yes.

2          THE COURT:  -- prior withdrawal instructions given?

3          MR. DEUTSCH:  Yes.  That's the one that I'm proposing

4    now based on the back and forth.

5          THE COURT:  Okay.  I will assume that your prior

6    withdrawal instructions are withdrawn.

7          MR. DEUTSCH:  Judge, I also had submitted, which is

8    very much related to this, is a proposed instruction on acts

9    after withdrawal.

10         THE COURT:  Yes, I have that proposed instruction.

11         MR. DEUTSCH:  Okay.  Which goes to the Supreme Court

12   opinion in Grunewald, which basically says if you withdrew

13   from a conspiracy, then acts of concealment cannot be used to

14   determine that -- it's a factual question whether or not you

15   withdrew.  And then if you withdrew, if the Court finds -- if

16   the jury would find that you have withdrawn, then subsequent

17   acts of concealment cannot extend your involvement or enter

18   you back in.

19         MR. SCHAR:  On the law, that's right.  The difficulty

20   is the instruction, Judge, because the problem in this

21   instruction is that acts after -- what this says is I've

22   instructed you Mr. Salah cannot be found guilty if he withdrew

23   prior to August 12, 1999, and then says acts after that, if he

24   withdrew, shouldn't be considered and then specifically goes

25   to the Boim interrogatories.

1          The jury, though, has to consider everything to

2     determine whether he withdrew.  The jury can consider the Boim

3     answers and say there was never withdrawal.  And, so, to try

4     and instruct them that if they find withdrawal, they shouldn't

5     consider evidence that they should be considering to determine

6     whether they withdrew is counter-intuitive and confusing.

7     They should be considering all of the evidence to determine

8     whether there was a withdrawal, including the Boim

9     interrogatories.

10          THE COURT:  Well, maybe there's a way to modify this.

11          MR. DEUTSCH:  Yeah.  Obviously, they can consider all

12    the evidence in the case and determine whether or not they

13    withdrew; but if they find that there was a withdrawal, then

14    they can't use the Boim evidence or any other evidence as

15    concealment evidence to bring them back into the conspiracy.

16          THE COURT:  Why don't you submit a revised proposal.

17          MR. SCHAR:  Although they could use it to determine

18    whether he aided and abetted the conspiracy.  It becomes a --

19    I think it's going to be difficult to come up with language,

20    Judge, that tells them they should consider everything; but

21    then if they find withdrawal, they should stop considering

22    evidence that they were previously supposed to consider.

23          THE COURT:  Why don't you see if you can come up and

24    give me a revised withdrawal tomorrow.

25          Mr. Moffitt?

1           MR. MOFFITT:  There's a concern that I have, and I

2    don't know whether we've expressed it or accurately expressed

3    it in the instructions.

4           THE COURT:  Are you -- an overall concern or a

5    particular concern?  We're on Instruction 63.

6           MR. MOFFITT:  Particularly around an issue like

7    withdrawal.

8           THE COURT:  Okay.

9           MR. DEUTSCH:  Judge -- I'm sorry.

10          MR. MOFFITT:  In this case, there appears to be a

11   statute that comes into existence in 1995, which is post most

12   of the conduct of Dr. Ashqar in this case, that says that you

13   can no longer materially support Hamas without violating the

14   law.

15          There is no money or anything sent by Dr. Ashqar

16   after -- by the evidence in this case, after the effective

17   date of that statute.

18          Under the circumstances, it could be argued that he

19   modified his conduct once he had notice that this statute came

20   into existence and the government never proved another act on

21   his part of sending any money or doing anything like that.

22          The question becomes how do we articulate that in the

23   instructions.  And we haven't really been successful yet.

24   We're still trying.

25          But it seems to me that you could modify your

1   behavior consistent with that statute and being placed on

2   notice and not any longer be a member of the conspiracy

3   because you modified your behavior.

4           THE COURT:  Well, that particular statute isn't

5   charged.  I'm not sure what you're asking, Mr. Moffitt.

6           MR. MOFFITT:  Well, let me see if we can create an

7   instruction because we're still trying to figure it out.

