1                    IN THE UNITED STATES DISTRICT COURT
                        NORTHERN DISTRICT OF ILLINOIS
2                              EASTERN DIVISION

3   UNITED STATES OF AMERICA,            ) Docket No. 03 CR 978
                                         )
4                        Plaintiff,      )
                                         )
5              vs.                       )
                                         )
6   MUHAMMAD HAMID KHALIL SALAH AND      )
    ABDELHALEEM HASAN ABDELRAZIQ ASHQAR, ) Chicago, Illinois
7                                        ) January 3, 2007
                         Defendants.     ) 2:00 o'clock p.m.
8
                    TRANSCRIPT OF TRIAL PROCEEDINGS
9            BEFORE THE HONORABLE AMY J. ST. EVE

10  APPEARANCES:

11  For the Plaintiff:        HON. PATRICK J. FITZGERALD
                              United States Attorney
12                            BY:  MR. JOSEPH M. FERGUSON
                                   MR. REID J. SCHAR
13                                 MS. CARRIE E. HAMILTON
                              219 S. Dearborn St., Suite 500
14                            Chicago, Illinois  60604

15  For Deft. Salah:          PEOPLE'S LAW OFFICES
                              BY:  MR. MICHAEL EDWARD DEUTSCH
16                                 MS. ERICA THOMPSON
                                   MR. BENJAMIN ELSON
17                            1180 North Milwaukee Avenue
                              Chicago, Illinois  60622
18
    For Deft. Ashqar:         MR. KEITH ALLAN SPIELFOGEL
19                            20 North Clark Street, Suite 1200
                              Chicago, Illinois  60602
20
                              MR. WILLIAM MOFFITT
21                            11582 Greenwich Point Road
                              Reston, Virginia  20194
22

23  Also Present:             S/A BRADLEY BENAVIDES, FBI
                              S/A JILL PETORELLI, FBI
24

25

1   APPEARANCES (Cont'd):

2

    Court Reporter:                MR. JOSEPH RICKHOFF
3                                  Official Court Reporter
                                   219 S. Dearborn St., Suite 1232
4                                  Chicago, Illinois  60604
                                   (312) 435-5562
5

6              *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

7                         PROCEEDINGS RECORDED BY
                          MECHANICAL STENOGRAPHY
8                   TRANSCRIPT PRODUCED BY COMPUTER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

 1    (Proceedings heard in open court:)

 2         THE CLERK:  03 CR 978, U.S. vs. Abdelhaleem Ashqar

 3    and Muhammad Salah.

 4         MR. DEUTSCH:  Judge, I wanted to go back to just one

 5    instruction.

 6         Just one, she says.

 7         THE COURT:  I didn't say that.

 8         Which one?

 9         MR. DEUTSCH:  Instruction 66, which is the aiding and

10    abetting instruction.

11         THE COURT:  Just bear with me a second.

12         MR. DEUTSCH:  Okay.

13         THE COURT:  Because I have a lot of documents.

14         Yes.

15         MR. DEUTSCH:  If you look at it, what disturbs me

16    about this instruction is, is that it talks about a -- the

17    second paragraph -- defendant's guilty of aiding and abetting

18    a charged conspiracy if he or she tries to help the conspiracy

19    succeed by committing an act in furtherance of the conspiracy

20    and had knowledge of the conspiracy's -- and I think we have

21    to put unlawful in there because -- because otherwise we're

22    really going to get involved with people aiding and abetting

23    Hamas, and that could mean anything.

24         That could mean, you know, giving money, writing an

25    article, standing up in a crowd and saying I support Hamas,

1   all those things that are within the law.

2          And if you look at Government 28, which is the

3   definition of a conspiracy, it says, "A conspiracy is an

4   agreement between two or more persons to accomplish an

5   unlawful purpose."

6          So, all I'm asking for is to take that unlawful

7   language and stick it in there, as well.

8          MR. FERGUSON:  I'm stepping on Mr. Schar's point

9   here.  The reference here in this instruction is to the

10  charged conspiracy, which takes you to exactly what illegal

11  acts are before the jury, as opposed to the initial general

12  instruction, which is general.

13         THE COURT:  What's the harm in putting "unlawful" in

14  there?

15         MR. SCHAR:  Judge, I think charged conspiracy is the

16  issue.  Conspiracy's unlawful purpose, again, suggests that

17  there's lawful purposes to a criminal conspiracy and unlawful

18  purposes, where the definition of a criminal conspiracy is an

19  unlawful purpose.  I think charged conspiracy addresses the

20  issue.

21         MR. DEUTSCH:  But we have a conspiracy here which is

22  defined as Hamas, and we know --

23         MR. SCHAR:  No.

24         MR. FERGUSON:  No.

25         MR. SCHAR:  That's the enterprise.  That's not the

1    conspiracy.

2              MR. DEUTSCH:  Well, if you can --

3              MR. MOFFITT:  The conspiracy is to aid the

4    enterprise.

5              MR. DEUTSCH:  Enterprise.

6              Well, it still should be you're aiding an unlawful

7    purpose.  If you are aiding and abetting it should be aiding

8    and abetting --

9              MR. SCHAR:  I think the charged conspiracy.

10             MS. THOMPSON:  But it also --

11             MR. FERGUSON:  Through the commission, through the

12   agreement that there be committed two or more.

13             THE COURT:  What's the harm in putting unlawful

14   there?  I think that's an accurate statement of the law.

15             MR. SCHAR:  Because there suggests that -- in this

16   case, the word conspiracy is a criminal conspiracy.  That's

17   how it's defined earlier.  Conspiracy is an agreement to

18   commit an unlawful act.

19             And, so, it suggests that conspiracies, which are by

20   definition an agreement to commit an illegal act, have both

21   lawful and unlawful purposes.  But the conspiracy is itself

22   the unlawful agreement.  So, I think it's -- it somehow

23   suggests that there are multiple purposes to a criminal

24   conspiracy which there aren't.

25             MR. DEUTSCH:  Well, it doesn't say criminal

1    conspiracy.  It just says --

2              THE COURT:  Yeah, maybe should it say charged?

3              MR. SCHAR:  Charged conspiracy.

4              MS. THOMPSON:  But the second time it comes up, it

5    doesn't say that.  I mean, it says it repeatedly without

6    unlawful or without criminal in front of it, and the original

7    instruction on 28 defines a criminal conspiracy as having to

8    have an unlawful purpose, and then it goes on to talk about

9    the common purpose but there it's okay because they can refer

10   up to the prior paragraph.

11             But here, it sort of disappeared many instructions

12   away from the original when defining conspiracy, and it just

13   seems like there's no harm in putting unlawful purpose there.

14             MR. SCHAR:  Judge, if you look at the end of this, it

15   does say charged conspiracy; and if it would resolve the issue

16   to put "charged" in front of each of the conspiracies in the

17   instruction, that's -- we don't have a problem with that.

18   That clarifies it.

19             But I think to --

20             THE COURT:  Okay.  Put "charged" in front of each

21   time.

22             MR. SCHAR:  Okay.

23             THE COURT:  That will address it.

24             Okay.  I want to move to the defendants'

25   instructions.

1          Mr. Deutsch, we have addressed your withdrawal

2     instructions.  I'll start with yours because you may have

3     addressed all of them.

4          MR. DEUTSCH:  No. 1 you've taken under advisement,

5     right?

6          THE COURT:  Correct.  I'm sorry.

7          MR. DEUTSCH:  2 --

8          THE COURT:  I'll be there in one second.

9          MR. DEUTSCH:  Okay.

10          THE COURT:  I am still sifting through all my jury

11     instruction documents.

12       (Brief pause.)

13          THE COURT:  Okay.  No. 1 I have taken under

14     advisement.

15          No. 2 I am going to use the pattern instruction,

16     pattern 4.06, which is in the government's.  So, I will not

17     give Salah 2.

18          Attempt instruct -- your Instruction 3.

19          MR. SCHAR:  I'm sorry, Judge, what do you have as

20     defendant Salah's Instruction 3?

21          THE COURT:  Your cover letter.

22          MR. DEUTSCH:  December 6th cover letter attached.

23          THE COURT:  December 6th cover letter, although

24     Proposed Instruction 3 deals with prior inconsistent

25     statements --

1          MR. SCHAR:  I think those are --

2          THE COURT:  -- which I think we've addressed.

3          MR. DEUTSCH:  Yeah.

4          THE COURT:  So I will not give Salah 3.  I will give

5     the government's version to which I sustained your objections,

6     which is the pattern.

7          Impeachment of a witness with convictions, I will

8     give the government's version, which is very similar to yours

9     and the pattern 3.11.

10          Salah Instruction 5.  Which one does this correspond

11     to?

12          MR. SCHAR:  Judge, Government 12.

13          THE COURT:  Thank you.

14          The real issue here is what you have at Paragraph 3

15     of this.  The other is essentially similar to what is in

16     Government 12.

17          MR. DEUTSCH:  Although we do say in Paragraph 2 of

18     Salah 5 that they should consider such a statement with

19     caution and great care and should give it such weight as you

20     feel it deserves under all circumstances.

21          THE COURT:  I don't think that language is

22     appropriate with respect to all of the statements.  Whether or

23     not I give it in connection with the birds statement, I'm

24     going to tweak that and give something back.

25          But the caution and great care language goes to

1   cooperating defendants who are getting benefits in exchange

2   for their testimony, and that is not the case or applicable to

3   the statements made by defendant Salah to the Israeli

4   authorities.  It's a separate issue with the birds, which,

5   again, I will take up in our other proposed instruction.

6           MR. SCHAR:  Judge, I --

7           THE COURT:  So I will not give that language.

8           MR. SCHAR:  This was addressed by Ms. Hamilton last

9   time we were in court.

10          THE COURT:  Yes.

11          MR. SCHAR:  My understanding is you were going to

12  give the government's version because it says to consider all

13  circumstances without highlighting any particular one.

14          THE COURT:  Right.  Ms. Hamilton's point was if you

15  give some of these circumstances, then you should give others,

16  as well.  I am not going to give Defendant's Instruction 5,

17  although you are free to argue all of those issues in

18  addressing the statements.  I will give the pattern, which is

19  set forth in Government's 12.