8           MR. DEUTSCH:  Judge, just so you're clear about what

9   I'm saying, it's the committee comment of 5.12, conspiracy

10  withdrawal.  And it says --

11          THE COURT:  5.12, not 5.13?

12          MR. DEUTSCH:  Yeah, it's 5.12, not 5.13.

13          THE COURT:  Okay.

14          MR. DEUTSCH:  And it cites Gypsum.  It says, "When a

15  defendant requests that his specific actions introduced in

16  trial which are inconsistent with the object of the conspiracy

17  be included in the withdrawal instruction, the Court should

18  comply with such request."  That's pretty specific.

19          And what the government has done, if you look at the

20  instruction, they -- the instruction has in parentheses all

21  the possible theories of withdrawal.  And the government has

22  put all those theories into their instruction.  But that's

23  not -- those theories don't necessarily apply to this case.

24  And that's why they're in brackets.  They're in brackets only

25  if they apply.

1      And what we're saying is our withdrawal is based on

2   the government's claim that he cooperated in this

3   interrogation and provided all this truthful material.  He

4   pled guilty before the military tribunal, and whatever else we

5   put in there.  But they don't -- they're not entitled to put

6   in all these bracketed parentheses as evidence of what you

7   have to prove for withdrawal.  They just have to show that you

8   took an affirmative step, and these are the affirmative steps

9   we're alleging.

10      If you look at that, and we also had a brief that we

11   gave you, a memorandum in support originally.  I can hand up

12   another copy.

13      THE COURT:  When you say originally, do you mean in

14   connection with your December 6th letter?

15      MR. DEUTSCH:  Yes.  Yes.

16      THE COURT:  I don't -- if you have another copy, give

17   it to me.  The only thing I have in connection with your

18   December 6th are proposed instructions.  There's no mention of

19   a brief so --

20      MR. DEUTSCH:  I'm just looking at that -- this is

21   filed December 11th.  This is a memorandum in support of

22   withdrawal.

23      (Document tendered.)

24      THE COURT:  Okay.  This is separate.

25      MR. DEUTSCH:  Yes.

1          THE COURT:  I do have that.

2          MR. DEUTSCH:  Okay.

3          THE COURT:  December 11th, I do have that.

4          All right.

5          MR. SCHAR:  Judge, on that issue, I think that the

6    jury should be instructed on what the types of withdrawal are,

7    not just if you are inclined to give what defendant Salah

8    thinks he did that supports withdrawal.  The pattern

9    instruction lays out the types of things that are considered

10   withdrawal.  I think it's unfair to suggest to the jury here's

11   all you should consider when the Seventh Circuit is saying

12   here are the types of things that are examples of it and then

13   they can argue from that.

14          THE COURT:  But I think Mr. Deutsch's point on that

15   was there isn't evidence of some of these.

16          MR. DEUTSCH:  Right.  Exactly.  It doesn't apply in

17   this particular case.  They do have that, the general language

18   that you have to take an affirmative step to withdraw.  You

19   can't just by non-action withdraw.  That's in there.  They get

20   that.

21          But why should we make up they have to somehow tell

22   somebody, notify people.

23          THE COURT:  Is this an exhaustive list?

24          MR. SCHAR:  No, I don't think it's an exhaustive

25   list; but I think the point is, which Mr. Deutsch doesn't want

1    to have, which is here are the things that would constitute

2    withdrawal and instruct the jury as to this is part of the

3    determination as to whether the defendant did withdraw.  He

4    doesn't need to have done those things to withdraw.  He could

5    withdraw through --

6              MR. DEUTSCH:  In my proposed instruction, it says --

7    and this is what the government should get.  "In order to

8    withdraw, defendant must take affirmative steps to terminate

9    his effort to promote or facilitate the conspiracy.  Merely

10   ceasing participation in a conspiracy is not enough to

11   constitute withdrawal from the conspiracy."  That's the law.

12   They get that.

13             But now to create some kind of, you know, theoretical

14   things to show how they would withdraw, I don't think the

15   instruction is saying that.

16             THE COURT:  Okay.  I understand your arguments.

17             MR. DEUTSCH:  Okay.

18             THE COURT:  I'll look at the committee notes, look at

19   the case, your two proposals, and take it under advisement.