20          Instruction on classified material, I think that is

21  moot now, as well, in light of 12-A, which is with your

22  modification.  So, I will not give Salah 6.  I will give 12-A

23  with your sustained objection to it.

24          Missing witness, Instruction 7.

25          MR. SCHAR:  Judge, we object to this instruction.  I

 1    think the pattern -- the Seventh Circuit's fairly clear that

 2    missing witness instructions are inappropriate, generally

 3    speaking, and you've dealt with this issue in particular

 4    repeatedly over and over again in pretrial dealings.

 5           We do not control these particular witnesses.  They

 6    are here pursuant to our request just as a request, as I

 7    understand, was put in by the defense to be addressed with --

 8    this is not -- these witnesses were not pragmatically just

 9    available to us.  And on top of that, I think it would be

10    required, if there was some suggestion that somehow they would

11    have benefitted the defense and there's no indication that any

12    of these witnesses were going to benefit the defense

13    whatsoever.

14           MR. DEUTSCH:  Judge, I think essentially what the

15    Court, Seventh Circuit said in Mahone is particularly

16    appropriate here.  They are -- they were pragmatically

17    available to the prosecution and not to the defense.

18           We're still waiting for our response to the letters

19    rogatory, which now has been submitted over three months.

20           The government had -- they cannot deny that any one

21    of those ISA agents they wanted to come here they could have

22    had come here.  And they chose those two, and they could have

23    had all the others.  There was no limitation on what witnesses

24    they could bring.

25           So, I understand on one level that we don't know

1   whether they would be helpful or not to the defense.  But what

2   I'm concerned about is, is that arguing in front of the jury

3   where are all those other witnesses that were witnesses to the

4   interrogation of Mr. Salah and the government saying, oh, they

5   could have got those witnesses, as well.  Those witnesses

6   don't belong to us.  The defense could have called those

7   witnesses, I think that would be an unfair argument in these

8   circumstances.

9          So, we need to somehow address that issue.  And this

10  is what I'm trying to get at.

11         THE COURT:  Did you plan on arguing that?

12         MR. DEUTSCH:  Of -- I plan on arguing it.

13         THE COURT:  No, I am talking to Mr. Schar.  Sorry.

14         MR. SCHAR:  No, Judge.  That --

15         THE COURT:  That they could have gotten them just as

16  easily as you?

17         MR. SCHAR:  No, I don't think we plan on making that

18  argument.

19         THE COURT:  In rebuttal?

20         MR. SCHAR:  No, Judge, that is not part of my

21  rebuttal as it stands right now.  I don't expect it to be.

22         I think what's at issue here, though, is the

23  instruction in particular is a suggestion that somehow their

24  testimony would have been unfavorable.  And I think that

25  certainly it's fair to argue in rebuttal that their testimony

 1   would not have been unfavorable.  But the issue of who could

 2   have gotten them, I'm not going to argue one way or the other.

 3          THE COURT:  I don't know how we could say that an

 4   inference of their testimony would be unfavorable should be

 5   given.

 6          MR. DEUTSCH:  Is there some argument which would --

 7   which basically says that -- I can understand that.  I

 8   understand not putting that in an instruction because we can't

 9   really say that.

10          But, again, I think there is a problem here when you

11   call two out of twelve interrogators, and it's certainly

12   something I intend to argue to the jury.

13          THE COURT:  And you are free to argue that.

14          MR. DEUTSCH:  But I don't want Mr. Schar on rebuttal

15   to get up and say, like I said, oh, they could have brought

16   them.  If they were helpful to them, they could have got them

17   here, you know, we didn't have control over them.

18          MR. SCHAR:  Let's put aside --

19          MR. DEUTSCH:  That's just not true.

20          MR. SCHAR:  Legally, they have the right to attempt

21   to call them.  But I don't anticipate saying that.  I mean, I

22   think this argument is made all the time about what evidence

23   is presented, what evidence is presented.  I think I should be

24   free to argue that focusing on evidence that's not here and

25   focusing on individuals that aren't here is not something the

1    jury should be doing.  But that doesn't --

2              THE COURT:  That's separate, though.

3              MR. SCHAR:  Yes.

4              THE COURT:  Mr. Deutsch's point is well taken that

5    given the legalities of getting these witnesses here through

6    letters rogatory through Israel and the huge hurdles of going

7    through that, even assuming they had filed those letters

8    rogatory two years ago, I don't think you could fairly argue

9    that they could have gotten them here just as easily as you

10   could have.

11             MR. FERGUSON:  Well, one of the premises of what

12   Mr. Deutsch -- look that way, Mike.

13             The premises of what Mr. Deutsch is arguing here is

14   that the government could have had all these witnesses in the

15   courtroom.  And he said the government can't deny.

16             Well, let me tell you as an officer of the court, as

17   the lawyer for the government, yeah, I can deny.  We could not

18   have all those witnesses here.  It's absolutely not the truth,

19   and he has no basis for saying otherwise.  So, that premise is

20   incorrect.

21             And the fact of the matter is, Judge, that the

22   government repeatedly on the record made clear that there were

23   procedures available through which to obtain evidence that

24   were not triggered until the eve of trial.  And the failure of

25   the defense to have done that and then to get the benefit of

1    their own laxness in that regard really seems improper.

2            THE COURT:  But --

3            MR. SCHAR:  The only other thing -- I'm sorry, Judge.

4    The only other thing I would add onto that is what this

5    instruction and what -- putting the instruction aside, the

6    argument doesn't really address in part also are the strenuous

7    requirements the government had to attempt to obtain lawfully

8    in order to allow these witnesses to appear, which the defense

9    repeatedly objected to.

10           And to suggest that we were all on even playing

11   fields -- not that we were on even playing fields, but simply

12   that somehow it's our fault for not having gotten them, given

13   the fact that we had to overcome all the objections to getting

14   them as well, is a little bit of an issue that, I guess,

15   certainly isn't going to be addressed in an instruction but

16   raises some argument issues.

17           THE COURT:  I think it's appropriate for Mr. Deutsch

18   to argue that, look, there were twelve other witnesses to his

19   statements, and you -- you didn't call them.  You only called

20   two.  I think that is appropriate.

21           I also think your proposed response that, look, you

22   decide the case based on the evidence presented here, and

23   whether or not we've met our burden based on what's presented

24   here is appropriate.  But I agree with Mr. Deutsch, and you've

25   said you don't plan on doing this, Mr. Schar, but it does seem

1    to be unfair if you plan on arguing anything along the lines

2    that they could have gotten them just as easily as we could

3    have, given all of the hurdles here.

4            So, I am going to preclude you from making that

5    particular argument.

6            I also don't think the missing witness instruction is

7    appropriate here and will sustain the government's objection

8    to Salah Instruction 7.  But I think by argument you will

9    achieve the purpose you had hoped to with Salah 7.

10           Salah 8 I will give -- I'm not going to give Salah 8.

11   I am going to give the Pattern Instruction 4.06, which is in

12   the government's instructions that I've already addressed.

13           Salah 9, multiple conspiracies.  I think defendant

14   Ashqar has proposed a multiple conspiracy, as well.

15           Haven't you, Mr. Moffitt?  I think I saw that.

16           MR. MOFFITT:  Yes, ma'am, I have.

17           MR. SPIELFOGEL:  Is it the same?

18           MR. DEUTSCH:  I know.

19           THE COURT:  That's what I want to see.

20           Do you remember which number it is?

21           MR. MOFFITT:  I'm looking for it now.

22           MR. FERGUSON:  No. 4.

23           THE COURT:  No. 4?  Thank you.

24           They are different.  I guess, first of all, what is

25   the government's position with respect to a multiple

1   conspiracies instruction?

2          MR. SCHAR:  I think we would object.  I don't think

3   there's evidence of multiple conspiracies here.  Their own

4   expert suggested it was all one large, overarching conspiracy;

5   and I don't think that there's been, as the evidence has come

6   in, any evidence of a multiple conspiracy that would support

7   this type of instruction.

8          To the extent there is, the government has proposed

9   an instruction, as well, because I don't think either of the

10  ones that were necessarily provided are accurate.

11         But, again, it's got to be supported by actual

12  evidence in the case in order to get there in the first

13  instance; and I'm not sure what evidence there is to support a

14  multiple conspiracy instruction, given what both the experts

15  have said and what the evidence has been.

16         THE COURT:  Is there a pattern on multiple

17  conspiracies?

18         MR. SCHAR:  There is not, Judge.

19         MR. SPIELFOGEL:  No.

20         THE COURT:  What's the evidence of multiple

21  conspiracies?

22         MR. DEUTSCH:  You know, Judge, each action that could

23  have been a conspiracy of certain different people.  It

24  doesn't -- there could have been a conspiracy to carry out

25  suicide bombings, but the conspiracy that Mr. Salah was

1    involved in was not -- didn't involve that.  You know, I don't

2    see where just -- they can just charge an overarching

3    conspiracy when they have all these different actions and

4    activities.

5          MR. MOFFITT:  A few moments ago, we were talking

6    about it as an overarching enterprise, as opposed to an

7    overarching conspiracy.  Now we've shifted back to conspiracy.

8          Certainly Dr. Ashqar could be involved in something

9    that was different from what Mr. Salah was involved in.

10         And second of all, I would suggest to you that I

11   believe that there's a burden on the government to establish

12   that post-1995, when the last of their acts against Dr. Ashqar

13   occurred, that Dr. Ashqar's involvement after that was in the

14   same conspiracy that existed before that.

15         MR. DEUTSCH:  I think that the evidence suggests that

16   there was a different goal and strategy of Hamas post-'94,

17   which then they -- the military, rather than target military

18   targets and armed soldiers, they were -- began to target

19   civilians.  And that could have been a whole different

20   conspiracy that Mr. Salah was not involved in.  He was in

21   prison at the time.

22         THE COURT:  I think a multiple conspiracy instruction

23   probably is appropriate here.