20             MR. DEUTSCH:  Okay.

21             THE COURT:  Okay.  Instruction 64.  Mr. Moffitt, you

22   have made your -- the multifarious argument again.  I am

23   overruling your objection for the reasons that I've already

24   stated with respect to the RICO elements instruction that

25   makes clear what the elements are.

1          And, Mr. Deutsch, you did not object to 64.

2          65.

3          MR. SCHAR:  Judge, this is the instruction and --

4          THE COURT:  Yes.

5          MR. SCHAR:  -- laying out the law I think that we

6  would probably cite to you.

7          THE COURT:  I have taken that under advisement to see

8  what the law is.

9          Instruction 66.

10          MR. MOFFITT:  You've already given an aiding and

11  abetting instruction.  Now we're getting an aiding and

12  abetting conspiracy instruction which repeats the same thing.

13          THE COURT:  But this says, again, I think this is to

14  your benefit.  The last sentence makes clear that they have to

15  agree unanimously as to whether or not they're finding an

16  aiding and abetting violation or the charged conspiracy

17  violation.  I'm not sure you want to object to this.  If you

18  do, --

19          MR. MOFFITT:  I will withdraw the objection.

20          THE COURT:  Okay.

21          MR. DEUTSCH:  Judge, I just --

22          THE COURT:  Yes.

23          MR. DEUTSCH:  I just add --

24          MR. MOFFITT:  I mean, I think my objection is that

25  they both shouldn't be here.  And that --

1          THE COURT:  Okay.

2          MR. DEUTSCH:  I agree with Mr. Moffitt on that.  I

3   don't think we need two aiding and abetting instructions when

4   we have only one --

5          MR. MOFFITT:  So, if you are --

6          MR. DEUTSCH:  -- circumstances.

7          MR. MOFFITT:  If you are going to give one, I'd give

8   this one.

9          THE COURT:  Well, this one has to be given because it

10  has the unanimity requirement.

11         MR. MOFFITT:  Yeah.

12         THE COURT:  The other aiding and abetting

13  instruction, No. 25 --

14         MR. SCHAR:  I think that defines what aiding and

15  abetting is.

16         THE COURT:  Yes.

17         Your objection, that particular objection is

18  overruled.

19         Instruction 6- -- I'm sorry 77 -- you have an

20  instruction to 69.  That instruction is overruled given the

21  Seventh Circuit's case in Macari, Mr. Deutsch --

22         MR. DEUTSCH:  Yes.

23         THE COURT:  -- which I had given you the cite to

24  previously.

25         MR. DEUTSCH:  Judge, I'm going back to 66.  I had an

1    objection to 66 because I don't think it's clear enough.  And

2    I would add if some of you find that a defendant was part of

3    the conspiracy and others find that he was an aider and

4    abettor, you are not unanimous and cannot return a guilty

5    verdict, which kind of lays it out more clearly what the

6    unanimity requirement is.

7                THE COURT:  Mr. Schar?

8                MR. SCHAR:  Judge, I think you must be unanimous as

9    to whether or a particular defendant was part of the charged

10   conspiracy or aided and abetted that conspiracy.  It's simple

11   and clear.

12               THE COURT:  I will take that under advisement.  I

13   may -- I will take that under advisement, that particular

14   language.

15               Okay.  Instruction -- I've ruled on your 69.

16               Instruction 72 you have objected to, Mr. Deutsch.

17   And I'll go back to your other instructions.  This is not a

18   pattern.

19               MR. SCHAR:  It's not a pattern instruction, Judge,

20   although supported by the cases, particularly the Seventh

21   Circuit case and particularly in this case where defendant

22   Ashqar went into the grand jury and provided lots of reasons

23   why he was supposedly doing what he was doing where there

24   might be multiple reasons to do something.

25               I think an instruction like this is important, and it

1    is supported by the law.

2          MR. DEUTSCH:  I'm sorry, which one are we talking

3    about?

4          THE COURT:  No. 72.

5          MR. MOFFITT:  I join Mr. Deutsch's objection to 72.

6          THE COURT:  Are you relying on Cueto?

7          MR. SCHAR:  Yes, Judge.

8          THE COURT:  All right.  I will go back and -- I'll

9    take this under advisement and go back and look at Cueto.