24         Mr. Deutsch or Mr. Moffitt, do you --

25         MR. SCHAR:  Judge, can I hand up a proposal, as well?

1    I think this one is supported by --

2            THE COURT:   This one is what?

3            MR. SCHAR:   Supported by United States vs. Mansoori

4    in large part, which actually in that case laid out an

5    instruction which I think is closer to Mr. Moffitt's, but

6    not --

7            THE COURT:   Mr. Deutsch, do you --

8            MR. DEUTSCH:   I would defer to Mr. Moffitt so we

9    don't have to be dealing with three different --

10           THE COURT:   All right.   So you will withdraw Salah

11   No. 9?

12           MR. DEUTSCH:   Yeah, I will adopt Mr. Moffitt's.

13           THE COURT:   Let me -- you've just handed Government

14   Instruction No. -- I don't know where you are number-wise.

15           I will look at defendant Ashqar's 4 and the

16   government's multiple conspiracy instruction in light of

17   Mansoori and give one of these or some version.

18           MR. SCHAR:   We can make it 84, I guess, it would be.

19           THE COURT:   Okay.   Government Instruction 84.

20           Finally for defendant Salah, First Amendment freedom

21   of speech and association, and then this corresponds -- you

22   have at least one instruction on this.

23           MR. DEUTSCH:   I know Mr. Moffitt had submitted some.

24   I'm just trying to get that -- those points in.

25           THE COURT:   Do you want to leave yours in or -- there

1    are --

2         MR. DEUTSCH:  Not necessarily.

3         THE COURT:  Or join in.

4         MR. DEUTSCH:  Join in.  I'll join in, and let's see

5    if we can cover it.  You can put mine --

6         THE COURT:  You will withdraw?

7         MR. DEUTSCH:  Put mine in abeyance for now.

8         THE COURT:  Okay.  I will consider yours withdrawn.

9         MR. DEUTSCH:  Okay.

10        THE COURT:  Your No. 10.

11        MR. DEUTSCH:  All right.

12        THE COURT:  Then we will turn to Ashqar's.

13        Let's go through these.

14        MR. DEUTSCH:  Actually, Judge, we may have to get

15   back to ours because mine is a little bit more specific for

16   the facts of our case, which has to do with the right to

17   raise, donate, distribute money.  It may get -- I'll step back

18   and let -- see what happens.

19        THE COURT:  All right.  I'll hold onto yours then

20   until we get to the First Amendment ones of Ashqar.

21        Defendant Ashqar's Proposed Jury Instruction 1.  Is

22   there any objection to this?

23        MR. SCHAR:  Judge, the mere presence?

24        THE COURT:  No, two defendants on trial.

25        MR. SCHAR:  I'm sorry.

1          THE COURT:  This seems appropriate to me.

2          MR. SCHAR:  That's fine, Judge.

3          MR. DEUTSCH:  Judge, just so we're clear, there

4   was -- we did submit a theory of defense instruction.  I don't

5   know if -- it was submitted later.  But actually, it's

6   entitled Salah Instruction 13.  I don't know if you have it.

7   But based on what you're ruling now, we want to look at it and

8   submit something tomorrow or Friday.

9          THE COURT:  Submit something tomorrow.  We're going

10   to have another conference on Friday where I hope to resolve

11   these issues.  I don't have 13 before me.

12          MR. DEUTSCH:  Okay.  Well, we're going to submit

13   something different.  It's called theory of defense.

14          THE COURT:  Okay.

15          MR. MOFFITT:  What did the government decide with

16   respect to Ashqar No. 1?

17          MR. SCHAR:  We have no objection.

18          THE COURT:  No objection.

19          Mr. Deutsch, I assume you don't have an objection to

20   this.

21          MR. DEUTSCH:  No.

22          THE COURT:  All right.  I will give Ashqar 1.

23          Mere presence instruction, mere association.  Mere

24   association, this is pattern 5.11.

25          Before I get the government's view on this,

1   Mr. Moffitt, you have included language from both 5.11(a) and

2   (b) and the committee comment indicates that they are

3   alternative instructions.  So, you have not proposed them

4   alternatively.  You are proposing them together.

5          MR. SPIELFOGEL:  Well, it says as a general rule they

6   should be alternative instructions.  Sometimes it just works

7   out that they shouldn't be alternatives, and under the facts

8   of this case, these are the ones that apply.

9          THE COURT:  Mr. Schar?

10         MR. SCHAR:  Judge, I think -- well, first, I think it

11  is an alternative, and I think (a) particularly the second

12  paragraph, the bracketed paragraph, as in the pattern would be

13  the one that would be appropriate here regarding, as I

14  understand the arguments, the involvement in criminal

15  enterprise.

16         But more to the point, mere presence instructions, at

17  least as I understand the law generally, are properly given

18  where there's some possibility that the elements aren't clear

19  and that the individual defendant would have to be an actor.

20  In this case, when you -- obviously, mere presence would only

21  be applicable to the RICO conspiracy, if at all, and that

22  actually requires a finding that the defendant wasn't merely

23  present but that agreed to run the affairs of the enterprise

24  through a pattern of racketeering activity.

25         So the instructions for the racketeering conspiracy,

1  in order to find guilt, necessarily include a finding of not

2  mere presence.  I don't think it's necessary, but to the

3  extent it's going to be given, it would be the -- I think (a),

4  the bracketed paragraph, related to involvement with criminal

5  enterprise.

6          THE COURT:  Although, I think, their position is, and

7  don't let me put words in your mouth, but defendant Ashqar's

8  association with other individuals who are co-conspirators who

9  were also members of Hamas, that alone doesn't prove his

10  membership in Hamas, that he might -- these phone calls with

11  others who are alleged co-conspirators, that alone isn't

12  enough, just his association.

13          Mr. Moffitt, is that --

14          MR. MOFFITT:  Well, I didn't treat this as a mere

15  presence.  This is --

16          THE COURT:  Mere association.

17          MR. MOFFITT:  Or mere association.  Physical presence

18  wasn't the issue in this.

19          THE COURT:  Right.

20          MR. MOFFITT:  In that an individual could associate

21  not just with Hamas but any conspiracy.

22          THE COURT:  Now --

23          MR. MOFFITT:  But the problem here goes further than

24  that because membership in Hamas is not a crime.

25          THE COURT:  Which brings me to my next question for

1   you.  Why did you take out the bracketed language "or persons

2   involved in a criminal enterprise"?

3        The proposed instruction under (a) pattern

4   instruction, reads, "A defendant's association with

5   co-conspirators or persons involved in a criminal enterprise

6   is not by itself sufficient to prove his or her participation

7   or membership in a conspiracy or criminal enterprise."

8        MR. MOFFITT:  Because I'm stupid.

9        THE COURT:  That's on the record, Mr. Moffitt.

10       MR. MOFFITT:  I know, because I should have -- it

11   should have been taken out.

12       THE COURT:  Okay.  I don't think it should have.

13       So I also think that these are alternative

14   instructions.  I will give (a) as I have just read it with the

15   language "or persons involved in criminal enterprise."

16       So, Mr. Schar, when you are redoing the instructions,

17   that -- make that modification, and I will give --

18       MR. SCHAR:  You're giving both paragraphs (a) just so

19   I know what to put in or --

20       THE COURT:  No, not the presence, the association.

21       MR. SCHAR:  Okay.  Yes, Judge.

22       THE COURT:  The second full paragraph, which is one

23   sentence.

24       But Mr. Moffitt's proposal left out what I see is key

25   language --

1        MR. SCHAR:  Yes.

2        THE COURT:  -- that should go back in.

3        Okay.  No. 3, strictissimi juris instruction.

4        Mr. Schar?

5        MR. SCHAR:  Judge, we're objecting to each -- this is

6   kind of compacted into the issue of the bifarious nature and

7   the specific intent instructions.

8        So, all our objections related to the Scales standard

9   we're reincorporating, and that also goes to the issue of the

10  First Amendment.  First Amendment is not a defense in any way

11  whatsoever in this case because this isn't, again, a mere

12  association or a mere speech crime.

13       What the First Amendment says is the government shall

14  pass no laws that abridge these crimes, and the racketeering

15  conspiracy doesn't abridge them in any particular way.

16       And there's, I mean, numerous cases that deal with

17  the fact that First Amendment instructions are not appropriate

18  when the crime itself doesn't implicate guilt by a finding

19  purely of speech, which is the Scales standard essentially.

20  Obviously, if this was a Scales case and there was some issue

21  about speech, these would be appropriate, but you have all

22  types of cases.  I mean, the one that maybe perhaps sums it up

23  best is an Eighth Circuit case, 152 F.3d 756, United States

24  vs. Hildebrand.

25       THE COURT:  152 F.3d 756?

1          MR. SCHAR:  756 at 764.  "The defendants argue that

2    the district court erred in refusing their proposed

3    instruction that advised the jury of the First Amendment

4    freedom of expression.  The defendants argue that refusing

5    this instruction denied them the defense that their actions

6    were motivated by" --

7          MR. MOFFITT:  Mr. Schar --

8          MR. SCHAR:  Slow it down?  -- "motivated by political

9    objective.  However, they were charged with mail fraud and

10   money laundering, not anti-government speech.  Their speech

11   was challenged only to the extent that they fraudulently

12   solicited claims.  Where speech becomes an integral part of

13   the crime, a First Amendment defense is foreclosed even if the

14   prosecution rests on words alone."

15         Likewise, a Fifth Circuit case, United States vs.

16   Clark, 139 F.3d, 485 at 490, "Clark also contends the district

17   court erred in not instructing the jury on her First Amendment

18   defense.  There was, however, no foundation for such an

19   instruction because the charged conduct, conspiracy to

20   defraud, was not protected by the First Amendment."

21         And lastly, a slightly older case, United States vs.

22   Barnett, Ninth Circuit, 667 F.2d 835 at 842, "Defendant

23   appears to argue as follows:  The First Amendment protects

24   speech, including the printed word.  Barnett," who is the

25   defendant, "sells printed instructions for the manufacture of

1  phencyclodine; therefore, the First Amendment protects

2  Barnett's sale of printed instructions.  The specious

3  syllogism finds no support in the law.  The First Amendment

4  does not provide a defense to a criminal charge simply because

5  the actor uses words to carry out his illegal purpose.

6  Crimes, including that of aiding and abetting, frequently

7  involve the use of speech as part of the criminal transaction.