10         If this stays in, there needs to be an apostrophe S

11   on defendants --

12         MR. SCHAR:  Yes, Judge.

13         THE COURT:  -- on the third line.  Let me look at

14   Cueto.

15         Okay.  Instruction 77, this obstruction -- this is

16   the balance to the coercion instruction, pattern 6.08.

17         MR. SCHAR:  Judge, the first --

18         MR. SPIELFOGEL:  It's a modified version.

19         MR. SCHAR:  Yes, the first part of it is --

20         THE COURT:  Correct, correct.

21         MR. SCHAR:  -- I mean, there's actually theoretically

22   an argument here that there is an estoppel argument based on

23   the Seventh Circuit's decision in the contempt case related to

24   this, that this issue's been resolved.

25         That being said, I don't think that's necessarily the

1  position we want to take with the jury, that they can't.  But

2  I think on the issue of duress and coercion, first of all,

3  again, given what defendant Ashqar not only said in the grand

4  jury but the type of cross-examination we've gotten, the

5  Supreme Court has pointedly said that varying the use of a

6  statement in a foreign country prosecution is not a defense to

7  contempt.  That's what Balsys says.

8            And then the second part is essentially the coercion

9  instruction, although the law changed this year under Dixon.

10           THE COURT:  Right.

11           MR. SCHAR:  So, it changes the -- who actually has

12 the burden in relation to this.

13           THE COURT:  What about Balsys, Mr. Moffitt?  How can

14 you object to the first sentence under the Supreme Court's

15 opinion in Balsys?

16           MR. MOFFITT:  May I have a chance to read it again

17 because --

18           THE COURT:  Sure.

19           MR. SPIELFOGEL:  Your Honor, our position on the

20 first sentence would be that under the facts of this

21 particular case, because of the extremely close relationship

22 between the United States and Israel in this case that was

23 brought out through all the questioning as to the Salah

24 statements and all the other evidence in the case, that this

25 really comes very close to being a case where we are doing a

1    prosecution in the United States on behalf at least in some

2    part of the Israeli government.

3              So, I think even in that case, in the Balsys case,

4    although I understand what the rule of law was, I think even

5    in there they had a little bit of an exception there if you

6    can show that what actually was taking place in one

7    jurisdiction was at the behest of another jurisdiction.  And I

8    think that this case really is about as close as you could

9    possibly get to that.  So --

10             THE COURT:  How do you --

11             MR. SPIELFOGEL:  -- I think we should be able to

12   argue to the jury that in this particular case, you had a

13   situation where the United States government was doing the

14   bidding of another jurisdiction.

15             THE COURT:  How do you read that into Balsys?

16             MR. SPIELFOGEL:  Well, I think even in that case,

17   they spoke, it was in that one or it was in another one that I

18   read, where it says that that's an exception if you can

19   actually show that you were acting on behalf of another

20   government.

21             THE COURT:  Give me the cite to that other case that

22   you may have read.

23             MR. SPIELFOGEL:  It's one of these cases that are

24   cited.  I don't recall whether it was --

25             THE COURT:  When you say these cases --

1          MR. SPIELFOGEL:  The cases that are cited in the

2    government's instructions.

3          THE COURT:  All right.  Then I'll go back and see if

4    that --

5          MR. SPIELFOGEL:  And I'll actually do that over lunch

6    also and give you the cite.

7          THE COURT:  Okay.

8          Do you want to respond to that?

9          MR. SPIELFOGEL:  Judge, there's also several other

10   problems.

11         THE COURT:  I know.  I'm just focusing on that

12   sentence now, but I'll get to that.

13         MR. SCHAR:  Yes, Judge.  First, I don't think there's

14   that exception.

15         Secondly, I understand that's been what a lot of the

16   questions and argument to -- either questions to the witnesses

17   or argument to your Honor have been, but the evidence hasn't

18   demonstrated that in any way.  And I think it's misleading to

19   suggest that.  In fact, quite the opposite.  And this would

20   all be relevant only if Dr. Ashqar knew it at the time he went

21   into the grand jury, of course, not what's happened

22   afterwards.