8  The use of a printed message to a bank teller requesting money

9  coupled with a threat of violence, the placing of a false

10  representation in a written contract, the forging of a check

11  and the false statement to a government official are all

12  familiar acts which constitute crimes despite the use of

13  speech as an instrumentality for the commission thereof."

14       Judge, this case is no different from any of these

15  other cases.  The crimes charged do not criminalize speech or

16  association.  A finding of guilt requires an agreement to run

17  the affairs of an enterprise through a pattern of

18  racketeering.

19       And to begin to attempt to instruct the jury on First

20  Amendment, not only is it not supported by the law, but it

21  runs into obviously the slippery slope of then having to

22  define what the First Amendment does not protect and how all

23  of the things that have been said and all of the evidence

24  they've received related to what was possessed can be

25  significant evidence of the crimes that, in fact, are charged.

1           So, this comes down to an issue, Judge, of it not

2   being supported by the law, it not being a valid defense in

3   this case and basically inappropriate and impossible really to

4   come up with an instruction that would tell the jury what the

5   First Amendment protects in a case where it's not a defense,

6   while also trying to explain what it does not protect.

7           THE COURT:  I will take this under advisement.  This

8   overlaps with the government's elements on RICO instruction

9   and raises some of the same issues that you've raised there.

10          So, I will look at these cases you've cited and take

11  this under advisement with that one.

12          Government Instruction -- I'm sorry -- defendant

13  Ashqar Instruction 5.

14          I'm sorry, Mr. Moffitt?

15          MR. MOFFITT:  Yes, ma'am.  This is the

16  multi-conspiracy.  You've already taken this under advisement.

17          THE COURT:  No. 4 I did.  I moved on to No. 5.

18          I will -- again, this overlaps with the government's

19  own instruction that I have taken under advisement, and I will

20  take this under advisement with the elements instruction.

21          MR. MOFFITT:  Your Honor, I just want to say

22  something.  There is no question that Dr. Ashqar wanted to

23  accomplish the goal of getting rid of the occupation.  That in

24  and of itself is not an illegal goal.

25          And certainly there is no question that he performed

1    acts that would get -- would attempt to get rid of the

2    occupation.

3          The government simply says because they charged

4    something in one way, it doesn't implicate the First

5    Amendment.

6          We've heard in this case about his association with

7    people.  We've heard in this case about his religion.  We've

8    heard in this case about his speech and his possession of

9    documents.

10         I would suggest to you that each of those things

11   implicate the First Amendment.  Whether it is charged as a

12   violation of the First Amendment and the way the government

13   seeks to structure this doesn't mean that it doesn't implicate

14   the First Amendment.  And they simply can't hide behind the

15   notion of how they charged it and be blind to the First

16   Amendment implications of what is happening here.

17         They have sought to prove this case by his

18   association with people in Philadelphia, his comments that

19   were made in a public meeting in Philadelphia, which was

20   public based upon the testimony of the agents who said the

21   meeting wasn't closed.  They have sought to prove it by a

22   resort to suggestion that a reliance on a particular religion

23   means certain things about violence.  They have sought to do

24   all of those things in this case.

25         I suggest to you that each one of those things

1    implicate First Amendment conduct.  And the mere fact that

2    they charge the case like they did does not say -- does not

3    tell the world that this doesn't implicate First Amendment

4    activity.

5          The activity, depending on how you look at the

6    activity in Philadelphia, that clearly is associational

7    activity.  Depending upon how you describe the activity in

8    possessing documents and getting information from the news.

9    If you remember, Mr. Shorbagi said he was tasked to get

10   information from the news and give that information to someone

11   else.

12         So, now the suggestion is that reading the newspaper

13   and giving that information to Mr. Deutsch by me is an act in

14   furtherance of a RICO conspiracy.  Those are the things that

15   they're seeking to prove as overt acts in furtherance of the

16   RICO enterprise.  Each one of those things implicate the First

17   Amendment.

18         He has the absolute right to share that information

19   with another person.  He has an absolute right to share that

20   information with another person in support of arguing against

21   or resistance to the occupation.  He has an absolute right to

22   do that.

23         So, the suggestion here is all you look to is the

24   charge, and you ignore all the rest of that.  And I suggest to

25   you that that's wrong.  That's absolutely wrong.  None of that

1   conduct, I would suggest -- I would say each piece of that

2   conduct implicates a First Amendment right.  So, what a person

3   would have to do to avoid being found guilty here, it seems to

4   me, because each of those things can be acts in furtherance of

5   support of the organization, and the government can argue and

6   will argue that each of those things furthered the cause of

7   Hamas, which is the enterprise, I would suggest to you that if

8   you ever expressed any interest in Hamas at all, the only

9   person that you can talk to is yourself in the mirror because

10  anything you do with any other person who has a likewise

11  interest who believes that they have the right to associate

12  with people in Hamas would be an act that the government would

13  argue was in furtherance of the conspiracy, and that's exactly

14  what they intend to do and they don't intend to limit it to

15  just kidnapping or what have you.

16          They're going to claim that if Mr. Shorbagi sat down

17  and read a newspaper and talked to Dr. Ashqar after that about

18  what he thought was important for Hamas to know, they are

19  going to suggest that that furthered the illegal goals of

20  Hamas.  They've already suggested it.  And I can hear

21  Mr. Ferguson arguing that right now.

22          And if that doesn't implicate the First Amendment,

23  then we don't have a First Amendment.

24          MR. SCHAR:  It's not --

25          MR. MOFFITT:  We're not free to do anything.

1           MR. SCHAR:  It's not an issue of implicating the

2    First Amendment, Judge.  It is -- I am hard pressed to think

3    of a criminal case that doesn't implicate the First Amendment

4    at some level because the evidence obtained is often through

5    people's exercising the First Amendment.

6           What Mr. Moffitt continues to want to do or to think

7    that the jury is going to do, and I don't know why because

8    they won't be instructed that way, is to read out the

9    elements; that somehow the exercise of the First Amendment,

10   while it is in fact evidence of the criminal conspiracy and

11   defendant Ashqar's role in it, isn't going to get the

12   government anywhere unless the jury ultimately finds that each

13   of these defendants, they'll have to find it individually,

14   agreed, agreed to run Hamas through a pattern of racketeering

15   activity.  Everything --

16           THE COURT:  I'm taking this -- I'm taking this under

17   advisement.

18           Ashqar Instruction 5-A I am not going to give.  I'm

19   going to give the pattern instruction on enterprise for the

20   reasons I stated when we were on that pattern instruction

21   instead.

22           MR. MOFFITT:  It will be offered, and our objection

23   to that will be noted for the record.

24           THE COURT:  Certainly.

25           No. 6 I am overruling -- I am sustaining, I'm sorry,

1    any objections.  I'm not going to give Ashqar No. 6 because I

2    don't think it accurately states the law.  I am going to give

3    the pattern instruction on the interstate commerce definition

4    for the reasons I've previously stated when we addressed that

5    pattern instruction.

6           We're going to take a quick break.  I will be back in

7    about five, ten minutes.

8      (Brief recess.)

9           THE COURT:  Yes.

10          MR. FERGUSON:  Judge, if there was a -- unless there

11   was a specific matter for which the Court wanted my personal

12   presence, I was going to absent myself and leave matters to

13   Mr. Schar.

14          MR. MOFFITT:  If I've got to stay, he should have to

15   stay.

16     (Laughter.)

17          THE COURT:  Wait a minute, if I have to stay.

18          The only thing -- the State Department documents,

19   since you are the author of the letter to me, let me give you

20   my ruling.

21          Essentially, your only remaining dispute, as I

22   understand it, comes down to Document No. 6, my numbering of

23   documents, not yours.  Bates page 9500.  And the admission of

24   one paragraph starting with "Finally."

25          That paragraph may be introduced with the exception

1    of the last statement commenting on the due process.  That's

2    my ruling.

3              Now you're excused.

4              Okay.  Wait, one more thing before I let you go, just

5    to make sure we're all on the same page.  Mr. Deutsch,

6    tomorrow you have Dr. Basoglu.  What about Mr. Peers?

7              MR. DEUTSCH:  No, we're not calling Mr. Peers.

8              THE COURT:  Okay.  And then you have some documents?

9              MR. DEUTSCH:  Yes.

10             THE COURT:  State Department documents, at least one

11   stipulation.  We will take up the other stipulation.  I

12   couldn't find that in my materials before I came out here.

13   But I will take that up with you.  Anything else?

14             MR. DEUTSCH:  We have these redacted country reports

15   that you -- and those are also going to be read.

16             THE COURT:  Yes, those two paragraphs, I think.

17             MR. DEUTSCH:  Yes.

18             MS. HAMILTON:  Judge, actually with respect to those

19   two paragraphs, in light of your rulings on the other

20   Department of State documents, I guess we'd just be looking

21   for clarification as to under what exception those are coming

22   in for because they are entirely hearsay.

23             THE COURT:  I don't have that before me.  I would

24   have to -- let me take it up after jury instructions.

25             MS. HAMILTON:  Okay.

1            THE COURT:  Anything else, Mr. Deutsch?

2            MR. DEUTSCH:  No, Judge.

3            THE COURT:  Okay.  So, you -- and you still do not

4  anticipate that Mr. Salah will testify, correct?

5            MR. DEUTSCH:  Yes.

6            THE COURT:  Okay.  After all of that occurs, I will

7  admonish him outside the presence of the jury and confirm

8  that.  Then you will rest your case, correct?

9            MR. DEUTSCH:  Yes.

10            THE COURT:  Mr. Ferguson, do you anticipate any

11  rebuttal?

12            MR. FERGUSON:  We do, Judge.  There is a financial

13  document, singular, that we anticipate introducing by 902(11)

14  certification.  And there are -- it is unclear to us at the

15  moment exactly which of the State Department documents the

16  defense, the Salah defense, intends to actually introduce into

17  evidence.  It's unclear as to whether all of those that have

18  been put before your Honor for redaction are going to be

19  admitted.