23         And when you look at what he was told when he went

24   into the grand jury, he was told this information wasn't going

25   to be shared and there were all types of other things.  So, I

1   don't think that there's a basis in the law, and even if there

2   were, the facts of this case have demonstrated on his state of

3   mind at the time he refused to testify would support it.

4           THE COURT:  Okay.

5           The other big issue I see here is the burden of

6   proof.

7           MR. SPIELFOGEL:  That's correct, Judge.

8           THE COURT:  Under -- after Dixon vs. U.S. in June of

9   this year coming down from the Supreme Court, how can the

10  burden still be on the government?

11          MR. SPIELFOGEL:  Well, your Honor, the committee

12  comments on this --

13          THE COURT:  But Dixon came -- is a Supreme Court

14  opinion that came after the committee comments here; and in

15  Dixon, the Supreme Court held -- they were talking about

16  duress, which is a similar defense, that unless a statute

17  provides otherwise, that the defendant must prove an

18  affirmative defense in a criminal case by preponderance of the

19  evidence.

20          Take a look, reread Dixon.

21          MR. SPIELFOGEL:  I read Dixon, Judge.

22          THE COURT:  Okay.

23          MR. SPIELFOGEL:  I realize what the holding was in

24  Dixon.

25          THE COURT:  How do you distinguish this from Dixon?

1    You can't refer to the committee comments because those have

2    been superseded or abrogated by Dixon, Supreme Court.  I don't

3    understand how you can square this language with Dixon.

4              MR. SPIELFOGEL:  The problem here, Judge, is the

5    coercion instruction has nothing in it as to who the burden is

6    on.

7              THE COURT:  Correct.

8              MR. SPIELFOGEL:  Okay.

9              THE COURT:  The proposed -- the pattern instruction

10   from 1990 pre-Dixon, you're right.

11             MR. SPIELFOGEL:  Correct.

12             Now, if we get into that and say the burden of proof

13   is on the defendant to introduce -- to prove by a

14   preponderance of the evidence he reasonably feared

15   immediate -- we then obviously have to have the flip side of

16   that, which is also in the committee comments, that the burden

17   of proof is on the government to prove beyond a reasonable

18   doubt the absence of coercion, which is what they also have in

19   the committee comments.

20             THE COURT:  But those committee comments are from the

21   Seventh Circuit's pattern --

22             MR. SPIELFOGEL:  Oh, I see.  I see.

23             THE COURT:  -- which took place back in, I think,

24   '90, '91.  The Supreme Court's 2006 opinion supersedes

25   anything in these comments.

1          My question to you is how can you square your

2    language that the burden of proof is on the government to

3    prove beyond a reasonable doubt the absence of coercion with

4    the Supreme Court's opinion from six months ago, saying

5    defendants must prove by a preponderance of the evidence their

6    affirmative defenses unless Congress has shifted the burden by

7    statute.

8          I'm bound by the Supreme Court.  So --

9          MR. SPIELFOGEL:  Your Honor, I will reread Dixon.

10         THE COURT:  Please.  Reread it and let me know.  I'll

11   keep this under advisement until then.

12         I think that was the only other issue that you

13   objected to in No. 77.

14         Okay.  Before I get to the defendants' proposed

15   instructions, I want to go through Mr. Deutsch's objections

16   that I have not covered already.

17         MR. SCHAR:  Judge, since we're going back, I think

18   there's one other instruction we'd like to address briefly.

19         THE COURT:  Sure.

20         MR. SCHAR:  And that's Instruction 12.

21         MR. DEUTSCH:  Your instruction 12?

22         MR. SCHAR:  Yeah, I'm sorry, Government Instruction

23   12.

24         THE COURT:  12 or 12-A?

25         MR. SCHAR:  12.  I think we're going back to 12-A.

1  The last sentence, "You may not consider any of these

2  statements as evidence in arriving at your verdict."

3         I am assuming at this point that there is going to be

4  a stipulation regarding IMP statement, so that would then be

5  included.  The problem is, in fact, certain of these

6  statements were found with defendant Ashqar, and certainly the

7  jury should consider them.