20            To the extent that only certain of them are and the

21  government at this point, on the basis of the Court's rulings

22  as to the admissibility of these reports, generally wishes to

23  put some of them in, we would.  And depending on which ones

24  the Salah defense actually puts in, there may be a couple of

25  others which we would be proposing redactions for in accord

1  with the Court's prior rulings with respect to the State

2  Department consulate records.

3          And then beyond that, I don't think we're

4  anticipating anything else.

5          MR. MOFFITT:  Financial document in rebuttal to what?

6          MR. FERGUSON:  I'll show you the document.

7          THE COURT:  Ms. Thompson, do you plan on putting in

8  all of the documents, the State Department documents that we

9  went through last week?

10          MS. THOMPSON:  Judge, there was one that had been

11  redacted so heavily that we were considering not putting that

12  particular document in.

13          THE COURT:  Okay.

14          Let Mr. Ferguson know which one that is.  Did you

15  plan on putting the rest of them in?

16          MS. THOMPSON:  We were going to put the rest of them

17  in.

18          THE COURT:  Okay.

19          MS. THOMPSON:  But we would like to know which ones

20  the government is proposing now.

21          THE COURT:  That's what I was just going to tell you.

22  If you plan on putting in other ones, that redaction process

23  took -- I think we were here three hours last week.  I want to

24  do all of this with the jury tomorrow so they're not coming

25  back on Friday for anything because I don't think Dr. Basoglu

1    is going to be that long.  May take up the morning, but I

2    don't think he's going to go all day.

3          MS. THOMPSON:  I don't think he's going to be that

4    long, Judge, at all.

5          THE COURT:  So, let Ms. Thompson know at the end of

6    the day.  Send her which ones you would seek to propose to see

7    if you can agree on redactions.

8          MS. THOMPSON:  Because the other issue would be that

9    if the ones proposed by the government, whether or not we

10   agree on redactions or not, then we believe open the door to

11   others that we think should go in.  That would be the other

12   thing we'd need to be concerned about.

13         THE COURT:  Well, it's their rebuttal right.  But

14   send which ones in advance.

15         MR. FERGUSON:  Yes, Judge.

16         THE COURT:  And you know my rulings on the

17   redactions.  So, -- anything else you plan on doing in

18   rebuttal?

19         MR. FERGUSON:  I don't think so.

20         THE COURT:  Okay.

21         So, sounds like everybody will rest tomorrow and then

22   Monday on closings.  Here's the latest.

23         Mr. Lapertosa said he thinks it will take about an

24   hour.  The judge has a half hour scheduled.  Based on my

25   experience with fairness hearings, I can't imagine it taking

1     more than a half hour.

2          He would really like to be there.  He thinks he could

3     get another lawyer to come in at the half hour point but wants

4     to be there for the first half hour.

5          So I'll leave it to you.  We can start at 9:00 and

6     break at 10:00 for a half hour, or we can start at 10:30 and

7     just go through.  If the jury can stay without a problem until

8     5:30, I'll go until 5:30.  Again, my concern is the two people

9     that travel three hours each way if they're going to miss a

10    train schedule.

11         MR. FERGUSON:  Understood.

12         Judge, my preference still would be to begin at

13    10:30.

14         THE COURT:  Okay.

15         We'll do that then on Monday.  We'll start closings

16    with 10:30.  Hopefully we can get through yours in one day.

17    If not, we'll go over into the next day.

18         Mr. Deutsch, you will be up next after Mr. Ferguson.

19    So certainly you will go on Tuesday.  We'll see where

20    Mr. Deutsch is.

21         Mr. Moffitt, if there's one hour left, we can carry

22    yours into Wednesday.  I won't put you in a position where you

23    can't complete yours in one day.

24         MR. MOFFITT:  Okay.

25         THE COURT:  I think you -- how long do you

1    anticipate, Mr. Deutsch?  Did you say three hours roughly?

2            MR. DEUTSCH:  Tops, two to three hours.

3            Mr.  Moffitt?

4            MR. MOFFITT:  About the same.  I don't anticipate it

5    being much more than that.

6            THE COURT:  All right.

7            I think either way, we will end up going into

8    Wednesday, at least for the instructions.  These instructions

9    are complicated.  They are going to take me a while to read.

10   My preference is often to instruct the jury when they're fresh

11   the next day, not after listening to arguments.

12           So, you are excused.

13           MR. FERGUSON:  Thank you, Judge.

14           MS. HAMILTON:  Judge, there was one issue I wanted to

15   raise on Dr. Basoglu.  I don't know if you want to wait and do

16   that after the instructions.

17           THE COURT:  Yes.  I would prefer to.

18           No. 7, agreement to commit pattern of activities.  I

19   have -- you have modified Instruction 3.18.  I am going to

20   give 3.18 as I've already ruled with the exception that I have

21   taken the date issue of certain statutes under advisement that

22   I will rule on.

23           MR. SCHAR:  Just so --

24           MR. MOFFITT:  Which one was that, your Honor?

25           MR. SCHAR:  -- the government's instruction will be

 1   given.

 2         THE COURT:  Correct.

 3         MR. MOFFITT:  Which?

 4         THE COURT:  No. 7.

 5         No. 8, I think, is moot now in light of the

 6   government's representation that they're going to take out

 7   Illinois first-degree murder as a predicate.  So, I will moot

 8   that.

 9         If you need to, once you've seen the indictment or

10   the superseding information -- I'm sorry, not superseding

11   information.  Once you've seen the revised indictment, sorry,

12   I misspoke, if we need to revisit this, we certainly can, but

13   I will consider this moot at this point.

14         The No. 9, No. 10, or at least No. 9, in light of the

15   government reworking its murder instructions, I will hold off

16   on that until I see the revised.

17         The conspiracy to commit murder abroad.

18         MR. MOFFITT:  That has the issue of the dates.

19         THE COURT:  The dates, which is -- I need to see your

20   law from both of you.  So, I will -- I will take this under

21   advisement until I resolve the legal issue of acts that took

22   place before that particular statute was amended as

23   racketeering activity.

24         Okay.  Instruction 11, money laundering.

25         Mr. Schar?

1          MR. SCHAR:  We object.  The instruction we gave, I

2     think the government's instruction lays out everything.  The

3     bolded portion, again, gets into this complicated issue of

4     legal versus illegal, the executive order.  No one's charged

5     with 2339(b) IEEPA violation in this particular case.

6          So I think the government's money laundering

7     instructions account for everything and make sure the jury is

8     properly informed as to what's required for money laundering

9     to be a RICO predicate.

10          MR. MOFFITT:  Your Honor, it's not just -- the

11     problem is that this is a conspiracy to commit a RICO.  When

12     you take the RICO predicates, it's not that you have to commit

13     money laundering, but you have to do something in aid -- to

14     further money laundering.

15          So, you're not required to commit an act of money

16     laundering.  So, if Dr. Ashqar solicits money for educational

17     purposes, how does the jury know that that's not money

18     laundering?  What does the jury know about that to say that

19     that doesn't further the RICO enterprise here, the mere

20     solicitation of money for purposes of "to buy books"?

21          THE COURT:  Wouldn't the specified unlawful activity

22     aspect of the 1956 instruction cover that?

23          MR. MOFFITT:  Well, but the specified unlawful

24     activity would be the furtherance of Hamas.

25          THE COURT:  No, the specified unlawful activity is

 1   defined by the statute.

 2          MR. SCHAR:  Judge, it's Government's Instruction 58.

 3          THE COURT:  I am going to give the government's money

 4   laundering instruction.  The bolded language you have here I

 5   think is appropriate for a 2339, what was in Count Two, which

 6   is no longer in there.

 7          No. --

 8          MR. MOFFITT:  May I look at 58 for a second?

 9          THE COURT:  Pardon me?

10          MR. MOFFITT:  May I look at 58 for a second?

11          THE COURT:  Sure.

12          58, there were a series of them after 58 all dealing

13   with the money laundering under 56(a)(2).

14          MR. MOFFITT:  Sorry, I was looking at Page 58.

15          I maintain my objection, your Honor.

16          THE COURT:  Okay.  Your objection will be noted.

17          Instruction 12, for the reasons I've already

18   addressed, I am going to give the government's instruction

19   under Macari, the Seventh Circuit opinion that I cited

20   previously.  And there were a couple of instructions in a row,

21   and I've already addressed those.

22          There's a lot of overlap between what you're

23   proposing in those instructions, but the Seventh Circuit has

24   specifically approved the instruction proposed by the

25   government, which is the pattern.

1           No. 13 I will take under advisement until I resolve

2    the date issue, which you are going to give me law on today.

3           14, I think this had a date -- did this have a date

4    issue?

5           MR. SCHAR:  No.

6           THE COURT:  No.

7           MR. SCHAR:  Racketeering does not, Judge.  I think

8    it's the bolded paragraph that's at issue.  We'd object to.

9           THE COURT:  What's your objection to the bolded?

10          MR. SCHAR:  Judge, I think the elements of travel in

11   aid of racketeering lay this out, and, again, it's the same

12   issue.  You can't violate -- you can't agree to violate travel

13   in aid of racketeering if you're supporting legal goals of

14   Hamas.  I think it has to go to unlawful activity which is

15   specifically money laundering, and that's the series of

16   instructions that the government -- in the government's

17   instructions dealing with 19 -- Section 1952.

18          THE COURT:  Mr. Moffitt, was this instruction given

19   in the Al-Arian case?  In fact, you cite Al-Arian with respect

20   to multiple of these instructions, but it wasn't clear to me

21   that these were actually given in Al-Arian.

22          MR. MOFFITT:  Most of these specific intent

23   instructions were given in Al-Arian.

24          THE COURT:  They were given.

25          MR. MOFFITT:  There's a ruling by the judge with

1    regard to specific intent in Al-Arian I think you're aware of.

2            THE COURT:  I have -- yes, I am aware of that.

3            MR. MOFFITT:  So, there were a lot of relations to

4    specific intent in the Al-Arian case, and because of the

5    bifarious nature of what the government described as a more

6    crazy group of people than Hamas.

7            MR. SCHAR:  Judge, if you look at Government

8    Instruction No. 61 and 62 together again.  It's kind of the

9    equivalent of the money laundering issue.