8         What we would propose --

9         MR. MOFFITT:  Excuse me?  I didn't hear what you

10 said.

11        MR. SCHAR:  I'm sorry.

12        Certain of the statements were, in fact, Salah's

13 confessions were found with defendant Ashqar.  In fact, he

14 mailed them out.

15        And we just were going to be more specific in the

16 last line to say, "You may not consider the testimony" -- "the

17 testimony of the ISA regarding the substance of any of these

18 statements as evidence in arriving at your verdict," which I

19 think is -- permits the jury to use the actual statements in

20 his possession but not the testimony that was provided

21 regarding those statements.

22        THE COURT:  Mr. Moffitt or Mr. Spielfogel?

23        MR. MOFFITT:  The possession of the statements in

24 terms of the evidence, the government did not show how he came

25 into possession of those statements.  They never showed that

1   his possession of those statements was in any way illegal or

2   that he was involved with acquiring those statements in an

3   illegal way.

4         In fact, they never showed where the statements came

5   from.  They never even suggested where they came from.  At

6   this point, to use the substance of those statements against

7   Dr. Ashqar -- and my understanding --

8         THE COURT:  No, I think he's saying not the

9   substance.  He's saying --

10        MR. MOFFITT:  Well, what they want to use is the

11  possession.

12        THE COURT:  Right.  You may not consider the

13  substance of these statements.

14        MR. MOFFITT:  Well, they were also admitted, and my

15  understanding was they were not admitted for the purposes of

16  the truth.

17        THE COURT:  Correct.

18        MR. SCHAR:  That's correct.  What we're saying is

19  it's -- certainly what the jury can do is they understand, it

20  was read to them, so they know what was in the statements that

21  were in defendant Ashqar's possession.  They were not offered

22  for the truth of the matter.  They may consider his possession

23  of what those statements said not for the truth --

24        THE COURT:  Right.

25        MR. SCHAR:  -- but his possession of them and

1   whatever he may have done with them.

2          THE COURT:  You can make that -- you can make that

3   modification.

4          "You may not consider the substance of any of these

5   statements as evidence."

6          MR. MOFFITT:  But don't they need to establish that

7   the possession was through the conspiracy?

8          THE COURT:  I think that's argument, Mr. Moffitt.

9          MR. MOFFITT:  It seems to me that there has to be

10  some evidence that establishes how he possessed it and whether

11  or not it was through the conspiracy.

12         The mere fact that he possessed it without any

13  evidence of how it was acquired doesn't mean anything.  If he

14  acquired it from somebody outside the conspiracy, how is

15  that -- what does it prove?

16         MR. SCHAR:  Judge, that's argument.  I think instead

17  of substance, I think that because obviously that's -- they

18  may not consider the truth --

19         THE COURT:  That's probably a better way.

20         MR. SCHAR:  -- of any of these statements as evidence

21  in arriving at your verdict as to defendant Ashqar.

22         THE COURT:  I think that's a better way.

23         MR. MOFFITT:  Now he's suggesting that the mere

24  possession of documents is an indication of guilt, is evidence

25  of guilt, and I don't think that's appropriate.

1            THE COURT:  That is argument, again.  And it's

2   similar to my ruling at sidebar on the possession of the book.

3   So, that is argument.  You are free --

4            What, Mr. Moffitt?

5            MR. MOFFITT:  I was answering a question

6   Mr. Spielfogel posed to me.

7            THE COURT:  Instruction 12-A, Page 15.

8            You had proposed, Mr. Deutsch, including language

9   that "Mr. Salah's counsel were not allowed to cross-examine

10  Israeli ISA/GSS interrogators regarding the underlying

11  classified matters contained in these admissions."

12           MR. DEUTSCH:  Yeah.  What the government put in there

13  was "Defendants could not cross-examine a particular witness

14  regarding underlying classified matters set forth in these

15  admissions."

16           And that seems to me very generic.  It was Mr. Salah

17  who was cross-examining two ISA agents, and that's what it's

18  about.