10           In order to find -- you can't find that you traveled

11   to give money to education.  It's either the distribution or

12   attempted distribution of money that's from unlawful

13   activities or to commit the carrying out of unlawful activity.

14   And unlawful activity is specifically defined and can only be

15   defined for this particular case in Instruction 62 as money

16   laundering.

17           So, again, it's not -- I don't think it's an accurate

18   statement of the law, and I don't think the jury could be --

19   the jury's not going to be misinformed about this.

20           THE COURT:  I am going to sustain the government's

21   instruction and give the pattern instruction; and I think as I

22   have said multiple times today, the specific intent issue goes

23   to the elements on the RICO that I have taken under advisement

24   and I will address that on Friday when we meet again.

25           MR. MOFFITT:  Are we going to tell people somewhere

1   in this set of instructions that it is not illegal for people

2   to be members of Hamas or advocate on behalf Hamas?

3           THE COURT:  I have not gotten through all of your

4   instructions yet.  I thought you had something like that in

5   your First Amendment association one, but --

6           MR. MOFFITT:  I do.

7           THE COURT:  -- we'll get to that.

8           I also was surprised, I don't think you gave me a

9   theory of the defense instruction, and it seemed to me that

10  some of these arguments you're making now might be most

11  appropriate in a theory of the defense instruction --

12          MR. MOFFITT:  Okay.  We'll try to put one together.

13          THE COURT:  -- which I will certainly give you leave

14  to submit, but let's finish going through these.

15          Forgery or false passports.  We have the date issue,

16  which I will take under advisement until I see the law you

17  give me on that.

18          No. 16, effect of designation on specific intent.

19          MR. SCHAR:  Judge, we'd object.

20          THE COURT:  I'm not sure this is an accurate

21  statement of the law, and we've heard testimony on this.

22          I am going to sustain your objection because I don't

23  think this is an accurate statement of the law.  I will not

24  give No. 16.

25          No. 17, advocacy of violence protected by First

1    Amendment.

2          Mr. Schar?

3          MR. SCHAR:  Judge, I think this all, again, collapses

4    into this issue of whether any First Amendment instructions

5    are appropriate.  It's the government's position none are

6    because these are not Claiborne Hardware, these are not the

7    cases -- these are not -- it's not a case that makes the

8    exercise of the First Amendment illegal.

9          THE COURT:  Mr. Moffitt, are you aware of any cases

10   where these First Amendment instructions or the strictissimi

11   juris instructions were given that involved RICO conspiracy?

12         MR. MOFFITT:  No, because I'm not -- the association

13   cases all basically came out of the communist era which was

14   pre-RICO.  They were basically cases that came out of the

15   notion that advocacy of a takeover of the United States

16   government, as long as force and violence were not involved,

17   you could advocate that and it was appropriate and that unless

18   the government could prove that a member of the Communist

19   Party advocated overthrow by forceable overthrow and there was

20   an imminent opportunity to do that.

21         But I would suggest either Hamas most closely

22   resembles the Communist Party.  There clearly were illicit

23   goals of the Communist Party, goals that would violate the

24   law.  Goals that you could make a great RICO case out of the

25   Communist Party; but, yet, still membership, association with

1   and advocacy for would all be prevented as criminal activity

2   under Scales.

3           So, membership -- mere membership in Hamas is clearly

4   similar to mere membership in the Communist Party.

5           MR. SCHAR:  Judge, I agree with Mr. Moffitt's

6   statement of the law.  The difficulty with those communist

7   cases is the criminal violation was the mere association.

8           THE COURT:  Membership.

9           MR. SCHAR:  Exactly, the membership.  And that issue

10  not only is addressed by the fact that this crime is a RICO

11  conspiracy and the elements therein, but it's also addressed

12  by what is now going to be the mere association instruction

13  that's going to be given, which, to the extent it's even

14  necessary, in conjunction with it is going to be given, it

15  says mere association isn't sufficient for a crime.  You need

16  to meet the elements.

17          So, there is -- I think Mr. Moffitt's probably also

18  right.  You could have used the Communist Party as a criminal

19  enterprise if you could have charged the racketeering

20  conspiracy, and it wouldn't have implicated the First

21  Amendment at all.  The crime didn't exist then, so it would go

22  under a different statute which implicated mere membership.

23          MR. MOFFITT:  The real problem that I have, your

24  Honor, is that acts that have nothing to do -- the simple

25  act -- for instance, the act of having a meeting in

1   Philadelphia becomes in the hands of the skillful prosecutor

2   in furtherance of the RICO predicate offenses.  You simply

3   argue that it furthered the illegal goals of Hamas to have

4   this association and to have this meeting and what have you,

5   and you escape the First Amendment at all and the implications

6   of suggesting that.

7          And that activity, it seems to me, by its very

8   nature, by the type of activity it is, by the fact that it is

9   association, by the fact that it's advocacy for a political

10  organization under these theories, you could have made Nelson

11  Mandela a RICO defendant under this very -- under these very

12  same theories.

13         Now, we are a society that opens itself up and says

14  to the world come to America, be free to speak your mind, be

15  free to believe what you want, be free; and then we say to

16  people when they come, if we don't like the organizations that

17  they're members of -- and remember what we're really talking

18  about here, it seems to me, is people discussing events and

19  occurrences that are not actually taking place inside the

20  United States.  They're taking place -- the advocacy involves

21  another place.

22         So, at least in the communist cases, the advocacy

23  involved the United States.  Here what we're saying is we open

24  our doors to people, we profess to have a First Amendment

25  where people can discuss this kind of political activity, and

 1   then we say all we need is two acts that further -- overt acts

 2   that further the RICO or what is the specified unlawful

 3   activity and we're charge this as a conspiracy.  So, virtually

 4   anything, virtually any act the government chooses to pick can

 5   further -- by argument, can further the unlawful conspiracy.

 6           You can -- you could make a speech and say I support

 7   Hamas, that Hamas is doing a good thing, that Hamas is the

 8   right way for the Palestinian people to go, and the government

 9   could argue and could, based upon what Mr. Schar is

10   suggesting, could argue successfully that the making of that

11   speech or the meeting where that speech was made was a RICO

12   predicate act since it furthered the RICO conspiracy.

13           And there's no break on the government here,

14   absolutely not.  They can turn this anyway they want because

15   it is -- there's no substantive RICO that we're talking about.

16   We're talking about a series of inchoate acts that the

17   government takes and adds up and says this furthers the RICO

18   conspiracy.

19           And I promise you that that's what they're going to

20   do with Philadelphia.  I promise that's what they're going to

21   say about Philadelphia.  They're not going to back off of

22   that.  They're going to say that the Philadelphia meeting

23   where people got together and discussed, and discussed how

24   they were going to influence political behavior in the United

25   States, how they were going to -- this is done by virtually

1    everybody.  But they're going to suggest in their closing

2    argument that that furthered the RICO predicates here.  And

3    there's no question about it.

4              And I suggest to you that that implicates the First

5    Amendment, no matter what was charged in this case.

6              THE COURT:  Did the judge in Al-Arian give any First

7    Amendment instructions?

8              MR. MOFFITT:  You know, your Honor, I'd have to go

9    back, to be frank, and look exactly.  There was some we

10   offered.  We certainly argued the First Amendment.

11             THE COURT:  Right.

12             You didn't cite that as authority here.  I will take

13   17, 18 and 19 under advisement.

14             MR. DEUTSCH:  Judge, can I --

15             MR. MOFFITT:  And I'm not sure, Claiborne Hardware

16   was not a RICO case, but it was charged under a state statute

17   and what they charged was -- it was a civil case where a

18   speech was made, property was destroyed after the speech was

19   over, and they tried to charge the NAACP with being in a

20   conspiracy to destruct the property based upon the fact that

21   the speech involved advocacy of violence.

22             THE COURT:  Okay.

23             I'll go back.  I have not read that case --

24             MR. DEUTSCH:  Judge --

25             THE COURT:  -- but I will.

 1         MR. DEUTSCH:  Your ruling on 16, Ashqar's No. 16 kind

 2   of implicates my Salah 10, and I want to go over that with you

 3   just very briefly.

 4         MR. MOFFITT:  Excuse me, I don't mean to interrupt,

 5   but I am reminded that No. 5 was given in Al-Arian.

 6         THE COURT:  Mr. Deutsch, let's come back.

 7         MR. DEUTSCH:  Okay.

 8         THE COURT:  Let me finish these, and then I'll come

 9   back --

10         MR. DEUTSCH:  Okay.

11         THE COURT:  -- as I promised.

12         MR. DEUTSCH:  Okay.

13         THE COURT:  I have taken 5 under advisement.  And you

14   cite Al-Arian there.  And that's linked up with the elements

15   issue.

16         So, I'm going to take that and the First Amendment

17   under advisement and invite you to submit a theory of the

18   defense instruction.

19         No. 20, corruptly, the definition, Mr. Schar.

20         MR. SCHAR:  Judge, I think this was addressed in the

21   government's instructions correctly laid out as one of the

22   elements, which is the wrongful -- corruptly basically is laid

23   out, and under the case of Macari, I think, those instructions

24   are supported, and I don't think there should be an additional

25   definition of corruptly which actually would conflict with

1   what's in the pattern.

2          THE COURT:  All right.  I am going to sustain your

3   objection.  Again, Macari, I'm relying on that Seventh Circuit

4   opinion from earlier this year, and the pattern instructions

5   themselves say that several cases have held that the term

6   corruptly means that the defendant acted with improper motive

7   or an evil or wicked purpose.  The Seventh Circuit has not yet

8   addressed this issue.

9          MR. DEUTSCH:  Judge --

10          THE COURT:  I did a lot of research, and they still

11   haven't addressed that issue, although they have approved the

12   pattern instruction that I addressed earlier today.

13          So, I am going to --

14          MR. DEUTSCH:  Judge --

15          THE COURT:  -- sustain your objection.

16          MR. DEUTSCH:  I just wonder whether you read the

17   Andersen -- the Arthur Andersen Supreme Court cases implying

18   that there should be some kind of bad motive put in when

19   you're talking about obstruction.