19           THE COURT:  Mr. Schar?

20           MR. SCHAR:  I thought this was the language that was

21  actually provided to the jury when these issues arose that --

22           THE COURT:  It was, but it was an instruction given

23  that was created pretrial before it was known what witnesses

24  you were going to use these admissions with so as not to

25  preclude them from using that with other -- I think it's

1    appropriate.

2           MR. SCHAR:  Defendant Salah's counsel?

3           THE COURT:  Yes.

4           MR. SCHAR:  Just could not -- just instead of

5    defendants.

6           THE COURT:  Defendant Salah's counsel?

7           MR. DEUTSCH:  I guess maybe the -- it should be

8    Salahs' plural apostrophe, right?  No, that's right.  Salah's

9    counsel.

10          THE COURT:  Counsel will pick up.

11          MR. DEUTSCH:  That's right, "were not allowed to

12   cross-examine Israeli ISA/GSS interrogators regarding the

13   underlying classified matters contained in these admissions,"

14   and then you can pick up, "You decide what weight, if any, to

15   give to these" --

16          THE COURT:  Do you object, just for consistency based

17   on what I did before, to "Defendant Salah's counsel could not

18   cross-examine"?  Do you want the language "were not allowed

19   to"?  Does it matter to you?

20          MR. DEUTSCH:  No.

21          THE COURT:  It doesn't matter?

22          MR. DEUTSCH:  "Could not" is fine.

23          THE COURT:  Okay.  "Could not cross-examine" --

24          MR. DEUTSCH:  Maybe -- actually, "were not" -- could

25   not sounds like -- I think "were not allowed to" I think is

1     more accurate.

2          THE COURT:  Okay.  That's fine.  " ... were not

3     allowed to cross-examine Israeli ISA/GSS interrogators

4     regarding the underlying classified matters set forth in these

5     admissions."

6          MR. DEUTSCH:  Right.

7          THE COURT:  Okay.

8          I will sustain your objection.

9          No. 14, the question is the bracketed material.

10         MR. DEUTSCH:  Yes.

11         THE COURT:  Mr. Schar?

12         MR. SCHAR:  I'm sorry, Judge.

13         THE COURT:  The bracketed only.

14         MR. SCHAR:  Yes.  On that one, Judge, I understood

15    that -- what I can't recollect at this point is who was

16    cross-examined with statements under oath that would come in

17    for the truth of the matter asserted because that determines

18    whether or not there was a statement under oath that could

19    also be considered for the truth.

20         MR. DEUTSCH:  Well, I assume that Benny, when he

21    testified at the military tribunal, was testifying under oath;

22    and there was impeachment of him about this where he testified

23    that intensive interrogation breaks the resistance of an

24    interrogee.  And he seemed to deny that he was saying that.

25         So, that would be the one that comes to mind

1    immediately.

2            MR. SCHAR:  Judge, I think the issue there was

3    whether it was actually ever impeaching.  There was some

4    dispute about that, and I don't think that was ever --

5            THE COURT:  That can be a matter for the jury to

6    decide.

7            I don't think there was anybody else where it came

8    in.

9            MR. SCHAR:  I couldn't think of any, Judge.

10           THE COURT:  Okay.  So, take out -- leave the last

11   sentence in.  Take out the brackets.

12           MR. SCHAR:  Well, I guess the question, though, is

13   shouldn't it all stay in then?  "You may consider that earlier

14   statement only" and then the last one "if the statement was

15   made under oath."  I'm thinking the whole thing probably

16   should be given.

17           THE COURT:  Should be given?

18           MR. SCHAR:  Should.

19           THE COURT:  I think it probably should because that

20   would cover both were not under oath and were under oath.  So,

21   I will sustain your objections in part.  Take out the

22   brackets.

23           16, proposed language about the birds and benefits

24   given to the birds, which is picking up on one of the

25   admissions --

1      MR. DEUTSCH:  Yes.

2      THE COURT:  -- for purposes of the trial.

3      MR. DEUTSCH:  We're talking about benefits.

4      THE COURT:  Correct.

5      MR. DEUTSCH:  And I think that we should include that

6  "You heard testimony and received an admission by the

7  government concerning the use by the Israeli interrogators of

8  Palestinians working with the ISA/GSS called birds.  The

9  admission by the government conceded that the birds received,

10  and I quote, "from the admission."