20          THE COURT:  The Andersen case, which I raised on the

21   27th when you were here on the State Department case,

22   addresses really the nexus issue, and Macari found that the

23   pattern was consistent with Andersen.  So, that -- Macari

24   addressed that.

25          Coercion I've already addressed, and I'm waiting for

1   you, Mr. Spielfogel, to reread Dixon, and I'll hear your

2   arguments on Friday when we meet again on jury instructions.

3          Okay.  I will go back to your 10.

4          MR. DEUTSCH:  Yes.

5          You indicated on Ashqar 16 that it was not a correct

6   statement of the law, and I've kind of amended my 10 and see

7   if this reaches agreement with the government, which says,

8   "First Amendment freedom of speech and association.  Prior to

9   its designation by the United States government, pursuant to

10  Executive Order date and Secretary of State date, United

11  States citizens and residents had the First Amendment right as

12  an exercise of freedom of speech and association to raise,

13  donate and/or distribute money to Palestinian organizations in

14  the occupied territories, including Hamas, as long as such

15  monies were not provided with the intent to further a pattern

16  of racketeering activity."

17         I changed it because I knew that the last part was

18  going to be somewhat objectionable.

19         But isn't that an accurate statement now?  See, it

20  seems to me the jury --

21         THE COURT:  Read the last part, so long as the monies

22  were not provided --

23         MR. DEUTSCH:  With the intent to further a pattern of

24  racketeering activity.

25         THE COURT:  My concern with that is limiting it to --

1   that really limits it to RICO.  I don't know if --

2        MR. DEUTSCH:  Well --

3        THE COURT:  -- there are other --

4        MR. SCHAR:  Right and --

5        THE COURT:  -- things they could have given it for

6   that would have been illegal.  I --

7        MR. SCHAR:  There are other things they could have

8   given it for would have been legal, there are other things

9   they could have given it for that would have shown the

10  predicate without specifically having the intent to further a

11  pattern.  You need to have the intent, you need to have agreed

12  to run the enterprise through a pattern of racketeering

13  activity.  Again, this becomes a slippery slope of trying to

14  redefine over and over again what the elements essentially are

15  in this case.

16        MR. DEUTSCH:  Well, the problem that I see is that in

17  fact it is illegal now to give money to Hamas.  And it became

18  illegal at a certain point.  And a jury should know that there

19  was a point where it wasn't illegal.

20        THE COURT:  And they've heard evidence on that.

21        MR. DEUTSCH:  I guess we'll just argue it.

22        THE COURT:  My question is what do we --

23        MR. DEUTSCH:  But it seems to me that they should

24  know that -- they've heard evidence, but there's been

25  objections at certain points, and Mr. Schar has stood up and

 1   said that's not the law, and, you know --

 2         MR. SCHAR:  And I'm concerned, Judge.  I will tell

 3   you I'm very concerned about the suggestion that somehow it

 4   was appropriate to give money ahead of time if that's an

 5   argument that's going to be made to this jury.  If that giving

 6   of the money is evidence of the violation of other criminal

 7   acts, certainly that would be improper to argue that it was

 8   somehow legal to give money.

 9         Now, it certainly wasn't a violation of 2339(b) and

10   wasn't a violation of IEEPA until Hamas was designated, but

11   the reason we've objected repeatedly to this line of inquiry

12   and suggestion is the notion that you could materially

13   support, Mr. Deutsch and Mr. Bloom both suggested this,

14   materially support Hamas and that was completely fine before

15   1995.  Well, if that material support actually demonstrates

16   the pattern of racketeering activity, it wasn't okay.

17         THE COURT:  But I think Mr. Deutsch's point is prior

18   to this time, it was okay to -- it was not illegal to

19   materially support legitimate goals of Hamas, such as building

20   schools or hospitals, whereas afterwards --

21         MR. SCHAR:  That's right.

22         THE COURT:  -- you couldn't give it for anything.

23         MR. SCHAR:  And that goes exactly to the elements

24   instruction.  That's right.  If the argument they want to make

25   is all the money they were giving was for legitimate purposes

1    and that, therefore, there was no agreement to run the affairs

2    of the enterprise through a pattern of racketeering activity

3    because there was no crime intended, the government hasn't met

4    its burden and the government hasn't met the elements of that

5    crime.

6           He's trying to turn that into an instruction or to

7    try and suggest more -- what my concern is they're going to

8    try and take what happened in '95 and then turn that into,

9    see, you couldn't materially support, period --

10           THE COURT:  No, but that's --

11           MR. SCHAR:  -- up until that point.

12           MR. MOFFITT:  But we've never said that.  In each of

13   the instructions, we've always said to support the goals of

14   legitimate --

15           THE COURT:  Well, this instruction doesn't quite say

16   that, which is why I'm thinking -- and I don't like limiting

17   it to a pattern of racketeering activity.

18           Is there some way that would make it an accurate

19   statement of the law --

20           MS. THOMPSON:  How about just for any unlawful

21   purpose?

22           THE COURT:  -- to raise, donate and/or distribute

23   money to Palestinian organizations in the occupied territories

24   for legal purposes or --

25           MS. THOMPSON:  Provided it's not for an unlawful

1    purpose.

2         MR. SCHAR:  Again, why isn't this a theory of defense

3    instruction, Judge, in the sense it's the theory of the

4    defendants they were giving money for legal purposes.  I don't

5    see why there seems to be -- particularly raising the issue of

6    the designation in an instruction.

7         MR. DEUTSCH:  Because the reason is, is because in

8    the middle of this conspiracy, the law changed and it became

9    illegal to even raise money and give money.  And I think the

10   jury could be somewhat confused about that.

11        THE COURT:  And we did hear that multiple times.

12        MR. DEUTSCH:  We did, but --

13        THE COURT:  Let me work with this.

14        MR. DEUTSCH:  Okay.

15        THE COURT:  And see --

16        MR. SCHAR:  Also, the First Amendment aspect of this,

17   Judge, again --

18        THE COURT:  Yes.

19        MR. SCHAR:  -- is problematic.

20        THE COURT:  I don't know that that's correct either,

21   that it's a First Amendment issue.  I agree.

22        MR. DEUTSCH:  Well, that's what Buckley vs. Valeo

23   said, you could raise money.  It was a First Amendment,

24   different context, of course.

25        THE COURT:  But you're tying it to the Executive

1    Order and the designation.  I don't think that's -- I think --

2            MR. DEUTSCH:  Well, I guess you could say --

3            THE COURT:  -- maybe had the right --

4            MR. SCHAR:  Well, and Buckley vs. Valeo --

5            THE COURT:  -- to raise, donate.  I mean you can

6    argue it's a First Amendment issue, but I think --

7            MR. SCHAR:  It's an election law case, Judge.

8            MR. DEUTSCH:  Yeah, I know that.

9            MR. MOFFITT:  This is a political organization.

10           THE COURT:  I will work with this.

11           All right.  I have follow-up things to do.  You have

12   follow-up things to do.  I've given you -- today I'd love to

13   see the law.  I know it's 20 to 4:00, but if at all possible,

14   on the date issue of the predicate or the racketeering

15   activity being included in the RICO statute.  I've given you a

16   deadline of tomorrow to submit some revised instructions and

17   proposals.

18           We will have another jury instruction conference at

19   10:30 on Friday, and it will be my intention to resolve all of

20   the outstanding issues.  I haven't looked at the verdict form

21   yet, so I'll take that up on Friday.  And if you want to

22   submit a theory of the defense instruction, try to do that by

23   tomorrow so I have enough time to look at it before Friday.

24           I have one issue for you, and then I will hear

25   whatever you have on Dr. Basoglu.

1        The jury, as you know, every day has been meeting on

2   the second floor and then they've been brought up.  When they

3   start deliberating, what's your feeling on just having them

4   meet here, advising them to take the elevator bank at the

5   other end.  I'll tell them I have other matters going on,

6   which I will have my morning call and that.  But advising them

7   to take that -- the elevator at the north end of the

8   building --

9        MR. SPIELFOGEL:  North.

10       THE COURT:  -- thank you, and come directly to the

11  jury room.

12       What's your thought on that?

13       MR. SCHAR:  No objection, Judge.

14       MR. DEUTSCH:  That's fine.

15       MR. MOFFITT:  That's fine.

16       THE COURT:  Okay.

17       I think that will be easier for them when they begin

18  their deliberations.

19       I plan to tell them tomorrow after everybody has

20  rested what the schedule is and that they'll have closings on

21  Monday, Tuesday, likely be charged on Wednesday and begin

22  their deliberations.

23       In light of the note that I got the last time they

24  were here about do they deliberate on Fridays, I also plan on

25  telling them tomorrow that their deliberation schedule is up

1    to them and may even give them the example of we've been doing

2    half-day court on Friday.  It's up to you if you want to

3    deliberate on Fridays or deliberate a half day or deliberate a

4    full day.  That's up to you.  The only thing they'll be

5    required to do is let the court security officer know.

6              MR. SPIELFOGEL:  Is Monday a holiday also?

7              THE COURT:  No.  The 8th is not -- oh, Monday, the

8    15th, yes.

9              MR. SPIELFOGEL:  The 15th, so they wouldn't

10   deliberate Friday or Monday.

11             THE COURT:  And I will tell them that.  Yes, they

12   will not deliberate on the 15th because that is a court

13   holiday and as I indicated to you, they will not deliberate on

14   the 19th either because of the Court's schedule.

15             So, if they're still deliberating then.  My guess is

16   they will be, but --

17             MR. SCHAR:  And, Judge, obviously we have

18   surprisingly six alternates that made it through.  I'm

19   assuming your policy will be pretty good, given the Ryan case,

20   that they will be instructed not to, pursuant to the rules,

21   not to talk about this case and they actually may still be

22   needed for deliberation.

23             THE COURT:  Yes, yes, and to be available by cell

24   phone.

25             MR. SCHAR:  And, obviously, we're in the building so

1     I don't expect it to be a problem, but given the instructions

2     as we continue to go through this, it would not surprise me if

3     we had a question here or there.  I assume you will want us

4     all here.

5           THE COURT:  Absolutely.  In a criminal case, it is my

6     practice that whatever question I get, you have to come in and

7     the defendants have to come in, even if it's "can I go smoke?"