11      MR. SCHAR:  I think this is trying to bootstrap on an

12  admission into the caution and great care instruction, which

13  is inaccurate.  It would be one thing, I suppose, if one of

14  these individuals had testified.  But as I understand your

15  ruling already, that the jury is going to be provided with the

16  admission of the government, each of the admissions of the

17  government, including the birds admission.

18      THE COURT:  What about doing this in, like,

19  Instruction 16-A, separate from this?

20      MR. SCHAR:  I might -- if they want to just repeat

21  the instruction, the admission, again, I think the jury's

22  already going to get that.  That is in evidence or that is the

23  evidence.

24      I think the issue of caution and great care for

25  witnesses or individuals who haven't testified is

1    inappropriate.

2          MR. DEUTSCH:  Well, this is in kind of a unique

3    situation because we have a significant piece of evidence that

4    is intertwined with coming out of this birds exercise, and the

5    government is admitting that the participants in the exercise

6    were given some type of --

7          THE COURT:  Right.

8          MR. DEUTSCH:  -- benefit.

9          THE COURT:  I agree.

10          I will give -- but I think it should be a 16-A

11    instruction with the modification of the last sentence.

12    Instead of saying "reliance in any way on information," take

13    out the "in any way."

14          And I think it should be consistent, "You may give

15    this testimony and admission such weight as you feel it

16    deserves, keeping in mind that information obtained through

17    the use of such rewarded sources must be considered with

18    caution and great care."

19          MR. SCHAR:  Which testimony, though?

20          THE COURT:  That was my next question because this --

21          MR. SCHAR:  This is -- I mean, we're somewhat trying

22    to fit a round peg through a square hole.

23          THE COURT:  Yeah, I don't think it should be

24    testimony.  I think it's just the admission because it was

25    classified so they couldn't testify about it.

1          MR. SCHAR:  What they got is the benefit of the

2    classified information through the admission.  It's the

3    caution and great care.  I'm not sure what we're cautioning

4    them --

5          THE COURT:  Well, the --

6          MR. SCHAR:  What is it they're being cautioned on?

7    Because the statement --

8          THE COURT:  Giving weight to the handwritten

9    statement that was given to the birds who received benefits.

10         MR. SCHAR:  Right.

11         But they're permitted to give whatever weight they

12   want and they're being instructed that the benefits were being

13   provided.

14         THE COURT:  I'll tinker with this.  I'm going to give

15   some form of this.  I will tinker with it.

16         Your objection to Government 17, the reference to

17   voluminous is overruled.  This is the pattern.  I will give

18   the pattern.  Your objection to Government 26, deceptive and

19   disguised investigative practices, shouldn't, Mr. Schar, this

20   be limited to -- I think this gets at your objection,

21   Mr. Deutsch --

22         MR. DEUTSCH:  Yeah.

23         THE COURT:  -- to such practices or investigative

24   techniques used in the United States?

25         MR. SCHAR:  Yes, Judge.  Well, yes.  I thought that

1   was --

2              THE COURT:  The law allows the government.

3              MR. SCHAR:  You want to put "the government of the

4   United States"?

5              THE COURT:  Yes.  "Allows the United States

6   government."

7              So, your objection to 26 is sustained in part.

8              28, I have taken under advisement, and I think I've

9   addressed everything else, Mr. Deutsch, in connection with --

10  except for your proposed instructions --

11             MR. DEUTSCH:  Right.

12             THE COURT:  -- which I will get to.

13             Okay.  It is ten to 1:00.  Would you like to break

14  until 2:00 o'clock and then take up defendants' proposed

15  instructions or keep going?

16             MR. SCHAR:  I'd prefer to keep going.

17             MR. MOFFITT:  I need a break.

18             THE COURT:  I wouldn't mind one either.  I'll see you

19  at 2:00.

20      (Court adjourned, to reconvene at 2:00 p.m.)

21                        *    *    *    *    *
    I certify that the foregoing is a correct transcript from the
22  record of proceedings in the above-entitled matter.

23

24  /s/ Joseph Rickhoff                    September 3, 2008
    Official Court Reporter
25