8     which I've had before.  I want that on the record with

9     everybody present.

10          So, you'll have to let me know where I can reach you,

11    and you shouldn't be too far away.

12          Okay.  Any other just general procedural questions?

13          Dr. Basoglu issue.

14          MS. HAMILTON:  Yes.  Judge, during the break,

15    Ms. Thompson and I were talking, and we have a difference of

16    opinion I just wanted to raise for clarification for the

17    morning.

18          It was my recollection and understanding that when

19    your Honor ruled that Dr. Basoglu could testify via video

20    feed, that one of the conditions was that he would have his

21    writings with him in light of the difficulties we had

22    expressed in cross-examining him and that we witnessed

23    actually in cross-examining both experts, that it was

24    necessary to confront them with things they had written or

25    testified about.

 1          And I think that that was different than what

 2   Ms. Thompson understood.  So, I just want to clarify --

 3          MS. THOMPSON:  Well, just to let you know, my

 4   understanding was that if we intended to present him with

 5   something that we were going to move into evidence, that we

 6   should provide a copy to the government, as well as make sure

 7   that the witness had it there.

 8          I mean, he has written over a hundred journal

 9   articles and books and conducted studies.  I think -- I am not

10   going to be asking him, specifically presenting him with

11   anything in order to simplify matters, that I think that all

12   of his opinions are informed by a 40-year body of work

13   essentially in the area of trauma studies.

14          Now --

15          THE COURT:  The issue is on cross-examination.

16          MS. THOMPSON:  And I advised that if there were

17   documents that they knew they wanted to ask him about, I will

18   do my best at this last minute to e-mail him, even though it's

19   getting late there, and say please have those there.

20          THE COURT:  Although he'll have all day tomorrow.

21          MS. HAMILTON:  Well, Judge, but this was actually

22   raised when we objected, and one of the concerns that was

23   brought up both with Dr. Basoglu and Dr. Sakr was that we

24   shouldn't have to provide ahead of time what we plan --

25          THE COURT:  Correct.

1          MS. HAMILTON:  -- to cross-examine them about.

2          THE COURT:  Correct.

3          MS. HAMILTON:  And also we can't anticipate.  It's

4    possible that he would say something that either contradicts

5    or further informs something I've read by him.  And so, it

6    would be -- I mean, it's sort of both issues were raised, and

7    I thought that based on that your Honor said he should be

8    instructed to have what he's written with him.

9          THE COURT:  I don't recall saying he should have all

10   of his articles.

11         MS. THOMPSON:  I thought if we were going to be

12   eliciting and saying -- specifically putting into evidence the

13   particular study, obviously we would tell him to have that

14   there.

15         THE COURT:  Right.

16         MS. THOMPSON:  Obviously, we are not doing that.

17   We're simply establishing his expertise in an area and going

18   to ask him to give his opinions.

19         Now, I think his entire body of work, quite frankly,

20   whether it's on anxiety, PTSD, war trauma, earthquake trauma,

21   all of that informs his opinions; but we're not specifically

22   going to be putting in evidence any of those studies.

23         THE COURT:  Is there some way, Ms. Hamilton, you can

24   narrow it without pinpointing specifically what you might want

25   to cross him with?  I know you may not know everything, and

 1   I'll certainly give you more leeway on cross into reading his

 2   articles that he has issued.

 3        MS. THOMPSON:  I don't think there's a problem if

 4   they want to ask him, you wrote in some particular article she

 5   has in mind, which I have no idea what it is, you wrote the

 6   following and then ask a question about it.  We certainly

 7   don't have an objection to that.  I think they'd be able to do

 8   that anyway with an expert.

 9        THE COURT:  And publish it to the jury.

10        MS. HAMILTON:  I guess there are two things.

11        THE COURT:  I don't remember instructing that.

12        MR. DEUTSCH:  You didn't.

13        THE COURT:  I'm sorry?

14        MR. DEUTSCH:  I said you didn't, Judge.  You never

15   made that instruction.

16        MS. HAMILTON:  I guess that it was my recollection.

17   I could clearly be wrong.

18        MS. THOMPSON:  I mean it doesn't apply with any

19   expert that they would bring their entire body of works --

20        THE COURT:  But this is different because they're on

21   video because if they're personally in here, the government

22   has it, they could show it to them.

23        MS. HAMILTON:  I think they -- I guess two things.

24   One, certainly I was actually only focusing on what he had

25   written with respect to torture and any effects of torture

 1   because I thought that's what he was being presented on, so

 2   I'm confused as to getting into anxiety disorders and PTSD.  I

 3   mean he's written on a category of other things that don't

 4   have anything to do with this case, so --

 5         THE COURT:  No, and that's what my ruling was limited

 6   to.  I think what Ms. Thompson --

 7         MS. THOMPSON:  He is certainly going to --

 8         THE COURT:  -- said, all these other areas --

 9         MS. THOMPSON:  He's not testifying about all those

10   areas; but to the extent that the opinions he intends to

11   render are informed by his research in another area of trauma,

12   I would simply tend to elicit that in terms of his expertise.

13         THE COURT:  Okay.

14         MS. THOMPSON:  I mean if you studied trauma

15   associated with war or earthquakes, it's not irrelevant to

16   your study of torture in terms of giving an opinion about

17   having studied those individuals.  That's all it is.

18         THE COURT:  But you're not going to seek to elicit

19   any opinions on those other areas.

20         MS. THOMPSON:  No, no.

21         THE COURT:  Okay.

22         MS. HAMILTON:  So I guess -- I mean, what I was

23   focusing on are only the writings in his CV that deal with

24   torture.

25         THE COURT:  And I think that's appropriate because

1    Ms. Thompson, while going through his qualifications --

2          MS. THOMPSON:  Yes.

3          THE COURT:  -- she may go through some of his other

4    areas, but she is not going to and I won't let her elicit any

5    opinions in these other areas outside of the torture.

6          MS. HAMILTON:  Okay.

7          THE COURT:  To the extent if you can identify -- I

8    don't know how many articles he's written on torture.  Maybe

9    it's just a handful and you can e-mail him that handful and he

10   can have those ready.  If I recall, he had a very recent

11   study.

12         MS. THOMPSON:  I can ask him by e-mail, which I will

13   send immediately, that, if possible, to have with him articles

14   that he has written.

15         MS. HAMILTON:  And he wrote a book, too.  He wrote a

16   book.

17         THE COURT:  And a book, publications on torture.

18         MS. THOMPSON:  Okay.

19         THE COURT:  Yes, see if he can have all of that with

20   him.

21         MS. THOMPSON:  I'll try to do that.  It's quite late,

22   but I will.

23         THE COURT:  Right.  But you'll have -- because when

24   he testifies, it will be 5:00 o'clock or 5:15 his time.  So

25   he'll have a chunk of tomorrow do that.

1          MS. THOMPSON:  Yes, that's true.

2          THE COURT:  But e-mail him and see if he can.

3          And then 9:15 tomorrow.

4          MS. HAMILTON:  The other issue is with respect to the

5    country reports that Mr. Deutsch raised during Dr. Ginbar's

6    testimony, there were two paragraphs -- I've got marked-up

7    ones that I have flagged, and I'm obviously happy to pass them

8    forward.

9          THE COURT:  I don't have those.  I gave mine back to

10   Mr. Deutsch.  And I will also address the stipulation in the

11   morning, Mr. Deutsch.  I don't have it with me, and I couldn't

12   find it before I came out.

13         Go ahead.

14         MS. HAMILTON:  We can obviously address this in the

15   morning if you prefer, but --

16         THE COURT:  Make your argument, and then you can give

17   me the reports and I will --

18         MS. HAMILTON:  It seemed that in light of the Court's

19   rulings on the documents that were at issue with respect to

20   the consulate, that what is coming into evidence are

21   observations of an employee of the consulate or actions taken

22   by the consulate.

23         And these reports are concerning on two grounds.

24   One, unlike the consulate reports where Ms. Thompson went

25   through and laid the foundation for how the reports are

1   created, purpose of the reports, all of those things, we don't

2   have the same thing with respect to these two reports.  And

3   even within the substance of the reports themselves, it's not

4   clear where the information is coming from.

5        And with respect to the two paragraphs at issue, I

6   mean, this is -- it's just my assumption, based on reading the

7   two photographs because there's no way to know, but it doesn't

8   appear that either of these two paragraphs are observations of

9   employees of the State Department that they do appear to be

10  complete hearsay.

11        And I know your Honor already, I think, struck

12  certain sentences that are very clearly attributed to human

13  rights groups or attributed to detainees.  But there were some

14  statements that were a little bit more general that I think

15  were coming in.

16        And, so, just in light of your Honor's rulings on the

17  other -- the other exceptions, it was unclear to the

18  government what exception these would fall under.

19        THE COURT:  Can you leave those with me?

20        MS. HAMILTON:  Yes.

21        THE COURT:  I don't have a copy.

22        MR. DEUTSCH:  Judge, I can actually give you the ones

23  as redacted so you can --

24        THE COURT:  Perfect.

25        MR. DEUTSCH:  -- if that would be helpful to you.

1         THE COURT:  Hand that to me, and I'll take it up

2    tomorrow morning.

3         MR. DEUTSCH:  But I see this as the government

4    rearguing something that the Court already decided or looked

5    through and made that decision.  So --

6         THE COURT:  I don't disagree with that, but let me --

7    I will take these.

8         MR. DEUTSCH:  Those are two paragraphs, one from '93

9    and one from '94.

10        THE COURT:  Yes.  I remember them and they were very

11   similar, but I'll take this up tomorrow morning.

12        MS. HAMILTON:  Thank you, your Honor.

13        THE COURT:  Anything else?

14        Okay.  9:15 tomorrow morning.  I will see you then.

15     (Court adjourned, to reconvene at 9:15 a.m. on 1-4-07.)

16                         CERTIFICATE

17    I certify that the foregoing is a correct transcript from

18   the record of proceedings in the above-entitled matter.

19

*/s/Joseph Rickhoff*                    *September 3, 2008*

20   _____        _____

     Joseph Rickhoff                 Date
21   Official Court Reporter

22

23

24

25