1          IN THE UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF ILLINOIS
2                    EASTERN DIVISION

3

   UNITED STATES OF AMERICA,         ) Docket No. 03 CR 978
4                                     )
                       Plaintiff,     )
5                                     )
              vs.                     )
6                                     )
   MUHAMMAD HAMID KHALIL SALAH AND    )
7  ABDELHALEEM HASAN ABDELRAZIQ ASHQAR, ) Chicago, Illinois
                                      ) January 5, 2007
8                     Defendants.     ) 10:30 o'clock a.m.

9

                 EXCERPT OF TRIAL PROCEEDINGS
10      BEFORE THE HONORABLE AMY J. ST. EVE, AND A JURY

11

   APPEARANCES:
12

13  For the Plaintiff:        HON. PATRICK J. FITZGERALD
                              United States Attorney
14                            BY:  MR. REID J. SCHAR
                                  MS. CARRIE E. HAMILTON
15                            219 S. Dearborn St., Suite 500
                              Chicago, Illinois  60604
16

17  For Deft. Salah:          PEOPLE'S LAW OFFICES
                              BY:  MR. MICHAEL EDWARD DEUTSCH
18                                MS. ERICA THOMPSON
                              1180 North Milwaukee Avenue
19                            Chicago, Illinois  60622

20

   For Deft. Ashqar:          MR. KEITH ALLAN SPIELFOGEL
21                            20 North Clark Street, Suite 1200
                              Chicago, Illinois  60602
22

23                            MR. WILLIAM MOFFITT
                              11582 Greenwich Point Road
24                            Reston, Virginia  20194

25

 1  APPEARANCES (Cont'd):

 2

    Also Present:                    S/A BRADLEY BENAVIDES, FBI
 3                                    S/A JILL PETTORELLI, FBI

 4

    Court Reporter:                  MR. JOSEPH RICKHOFF
 5                                    Official Court Reporter
                                     219 S. Dearborn St., Suite 1232
 6                                    Chicago, Illinois  60604
                                     (312) 435-5562

 7

 8           * * * * * * * * * * * * * * * * * *

 9                    PROCEEDINGS RECORDED BY
                      MECHANICAL STENOGRAPHY
10            TRANSCRIPT PRODUCED BY COMPUTER

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE CLERK:  93 CR 978, USA vs. Muhammad Salah and

2    Abdelhaleem Ashqar.

3          MR. SCHAR:  Good morning, Judge.  Reid Schar and

4    Carrie Hamilton on behalf of the United States.

5          THE COURT:  Good morning.

6          MR. DEUTSCH:  Michael Deutsch and Erica Thompson on

7    behalf of Muhammad Salah.

8          MR. MOFFITT:  William Moffitt and Keith Spielfogel on

9    behalf of Dr. Ashqar.

10          THE COURT:  Good morning.

11          Dr. Ashqar is present.

12          THE DEFENDANT ASHQAR:  Good morning.

13          THE COURT:  Is Mr. Salah coming?

14          MR. DEUTSCH:  No, he's not, Judge.

15          THE COURT:  I will waive his appearance for today.

16          I am giving you some instructions that I have

17    revised.

18          MR. MOFFITT:  And we will be giving you -- we're

19    having them printed right now, your Honor, a series of cases.

20          MR. SCHAR:  Judge, I -- we went ahead and tried to

21    clean up the indictment.

22          THE COURT:  Okay.

23          MR. SCHAR:  Taking out Marzook, changing things

24    around, renumbering things.  I've handed them to the

25    defendants.  I'm going to give you a copy.

1              (Document tendered to the Court.)

2          THE COURT:  I am going to go through with you the

3    instructions I took under advisement from the other day and

4    some instructions that I have drafted.  Then I will hear what

5    you have to say on certain issues.

6          Starting with government instructions, Government

7    Instruction 16, Mr. Deutsch, you had proposed that I include

8    within that instruction the language from the admission about

9    the birds.

10          I told you at our last conference I didn't think it

11    was appropriate to include it in there, but I would give a

12    separate instruction on it, which I undertook to draft based

13    on what you gave me.  I gave you one yesterday.  I've given

14    you another revised one to make the language consistent with

15    Government Instruction 16.

16          All I did with the one I gave you today was change

17    "You may give this information obtained by the birds such

18    weight as you feel it deserves. "

19          MR. DEUTSCH:  Judge, the only thing that I would

20    request adding to this instruction was --

21          THE COURT:  Now, just so -- are you working off of

22    Revised Salah Paragraph 3 of 12-27-06 Letter?

23          MR. DEUTSCH:  Yes.

24          THE COURT:  At the top.

25          MR. DEUTSCH:  Yes.

1          THE COURT:  Okay.

2          MR. DEUTSCH:  I mean, I'm working off the other one,

3    but the suggestion I have applies to both.

4          It says, "You have received" -- first sentence says,

5    "You have received an admission by the government concerning

6    the use of Israeli interrogators with defendant Salah

7    Palestinians working called birds."  I would add to the next

8    sentence, "according to the admission" and then I would put in

9    quotes the actual admission.

10         THE COURT:  Sure.

11         MR. DEUTSCH:  Okay.

12         Because we, of course, have a position that admission

13   doesn't go far enough.  So, with that addition, that would be

14   fine with us.

15         THE COURT:  Okay.

16         "According to the admission."

17         MR. DEUTSCH:  And then quote --

18         THE COURT:  Quote.

19         MR. DEUTSCH:  Put in quotes, "The following."

20         THE COURT:  Yes.  That makes sense.

21         Mr. Schar, on behalf of the government, do you want

22   to --

23         MR. SCHAR:  Judge, as a general matter, we would

24   object to this.  I just want to give your Honor an analogy;

25   and, that is, obviously, there are lots of cases in which

1  information is obtained from either confidential informants or

2  other individuals with backgrounds that are of questionable

3  character, and that information is put into evidence in gang

4  cases and all types of cases.  And in those cases where there

5  isn't the actual testimony of the individual, which is what

6  the caution and great care instruction, I think, typically

7  goes to, there isn't an additional instruction saying, well,

8  you've received certain pieces of evidence that were obtained

9  in a particular manner, you should consider that evidence, an

10  actual instruction regarding the evidence, with caution and

11  great care.  Obviously, the fact of how the evidence was

12  obtained and received come in and the jury can determine how

13  it wants to view that.

14        So, in the sense of instructing the jury specifically

15  that the information was obtained from the birds who were

16  prisoners in jail for non-violent crimes and who received

17  particular things, which was the information that was in the

18  admission, I understand the instruction in that regard.  It's

19  the concern the government has that you are now instructing

20  the jury as to particular evidence that they should consider

21  with caution and great care, which I think takes it beyond

22  where those instructions normally go and would be applicable,

23  I think, in a number of cases where the evidence comes in.

24        THE COURT:  The problem with your analogy, Mr. Schar,

25  is as you said it, evidence comes in about how that other

1    evidence was obtained, and under CIPA that wasn't -- they

2    didn't get that benefit here.  So, I'm overruling your

3    objection.  I will give what I have deemed Revised Salah

4    Paragraph 3 of 12-27-06 letter, which will read as follows:

5    "You have received an admission by the government concerning

6    the use by the Israeli interrogators with defendant Salah of

7    Palestinians working with the ISA/GSS called birds.  According

8    to the admission, 'the participants in the birds exercise with

9    defendant Salah were prisoners in jail for non-violent crimes

10   who received reduced sentences, better prison conditions,

11   and/or money based on their participation in the birds

12   exercise.'  You may give this information obtained by the

13   birds such weight as you feel it deserves, keeping in mind

14   that it must be considered with caution and great care."

15            MR. SCHAR:  And I would put that after the Shorbagi

16   instruction.

17            THE COURT:  That -- I haven't figured out where I'm

18   going to order all these yet, but that is likely where I will

19   put it.

20            MR. SCHAR:  Okay.

21            THE COURT:  Okay.  Government 28 I took under

22   advisement.  I am overruling defendants' objections.  I will

23   give Government 28, which is a pattern, and accurately sets

24   forth the elements required to find RICO conspiracy.

25            The issue of First Amendment issues you've raised and

1   other issues, I think, are better in either separate

2   instructions or a separate theory of the defense instruction.

3            So, your objections to Government 28 are overruled.

4            Government 36, which I took under advisement -- okay.

5   I took 36 under -- well, I didn't take it under advisement.  I

6   asked you to submit a revised 36, which the government did.

7            I have taken that revised and tinkered with it.  I

8   know, Mr. Deutsch and Mr. Moffitt, you have agreed this is

9   beneficial to the defendants.  I'm looking to you to see, and

10  certainly, Mr. Schar, I will hear back from you, based on my

11  proposed language what your thoughts are.

12           MR. SCHAR:  Judge, can I just have one moment to --

13           THE COURT:  Sure.  You can have two moments if you

14  need.  I know this takes a little while to digest.

15           (Brief pause.)

16           THE COURT:  Thoughts, comments, suggestions,

17  preferences for one of the two versions?

18           MR. DEUTSCH:  Judge --

19           THE COURT:  Do you need more time?

20           MR. DEUTSCH:  I probably need more time.  But in the

21  last sentence, it seems to me --

22           THE COURT:  Which one, Mr. Deutsch, are you working

23  off of, mine or the government's?

24           MR. DEUTSCH:  Yours.

25           THE COURT:  Okay.

 1        MR. DEUTSCH:  "In other words, it is sufficient for

 2   purposes of Count One that you find that a defendant agreed

 3   that at least two of the same type of racketeering acts

 4   occurred."

 5        THE COURT:  Yes.  I like that change.

 6        MR. MOFFITT:  Your Honor, I'd ask that with respect

 7   to the first sentence, "As to each defendant, you must be

 8   unanimous that the government has proven beyond a reasonable

 9   doubt the defendant agreed that some member of the

10   racketeering conspiracy" --

11        THE COURT:  Or how about "the charged conspiracy" to

12   be consistent with language we've used throughout.

13        MR. MOFFITT:  Or -- I obviously would like the word

14   "racketeering" there.

15        THE COURT:  Okay.  "Of the charged RICO conspiracy,"

16   that's fine.

17        MR. MOFFITT:  I would rather racketeering.

18        THE COURT:  All right.

19        MS. THOMPSON:  I think that is what has been used is

20   racketeering conspiracy.

21        THE COURT:  Let me just go back to 28 and see.

22        Okay.  That's fine.

23        Charged -- okay, racketeering conspiracy.  All right.

24   I've put that in.

25        MR. MOFFITT:  In the next sentence, you must be

1   unanimous as to the type of racketeering activity that each of

2   the defendants must apply to both defendants it seems to me.

3          MR. SCHAR:  Yes, Judge, probably should be in the

4   second sentence as to each --

5          THE COURT:  I think that's better, yes, okay.  "As to

6   each" --

7          MR. MOFFITT:  Those are the only two suggestions that

8   I have, Judge.

9          THE COURT:  Okay.

10          And I take it then that --

11          MR. MOFFITT:  I don't object to Mr. Deutsch's

12   suggestion.

13          THE COURT:  Okay.

14          And do you agree -- do you like this version better

15   than --

16          MR. MOFFITT:  Yes, ma'am.

17          THE COURT:  Okay.

18          Anything else on Revised Government 36?

19          Let me know when you want me to move on.

20          MR. SCHAR:  Judge, my only concern is the confusion

21   that could occur, given what's also in Government Instruction

22   35, which is the pattern.

23          Obviously, Government Instruction 35 -- well, the

24   pattern on pattern intermixes the concept of acts of

25   racketeering to include both type and actual specific acts.

 1          THE COURT:  Okay.

 2          MR. SCHAR:  So, at the top what you have is -- which

 3   is obviously the accurate statement of law, "In order to find

 4   a pattern of conspiracy to Count One, you might find beyond a

 5   reasonable doubt the defendant agreed that some member of the

 6   conspiracy would commit at least two acts of racketeering,"

 7   referring to the type, obviously, not the specific acts

 8   because when you get down to the last paragraph, "The United

 9   States does not have to prove the defendant agreed that two or

10   more specific acts would actually be committed."

11          And my only concern with the revised 36 is whether

12   there will be any confusion that somehow the jury needs to

13   think that they do need to find a defendant agreed to a

14   particular specific act itself as opposed to a type of

15   racketeering activity.

16          THE COURT:  Okay.

17          What do you propose?  I tried to make that clear, and

18   under Salinas, the Supreme Court opinion in Salinas and

19   consistent with the pattern.  What do you propose?  Work off

20   of the revised.

21          MR. SCHAR:  Well, I'm working off the revised, but

22   the two acts of racketeering activity need not be different

23   types of racketeering activity.  I'm wondering whether --

24          THE COURT:  But the two -- I see.  Two -- but the two

25   racketeering activities need not be different types?

1        MR. SCHAR:  It's hard to come up with good language.

2        THE COURT:  I know.

3        How about "but they need not be different types."

4        MR. SCHAR:  That probably solves it.

5        THE COURT:  All right.

6        MR. SCHAR:  Yes.

7        THE COURT:  All right.

8        MR. DEUTSCH:  Can you read that again?

9        THE COURT:  Sure.

10       I'll start the with second sentence.  "You must be

11  unanimous as to the type of racketeering activity that the

12  defendant agreed that some member of the conspiracy would

13  commit, but they need not be different types of racketeering

14  activity."

15       MS. THOMPSON:  I thought we added at the beginning,

16  "As to each defendant, you must be unanimous" --

17       THE COURT:  We did.  I'm sorry.  I've got that on the

18  screen and not on my written.

19       MS. THOMPSON:  All right.

20       THE COURT:  Let me do that again.

21       "As to each defendant" --

22       MS. THOMPSON:  Then it's the same.

23       THE COURT:  -- "you must be unanimous as to the type

24  of racketeering activity that some member of the conspiracy

25  would commit" --

1          MS. THOMPSON:  I actually think that it needs to

2   maintain the language that "the defendant agreed that some

3   member of the conspiracy would commit;" in other words, add

4   the beginning, "As to each defendant," but then leave it the

5   same.  Otherwise, I think it makes it unclear that there has

6   to be an agreement.

7          THE COURT:  I agree.

8          "As to each defendant, you must be unanimous as to

9   the type of racketeering activity" --

10          MS. THOMPSON:  -- "that the defendant" --

11          THE COURT:  -- "that the defendant agreed that some

12   member of the conspiracy would commit, but they need not be

13   different types of racketeering activity."

14          I think that does it.

15          And then the agreed language is picked up in the last

16   sentence again.

17          Okay.

18          So, the government -- I am going to give Revised 36

19   instead of Government 36.

20          Government 58.

21          MR. DEUTSCH:  58, did you say?

22          THE COURT:  58.

23          I am overruling your objection, Mr. Moffitt, because

24   hostage taking was a specified unlawful activity during the

25   entirety of the relevant time period.  Hostage taking was

1   included as specified unlawful activity in the initial 1986

2   act that created 1956.  Your objection was just legally not

3   correct.

4           In addition, "An offense against a foreign national

5   involving kidnapping became a specified unlawful activity on

6   October 28th, 1992."  It was not in '96.

7           So, your objection to Government 58 is overruled.

8           Government 63, I am still working on a withdrawal

9   instruction.  I don't have -- I don't have one for you yet.  I

10  don't have a final version.

11          So, I think you -- I know Mr. Deutsch submitted one.

12  I can't recall -- I think you submitted one, as well.  I

13  just -- I've read many withdrawal cases, but I don't have a

14  ruling for you yet.

15          So, I am going to keep withdrawal under advisement

16  and will give you -- if I have one ready for you today, I will

17  have it faxed over to you.  Otherwise, I'll give it to you

18  Monday morning.

19          There will be a withdrawal instruction.  I'm just not

20  sure what it's going to --

21          MR. MOFFITT:  I think a fairer statement is we did

22  not object to this instruction.

23          THE COURT:  You did not?  Okay.

24          MR. MOFFITT:  This was in the government's packet,

25  and we did not object to this.

1          THE COURT:  Then Mr. Deutsch objected.

2          MR. DEUTSCH:  Yes, I did.

3          THE COURT:  Okay.

4          I'll get one for you.

5          MR. DEUTSCH:  Just so we're clear, as the Court

6     recalls, we said that we're entitled to put in the specific

7     evidence that we rely on.

8          THE COURT:  Yes, yes.  I have your proposals.

9          MR. DEUTSCH:  Yeah, okay.

10         THE COURT:  I just don't have a final ruling.

11         MS. THOMPSON:  Last time we were here, Mr. Schar had

12    articulated something about the government's position on the

13    withdrawal.  And I just wanted to get some clarity on the view

14    of the law, which was that he seemed to articulate the

15    position -- and correct me if I'm wrong -- that one could

16    withdraw effectively from Count One but aid and abet it after

17    withdrawal.  So, in other words, withdraw and then be right

18    back into Count One.  And I don't think that's an accurate

19    view of the law, and maybe I misunderstood the government's

20    position.

21         MR. SCHAR:  Well, I think that's -- I think that --

22    that was the government's position.  You understood it.  I

23    think that's theoretically correct.  You can be part of a

24    conspiracy, withdraw from it, and then later take actions that

25    aid and abet obviously what you knew was a clear conspiracy

1  because you were part of it at one point.  I mean

2  theoretically that's possible.

3          THE COURT:  I think that's theoretically, but that's

4  not what you're arguing.

5          MR. SCHAR:  That's not what we're arguing, but I

6  think this came up in the context of the instruction related

7  to how do you talk about evidence that would come in if a jury

8  found withdrawal occurred and then there was evidence after

9  that, somehow suggesting that it wouldn't be relevant to a

10  Count One.  I think that's how the issue came up, but --

11          THE COURT:  Okay.  Well, I will consider what you

12  have given to me and give you a final ruling.

13          There will be a withdrawal instruction.  That's the

14  most I can say at the moment.

15          All right.  65.  I don't have a final ruling for you

16  on 65.  I've read the government cases that were cited to me.

17  I've read the defendant's brief.  I've read every possible

18  case I could get my hands on.  And there is nothing directly

19  on point in terms of precedent.

20          The Snowden case, which was relied upon by the

21  defendants, and talks about predicates that are added after

22  the commission of the conspiracy, isn't on point because that

23  deals with a substantive 1962(c) RICO case where the

24  predicates have to actually be committed, not just agreed to.

25          So, I'm working on this.  You'll get a revised

1   version.  This one you probably will not get by the end of the

2   day.

3           I have your e-mails.  I may e-mail it to you over the

4   weekend.  Otherwise, I'll give you one on Monday morning.  I'm

5   still working on it.

6           But there was one point raised in Dr. Ashqar's brief.

7   Section 1543, that was not included within Instruction 65.

8   You referenced 1203 and 1956(a)(1), but not 1543.

9           MR. SCHAR:  Yes, Judge, because that's resolved via

10  the withdrawal instruction.  Once the withdrawal instruction

11  is given, if the defendants are convicted, I think it was Opa

12  (phonetic) and Caporale, one of those two cases dealt with a

13  similar situation as here, where they found that because of

14  the withdrawal instruction, the jury necessarily found the

15  charged conspiracy continued into a period after that

16  predicate was added.

17          And, likewise, in this case, the withdrawal

18  instruction deals with everything that would have occurred

19  prior to August of 1999.  It does not, however, deal with 1203

20  and 956, which were added in October, 2001.

21          So, we need a special instruction, which this is,

22  that instructs they need to find the individual defendants

23  continued into the charged conspiracy after October of 2001.

24          THE COURT:  So, the 1543 that was effective in April

25  of '96, you're saying if they find withdrawal --

1              MR. SCHAR:  If they find no withdrawal.

2              THE COURT:  If they find no withdrawal, that that

3    satisfies that?

4              Explain that to me again, Mr. Schar.

5              MR. SCHAR:  If they find no withdrawal, Judge, they

6    have, by definition, found these defendants continued with the

7    conspiracy until a point after August of 1999.  That doesn't

8    necessarily mean they found that they continued until October,

9    2001.

10             THE COURT:  Okay.

11             MR. SCHAR:  But it would mean that they were in the

12   conspiracy at least as of August, 1999.

13             In order to use hostage taking in 956, the jury needs

14   to make a finding that the individual defendants continued in

15   the charged conspiracy after October, 2001, and that does need

16   a special instruction.

17             THE COURT:  Okay.  I see your point.

18             Which goes along with your argument that as long as

19   they remained in the conspiracy post the date of one of these

20   statutes becoming law, that it can come in.

21             MR. SCHAR:  Correct.

22             THE COURT:  Okay.  I'll give you a ruling on it.

23             Yes?

24             MR. MOFFITT:  Maybe I'm a little thick, but it seems

25   to me that they cannot rely then on the 1546 as a predicate

1    act.

2              THE COURT:  1543?

3              MR. MOFFITT:  1543 --

4              THE COURT:  Okay.

5              MR. MOFFITT:  -- as a predicate act unless they find

6    that they remained in the conspiracy after 2001.

7              THE COURT:  Well, it's not 2001 because 1540 -- I

8    agree with you on the 956 and 1203, but 1543 was not part of

9    racketeering acts in '01.  It became part in '96.

10             MR. MOFFITT:  Okay.

11             THE COURT:  So, the '01 date wouldn't apply.

12             MR. MOFFITT:  Right, okay.

13             THE COURT:  Under their theory, the '01 date wouldn't

14   apply to 1503.

15             MR. MOFFITT:  Okay.

16             MS. THOMPSON:  See, I wonder, Judge, whether or not

17   it might make this instruction, which is kind of complicated,

18   a little bit more understandable for the jury if up in the top

19   paragraph we tell them that they didn't become law or sort of

20   reflect that concept for them so that they understand that,

21   oh, I can only not consider it because it wasn't the law at

22   that time.  Like maybe even just in the first sentence.

23             MR. MOFFITT:  Which instruction are we on?

24             MS. THOMPSON:  Or the second sentence, "In order to

25   consider violations of 1203 and 9 --

1          THE COURT:  Which instruction is that what you said?

2          MR. MOFFITT:  65.

3          MS. THOMPSON:  65.

4          In order to consider the violations as types of

5   racketeering, you know, to somehow reflecting that they didn't

6   become law.

7          MR. SCHAR:  Well, we actually tried -- believe it or

8   not, I understand --

9          MS. THOMPSON:  I understand that's why the date and

10  why the whole instruction.

11         THE COURT:  Right, but let them know.

12         MR. SCHAR:  I understand Ms. Thompson's point.  We

13  actually did something similar to that with the money

14  laundering and the change of SUAs over time.  We tried to come

15  up with something that would demonstrate that.

16         The difficulty is with money laundering, it was easy.

17  Once it became an SUA, that was it.  You could explain the

18  SUAs changed over time.  Here with RICO, it's a little bit

19  different because even though it wasn't a RICO predicate, it

20  was a crime.

21         THE COURT:  Right.

22         MR. SCHAR:  And it's hard to instruct the jury in a

23  way that says, well, it became a RICO predicate on a

24  particular date, but you can actually consider it as a crime

25  prior to that date, which you can.

1          So, we just -- after playing around with it for a

2    while, it was just difficult to come up with a way that wasn't

3    actually more confusing without having to also explain but you

4    can still go back and consider the criminal act prior to it

5    being included as a predicate, et cetera, et cetera.

6          THE COURT:  All right.  Let me -- when I am tinkering

7    with this, I will factor in your point, Ms. Thompson.

8          MS. THOMPSON:  Thank you, Judge.

9          THE COURT:  Government 72, I am overruling your

10   objection based on the Seventh Circuit's opinion in United

11   States vs. Cueto, 151 F.3d at 630 and 631.

12          Cueto has part -- this exact instruction as an

13   instruction that was given in that case and approved by the

14   Seventh Circuit.  So, it has been -- this explicit language

15   has been approved by the Seventh Circuit.  I will give

16   Government 72.

17          Government 77, I am sustaining defendants' objection

18   to the first sentence.  "It is not a defense to contempt that

19   a defendant feared the use of his statements by a foreign

20   country or in a prosecution in a foreign country."

21          I have gone back and read Balsys, B-A-L-S-Y-S, the

22   Supreme Court opinion that you are relying on for that.  And I

23   don't read Balsys like that.  I think you are carrying it too

24   far.  Balsys says that the Fifth Amendment privilege can apply

25   equally to asserting it to be protected from prosecution in a

 1  foreign jurisdiction, as well as in the United States.  But I

 2  don't read it to go as far as the contempt situation that you

 3  are trying to put it into here.

 4          So, that objection is sustained.

 5          MR. SCHAR:  Judge, also, I'm sorry, take --

 6          THE COURT:  And Brummitt didn't stand for that,

 7  either.

 8          MR. SCHAR:  The -- I think the Seventh Circuit in

 9  Dr. Ashqar's appeal, actually, cited Balsys, and I'm just

10  wondering if, before you make an absolute final ruling, we

11  didn't cite that.

12          THE COURT:  You didn't cite that.

13          MR. SCHAR:  We didn't cite that.  If you go back and

14  see if that changes your opinion in any way.

15          THE COURT:  I will look at it.  Do you have the exact

16  cite for that?

17          MR. SCHAR:  Unfortunately, I do not have it with me,

18  although --

19          THE COURT:  Okay.

20          MR. SCHAR:  -- I can get that to you, Judge.

21          THE COURT:  All right.  Call me with that.

22          Balsys doesn't support -- I didn't read it that far,

23  but I will -- I'm bound by the Seventh Circuit, so give me the

24  Seventh Circuit cite, and I will look at it with that.

25          Now, Mr. Spielfogel, I asked you at our last

1    instruction conference about the burden issue and how you

2    squared your position with Dixon on vs. United States, which

3    was decided six months ago.

4          MR. SPIELFOGEL:  Yeah.  Your Honor, I read over Dixon

5    again and the issue of burden of proof on the contempt charge.

6    I see, obviously, what your point is.

7          In Dixon, though, they talk about that as the -- in

8    one of the footnotes that as the government recognized in oral

9    argument, there may be crimes where the nature of the mens rea

10   would require the government to disprove the existence of

11   duress beyond a reasonable doubt, and they cite certain cites

12   here and they say, explaining that some common law crimes

13   require the crime be done maliciously.

14         It seems to me that coercion would be a defense to

15   the 1503 charge and that under 1503, we actually have kind of

16   a malicious state of mind that's required under 1503 when you

17   look at the committee comments to 1503, where they cite the

18   fact that several cases have held that the term "corruptly"

19   means that the defendant acted with an improper motive or with

20   an evil or wicked purpose.

21         So, coercion, the burden -- my position would be that

22   the burden of proof in a -- as far as coercion goes as to the

23   1503 would be that the burden remains on the government.

24         THE COURT:  Mr. Schar.

25         MR. SPIELFOGEL:  Under that exception that you see in

 1   '04 in Dixon.

 2        MR. SCHAR:  There was not actually -- I know the

 3   footnote Mr. Spielfogel speaks of, and there wasn't a specific

 4   objection set out.  They said in the future they may be for a

 5   malicious crime.  I don't think that the elements of

 6   obstruction of justice meet the definition in that particular

 7   footnote.  So, I would disagree with that assessment and that

 8   reading of Dixon.

 9        MR. SPIELFOGEL:  Well, I think there is case law,

10   Judge, that supports it.  Actually, those cases are cited in

11   committee comments that support the fact that you need that

12   evil, improper motive.

13        MR. SCHAR:  But that's --

14        MR. SPIELFOGEL:  So --

15        MR. SCHAR:  That's --

16        THE COURT:  But the Seventh Circuit hasn't adopted

17   that, and I'm not instructing on that.

18        I will look --

19        MR. SPIELFOGEL:  Your Honor, the other argument that

20   I would make on that is that we have a pattern jury

21   instruction that, you know, it seems to me since it exists,

22   that's the one that should be given.

23        THE COURT:  Well, that's easy because if it exists

24   and the Supreme Court has overruled it, then it should not be

25   given.

 1          I will look at the footnote in Dixon again and give

 2    you a final ruling on that.  I didn't bring Dixon out with me.

 3          MR. SPIELFOGEL:  Your Honor, just as one final, I

 4    don't think there's anything in 6.08 that is actually -- I

 5    mean, when you just read what it says here, what the coercion

 6    instruction is, I don't think there's anything in that that's

 7    overruled by Dixon.  I mean, it just states what coercion is

 8    without going into burden of proof.

 9          THE COURT:  I agree in the instruction itself.  The

10    committee comments are just wrong as a matter of the law to

11    the extent they're talking about the burden being on the

12    government.  And I thought that's what you were referencing

13    the committee comments --

14          MR. SPIELFOGEL:  No, I'm referencing the fact that we

15    do have a coercion instruction that has been set forth, and

16    although the burden may have changed, it's not like in the

17    instruction they're setting forth what the burden is.

18          THE COURT:  What about that, Mr. Schar?  Just going

19    with the committee instruction without the burden in it.

20          MR. SCHAR:  My only concern with that, Judge, is the

21    burden is over and over and over again on the government, and

22    under Dixon, the burden in this particular case is on the

23    defendant.  So, I think it would be appropriate to

24    differentiate the two.

25          MR. SPIELFOGEL:  Well, I would think that if the

1    committee thought that that was a problem, they would have put

2    in the recommended instruction that, in this particular one,

3    we've got to say who the burden is on, and they didn't do

4    that.

5            THE COURT:  Okay.  I'll give you -- I'll go back and

6    look at the footnote and give you the final version.

7            MR. SCHAR:  Judge --

8            THE COURT:  Government --

9            MR. SCHAR:  I just want to -- because we went

10   through, I just wanted to note it, Government Instruction No.

11   62 I put one additional change in for clarification.  It's

12   just the -- in this new section.  I didn't note it, so I'm not

13   sure everyone caught it.

14           But this is 1952, travel in aid of racketeering, and

15   it uses the term unlawful activity to mean money laundering.

16   To avoid confusion with unlawful activity in the actual money

17   laundering statute, I just added "for purposes of Section

18   1952" for clarification.  It's not substantive.

19           THE COURT:  Yes, I think that's fine.

20           Is there any objection to that?

21           MR. MOFFITT:  No.

22           THE COURT:  Okay.

23           Government 84, this is the multiple conspiracy

24   instruction.  This was provided -- we didn't talk about this

25   last time, and I asked you to look at it.  I have -- I read

1   Mansoori, and this is -- the one the government submitted is

2   directly from Mansoori.  That particular instruction was

3   approved.

4           I've made some changes and I hand wrote them in, so,

5   you have my chicken scratch on Government 84, that I thought

6   made it more accurate.

7           MR. SCHAR:  We have no objection.

8           THE COURT:  Pardon?

9           MR. SCHAR:  We have no objection to this.

10          THE COURT:  Okay.

11          The obvious ones the government has to prove, not

12  just if you find beyond a reasonable doubt.  I thought it made

13  sense to add in that the government has to prove.

14          And, then, the second-to-last paragraph, this is the

15  one where I think substantively it does matter.

16          If you find -- I took out "beyond a reasonable doubt

17  that there were two or more conspiracies" because that's not

18  what they have to find beyond a reasonable doubt.  They have

19  to find the charged conspiracy beyond a reasonable doubt.

20          So, I have changed it to, "If you find that there

21  were two or more conspiracies and that" -- this is what I

22  added the -- "the government" -- that's what that G stands

23  for -- "has proved beyond a reasonable doubt" -- and then left

24  the rest in.

25          So, I don't know what your thoughts are on this.

1        MS. THOMPSON:  Well, one of the things that we noted

2   in it was that we thought that, again -- and I think it's

3   consistent with the other instructions, that we should refer

4   each time we say "conspiracy" to "racketeering conspiracy"

5   particularly on this one when we're talking about multiple

6   conspiracies.  We would ask for the language "racketeering

7   activity," and then in the --

8        THE COURT:  "Racketeering conspiracy."

9        MS. THOMPSON:  Right.  Or "charged racketeering

10  conspiracy," which I think is in there several times.

11       And the other thing is the second-to-last paragraph,

12  the one that you were just talking about, we thought that in

13  the last phrase, it actually should be "only if you further

14  find beyond a reasonable doubt" -- oh, no, that's -- I think

15  that's taken care of because you struck the original

16  reasonable.

17       THE COURT:  Exactly.

18       MS. THOMPSON:  I see what you're saying.  Okay.

19       THE COURT:  Okay.  Is there any objection to this as

20  I -- with the changes to Government 84 with the changes add in

21  the "racketeering" before the word "conspiracy" and then the

22  changes I've included?

23       MR. SCHAR:  For every single instance of conspiracy,

24  we're going to add in racketeering?

25       THE COURT:  I'm just reading it again.

1              I would put it in the second paragraph, "Proof that

2    there were multiple conspiracies is not necessarily proof of a

3    single racketeering conspiracy nor is it inconsistent with the

4    existence of a single racketeering conspiracy."

5              And, then, the fourth paragraph, "If you find that

6    the government has proved beyond a reasonable doubt that there

7    was one overall racketeering conspiracy as alleged in Count

8    One and" --

9              MR. MOFFITT:  Your Honor, I think we need to point

10   out that if you do not find beyond a reasonable doubt that a

11   particular defendant was a member of any conspiracy --

12             THE COURT:  Wait a minute, wait a minute, wait a

13   minute.  Where are you?  The last -- where are you,

14   Mr. Moffitt?

15             Let me go back to the next -- the second-to-last

16   paragraph, "If you find that there were two or more

17   conspiracies and that the government has proved beyond a

18   reasonable doubt that a particular defendant was a member of

19   or aided and abetted one or more racketeering conspiracies,

20   you may find the defendant guilty of Count One if you further

21   find beyond a reasonable doubt that this proven racketeering

22   conspiracy" -- or "that this further conspiracy was included

23   within the racketeering," put it there instead of the other

24   one.

25             Did you get that, Mr. Schar?  That this proven

1   conspiracy was included within the racketeering conspiracy

2   charged, I would put, in Count One.

3           MR. SCHAR:  One moment, Judge.

4           THE COURT:  And then the last paragraph, Mr. Schar,

5   I'd put it in, "If, on the other hand, the proven conspiracy

6   is not included within the racketeering conspiracy" --

7   actually, you can leave it alleged in Count One.  That's fine.

8           MR. SCHAR:  The only question is the paragraph right

9   before that whether or not it should be racketeering

10  conspiracy in the second line or just conspiracy, instead of

11  racketeering conspiracy, I understand, at the bottom.

12          THE COURT:  Yes, I think you can take that out of the

13  second line.

14          Okay.  Mr. Moffitt, was there something else on this

15  instruction?

16          MR. MOFFITT:  We're struggling with something right

17  now, your Honor.  I'm not sure that we've resolved it.

18          THE COURT:  Do you want to let me know?

19          MR. MOFFITT:  Yes.

20          Well --

21          THE COURT:  I might be able to help you resolve it.

22          MR. MOFFITT:  Just the language in the first section.

23          MS. THOMPSON:  Yeah.  "If you do not find beyond a

24  reasonable doubt that a particular defendant was a member of

25  any conspiracy, you should find the defendant was not guilty

1    of Count One."

2         I mean, it may be fine, but there's a part of that

3    that's making me think the jury's been instructed to find --

4    if you struggle -- the same problem we had in the other

5    paragraph, that they're being told go find beyond a reasonable

6    doubt which conspiracy they're a member of.

7         THE COURT:  Which paragraph are you on?

8         MS. THOMPSON:  We're on the one that's under the one

9    that starts with "proof."

10        THE COURT:  Okay.  So the third paragraph.

11        MS. THOMPSON:  Yeah.  There seems to me to be an

12   implication about that they need to be looking to put them in

13   some conspiracy, like, from jump.

14        THE COURT:  I don't think so.

15        MS. THOMPSON:  It seems like it should be the charged

16   conspiracy there, like we should start with the charged one.

17   "If you do not find beyond a reasonable doubt a defendant was

18   a member of the charged racketeering conspiracy, you should

19   find him guilty of Count One."

20        MR. MOFFITT:  Not guilty.

21        MS. THOMPSON:  Not guilty, sorry.  Not guilty.

22        THE COURT:  Mr. Schar?

23        MR. SCHAR:  Actually, I think this was the same

24   objection that was raised with the instruction in Mansoori,

25   and the Seventh Circuit approved this language.

```
 1            THE COURT:  Yeah, this is identical to what the
 2   Seventh Circuit has approved.
 3            MS. THOMPSON:  Okay.
 4            MR. SCHAR:  I don't think it's unclear.  I guess I
 5   just don't see it as being that unclear.
 6            MS. THOMPSON:  There's something about it that
 7   strikes me that it's suggesting that the very first thing they
 8   ought to do is go back there and find whether or not he's
 9   guilty of any conspiracy, rather than be focusing on the
10   charged conspiracy.
11            THE COURT:  Is there any harm in changing it,
12   Mr. Schar?
13            MR. SCHAR:  To?
14            THE COURT:  "If you do not find that the government
15   has proved beyond a reasonable doubt that a particular
16   defendant was a member of the charged racketeering
17   conspiracy" --
18            MS. THOMPSON:  Because I think that makes sense to
19   then talk about you go into the idea of multiples.
20            THE COURT:  Mr. Moffitt, do you --
21            MR. SCHAR:  If that's the change, we have no
22   objection.
23            MR. MOFFITT:  I would agree with that.
24            THE COURT:  Okay.
25            MR. SCHAR:  So, what -- "was a member of the charged
```

1    racketeering conspiracy"?

2            THE COURT:  Yes.  Let me read the changes that I have

3    just so we're all on the same page.

4            Nothing in the first paragraph.

5            Paragraph 2, "Proof that there were multiple

6    conspiracies is not necessarily proof of a single conspiracy,

7    nor is it necessarily inconsistent with the existence of a

8    single conspiracy."

9            I don't think we need the racketeering in there,

10   Ms. Thompson.

11           MS. THOMPSON:  I don't know that we need it in that

12   one.  I would think we need it in the first one.

13           THE COURT:  I put it in the other ones.  I had

14   originally said to put it in there, Mr. Schar, but take it

15   out.

16           MR. SCHAR:  Yes, Judge.

17           THE COURT:  I think that's just a general --

18           MS. THOMPSON:  Is it going in the first paragraph

19   though?  Beyond a reasonable doubt, the existence of a

20   particular racketeering conspiracy charged.  I can see it's

21   not going in the one that starts with proof, but it seems to

22   me it should be in the first paragraph.

23           THE COURT:  That's fine.  You can put in first

24   paragraph, second sentence, "the existence of the particular

25   racketeering" --

1           MS. THOMPSON:  Conspiracy charged.

2           THE COURT:  -- "conspiracy charged."

3           Okay.  So, no changes in the second paragraph.

4           Third paragraph, "If you do not find that the

5   government has proved beyond a reasonable doubt that a

6   particular defendant was a member of the charged racketeering

7   conspiracy, you should find that defendant not guilty of Count

8   One."

9           "If you find that the government has proved beyond a

10  reasonable doubt that there was one overall racketeering

11  conspiracy as alleged in Count One and that a particular

12  defendant was a member of that conspiracy, then you should

13  find that defendant guilty of Count One."

14          "If you find that there were two or more conspiracies

15  and that the government has proved beyond a reasonable doubt

16  that a particular defendant was a member of or aided and

17  abetted one or more conspiracies, you may find the defendant

18  guilty of Count One if you further find beyond a reasonable

19  doubt that this proven conspiracy was included within the

20  racketeering conspiracy alleged in Count One."

21          "If, on the other hand, the proven conspiracy is not

22  included within the racketeering conspiracy alleged in Count

23  One, you should find the defendant not guilty of Count One."

24          Everybody okay with that.

25          MR. MOFFITT:  Yes.

1          MR. SCHAR:  Yes, Judge.

2          THE COURT:  Okay.

3          So, give -- I will give Government 84 with my -- with

4   the revisions we've all just done.

5          Okay.  So, I have -- I still have under advisement

6   No. 63, the withdrawal one, No. 77 and No. 65.

7          The government filed a revised set of what previously

8   had been Instructions 38 through 45 dealing with Illinois

9   murder.

10         Were there any objections to the revisions?  I think

11  they addressed all of your concerns.

12         MR. MOFFITT:  I think there's still an issue of venue

13  or jurisdiction.  I don't -- I still don't think that the

14  Illinois conspiracy statute is extraterritorial.  They've got

15  to find an act committed in Illinois.

16         THE COURT:  Okay.  Can you point me to the particular

17  instruction you're referring to?

18         MR. MOFFITT:  If you look at 41, your Honor.

19         THE COURT:  Okay.  Government Instruction 41, I am

20  looking at 41 of the third amended draft jury instructions.

21         Yes?

22         MR. MOFFITT:  And then 42 talks about the elements.

23         There's got to be -- I think in order for the

24  conspiracy to have jurisdiction in Illinois, there's got to be

25  an act committed in Illinois in furtherance of the conspiracy.

1            THE COURT:  What about that?

2            MR. SCHAR:  Judge, Government Instruction 46-A.

3            THE COURT:  46-A.

4            Okay.  That takes care of that.  "In order to charge

5    conspiracy to commit Illinois first-degree murder or

6    solicitation of Illinois first-degree murder, an act related

7    to the conspiracy or solicitation must occur in Illinois."

8            MR. MOFFITT:  What is an act related to the

9    conspiracy?  Because I don't know.

10           THE COURT:  Mr. Schar?

11           MR. MOFFITT:  It seems to me that it ought to be an

12   overt act, not an act related to the conspiracy.

13           THE COURT:  But solicitation doesn't have overt act

14   as an element.

15           MR. SCHAR:  That's the issue, the conspiracy and

16   solicitation both -- conspiracy has an overt act; but that

17   overt act wouldn't necessarily have to occur in Illinois if

18   there was an agreement or one of the actors were in Illinois.

19           The point is -- first of all, there's no actual --

20   the crime is the RICO.  So it's the agreement to do this.  I

21   think the jury needs to be instructed that if Illinois

22   first-degree conspiracy murder or solicitation were to

23   actually have been crimes, there has to be an act for venue

24   jurisdiction purposes, and that's all related to those crimes

25   in Illinois.  And that's what this gets at.  This is not an

 1   element --

 2           THE COURT:  But what -- Mr. Moffitt's objection is

 3   what act does it --

 4           MR. SCHAR:  It doesn't have to be -- it just needs to

 5   be an act.  It needs to be something that occurred.  The

 6   agreement could occur here without no overt act.

 7           On the other hand, the --

 8           MR. MOFFITT:  Well --

 9           MR. SCHAR:  -- agreement could occur elsewhere with

10   an overt act here for purposes of the conspiracy for the

11   solicitation.

12           THE COURT:  Is it -- does --

13           MR. DEUTSCH:  Is there evidence --

14           THE COURT:  Should it be more -- pardon?

15           MR. DEUTSCH:  Is there evidence in this case about an

16   act related to --

17           THE COURT:  Well, the agreement.

18           MR. DEUTSCH:  Well, is there -- this is what I'm

19   asking.  Is there evidence in this record of whether there was

20   any act related, using their language, to conspiracy to commit

21   murder or solicitation for murder occurring in Illinois?

22           MR. SCHAR:  Again, first, there doesn't have to be an

23   act because it's the agreement to run the affairs of the

24   enterprise through conspiracy.

25           THE COURT:  An act related to the conspiracy or

1   solicitation.  What evidence is there, is Mr. Deutsch's

2   question, of an act related to the Illinois conspiracy?

3         MR. SCHAR:  Sure.  I mean, you've got Mr. Salah

4   getting money into his bank accounts in Illinois.  You've got

5   Mr. Salah having conversations in Illinois.  Mr. Salah saying

6   he's getting phone calls in Illinois.  There are all types of

7   things related to actual acts that occurred in Illinois,

8   specifically in Chicago, that would be arguably acts related

9   to conspiracy solicitation if, in fact, there actually had to

10  be one.

11        But, again, all the parties need to do is to agree

12  that conspiracy to commit murder and solicitation to commit

13  murder would be part of the types of activity that would be

14  used to run the affairs of the enterprise.

15        Now, that would, if it were to be charged, require an

16  act; but there's lots of evidence that there were acts related

17  to that in Illinois.

18        MR. MOFFITT:  In order -- in order for it to be a

19  RICO conspiracy, I understand what Mr. Schar is saying.  But

20  in order for it to be a conspiracy in Illinois, as opposed to

21  just a RICO conspiracy, there has to be some act that occurs

22  in Illinois.

23        THE COURT:  But that's what this says.  An act must

24  occur in Illinois.

25        MR. MOFFITT:  Yeah, but it says an act related.

1            THE COURT:  Okay.

2            MR. MOFFITT:  It doesn't say either the agreement or

3    an act in furtherance.  It says an act related, and I --

4    there's nothing else in these instructions that talk about

5    this in terms of an act related to a conspiracy.  So, how is

6    the jury supposed to know what in effect is an act related to

7    a conspiracy?  We've always talked --

8            THE COURT:  So it's the -- it's the "related to"

9    that's your problem?

10           MR. MOFFITT:  Well --

11           THE COURT:  I'm trying to figure out exactly what

12   your objection is.

13           MR. MOFFITT:  That's what I said.  I don't know what

14   related to means --

15           THE COURT:  Okay.

16           MR. MOFFITT:  -- because we don't discuss it anywhere

17   else.

18           THE COURT:  Okay.

19           MR. MOFFITT:  Okay.

20           THE COURT:  I have to make sure I understand.

21           I'm thick, as you put it.  I didn't understand

22   because first you objected that there has to be an act in

23   Illinois, but that's what this says.

24           MR. MOFFITT:  Right.

25           THE COURT:  But now it looks like your objection is

1    the "related to" language is too vague.

2         Mr. Schar?

3         MR. SCHAR:  Again, Judge, it's not an element issue

4    as much as it is a venue jurisdiction issue.  And, so, I'm

5    happy to try and work on the language that makes it clearer;

6    but I don't want to be misleading, trying to add an element to

7    conspiracy or solicitation that, in fact, doesn't exist.  For

8    solicitation, there needs to be no overt act at all.

9         MR. MOFFITT:  Don't you have to solicit the act in

10   Illinois?

11        MR. SCHAR:  No, you wouldn't have to solicit the act

12   in Illinois.

13        MR. MOFFITT:  Oh, you mean I could solicit murder in

14   New York and be charged in Illinois?

15        MR. SCHAR:  Sure, if there's an act related to the

16   solicitation that occurs in Illinois.

17        THE COURT:  Find some Illinois case law or tinker

18   with the language.

19        MR. SCHAR:  If the concern is "act related" what if

20   we changed it to "an act in furtherance of" if that's the --

21        THE COURT:  That seems more --

22        MR. MOFFITT:  I can agree to that.

23        MR. SCHAR:  That's fine.

24        THE COURT:  Mr. Moffitt can agree to that.  That

25   seems more appropriate, "an act in furtherance of."

1          Okay.  Any other objections to --

2          MR. SCHAR:  Judge, the only thing I would add is

3   because now it is beginning to sound like an overt act

4   requirement.  I would ask then that there be language added to

5   this saying that the act in furtherance need not be illegal

6   itself, which is typically the overt act.

7          THE COURT:  Yeah, that's fine.

8          MR. MOFFITT:  I don't have a problem with that.

9          THE COURT:  Okay.  That's fine.

10          Any other objections to the Revised Government's 38

11   through 46-A, I guess it is?

12          MR. DEUTSCH:  No.

13          THE COURT:  Okay.

14          MR. MOFFITT:  Your Honor, I think we probably ought

15   to say in 46-A --

16          THE COURT:  Pardon me?

17          MR. MOFFITT:  In 46-A.

18          THE COURT:  You have another objection?

19          MR. MOFFITT:  It's not actually an objection.  I

20   would just like to make it clear that the word "conspiracy" in

21   the last clause of the sentence relates to the Illinois

22   conspiracy and not to the RICO conspiracy.

23          THE COURT:  That's true.  I thought that was clear,

24   but if you -- I think it's fine to add Illinois before there.

25          MR. MOFFITT:  Okay.  Thank you.

1         MR. SCHAR:  "Act in furtherance of the Illinois

2  conspiracy or solicitation."

3         THE COURT:  Yes, as opposed to the racketeering.

4  That's fine.

5         MR. SCHAR:  I just don't -- can we put Illinois

6  murder conspiracy or solicitation?

7         MR. MOFFITT:  That would be fine.

8         MR. SCHAR:  Okay.

9         THE COURT:  Okay.

10        That takes care of -- I know I have three under

11  advisement.  That takes care of all of my rulings, and I've

12  ruled on all of the objections to the government's

13  instructions.

14        Mr. Salah's.

15        Okay.  Your Salah Instruction 10 I took under

16  advisement, and I have tinkered with it and given you a

17  Revised Salah 10.

18        MR. DEUTSCH:  Judge, I think it's fine.

19        THE COURT:  Okay.

20        MR. SCHAR:  Judge, we would -- here would be our

21  concern.

22        The issue is legal -- in particular, legal purposes.

23  I mean, what really changed in 1995 is that at that point, it

24  became illegal to donate any money, period.  It became an

25  automatic crime to do that.

1        Prior to that time, it was legal to donate money as

2   long as it did not violate existing criminal laws in the

3   United States.

4        And our concern here, again, is the issue of legal

5   purposes because that's not further defined, and very easily

6   one could envision an argument either raised by the defense or

7   the government that, well, this individual gave money for the

8   family of a suicide bomber.  That giving of the money to a

9   family may arguably be a legal purpose -- again, without

10  clarification as to what legal purpose means -- but obviously,

11  could very well be evidence of illegal activity.

12       I'm wondering -- we have one of two thoughts.  Either

13  to flip it to say exactly what it is that became illegal in

14  January of 1995, which is that United States citizens and

15  residents could -- it became illegal to provide any money at

16  all to Hamas, or try to take out the legal purposes language,

17  which I think is confusing, and say something along the lines

18  of "United States citizens and residents could raise, donate

19  and/or distribute money so long as such acts did not violate

20  existing criminal laws of the United States."

21       THE COURT:  I like your second idea better than your

22  first.

23       MR. SCHAR:  Okay.

24       THE COURT:  How about that, Mr. Deutsch?  "Prior to

25  its designation by the United States government, pursuant to

1  Executive Order 12947 on January 24th, 1995, United States

2  citizens and residents could raise, donate and/or distribute

3  money to Palestinian organizations in the occupied

4  territories, including Hamas, as long as such acts did not

5  violate existing criminal laws in the United States."

6          Is that okay?

7          MR. DEUTSCH:  That's fine.

8          THE COURT:  Okay.  Mr. Moffitt?

9          MR. MOFFITT:  Fine.  Fine.

10         THE COURT:  Okay.  I will make that change.

11         And, Mr. Schar, I will have -- the ones that I

12  revised, I'm working on on my computer now.  You may want to

13  take notes just to make sure, but I will have these e-mailed

14  to you --

15         MR. SCHAR:  Okay.

16         THE COURT:  -- so that you can put them in the

17  revised.

18         MR. SCHAR:  Thank you, Judge.

19         THE COURT:  Okay.

20         So, that takes care of Salah 10.

21         I am now turning, Mr. Deutsch, to -- I have your

22  letter to me that was faxed on January 2nd with the proposed

23  withdrawal instructions.  As I indicated with the

24  government's, I don't have a final withdrawal instruction for

25  you, but I will give you one.  So, I'm going to turn back to

1    your letter of December 27th, 2006.

2         Paragraph 3, I've already addressed that with the

3    proposed instruction.

4         Paragraph 22 deals with withdrawal again that your

5    January 2nd fax superseded.

6         MR. DEUTSCH:  Yeah, it replaces that.  You don't have

7    to -- the withdrawal ones are the ones I gave you on the 2nd.

8         THE COURT:  Okay.

9         And then I -- I think the only thing left are the

10   First Amendment, strictissimi juris instruction and theory of

11   defense instructions.

12        MR. DEUTSCH:  Right.

13        THE COURT:  Now, Mr. Deutsch, you indicate here you

14   have tendered previously a theory of defense instruction.

15        MR. DEUTSCH:  Judge, I withdrew that because as we

16   begin to talk about the instructions --

17        THE COURT:  You were going to give me a new one.

18        MR. DEUTSCH:  Yeah, and I'm not complete with that.

19        THE COURT:  Okay.

20        MR. DEUTSCH:  Because -- so, I would --

21        THE COURT:  If you finish that over the weekend,

22   would you e-mail it to Joe?

23        MR. DEUTSCH:  Yes, I'll do that.

24        THE COURT:  And then he will get it on to me.

25        MR. DEUTSCH:  All right.

1          THE COURT:  And I received the one you handed to me.

2   I haven't looked at it yet.

3          MR. MOFFITT:  I understand.  We wrote that -- we had

4   about ten of them, and we wrote that one up from the -- we

5   pieced that one together from the ten of them that we had down

6   in the cafeteria this morning.  So --

7          THE COURT:  I can appreciate that based on what I've

8   been doing.

9          I will look at that.

10         Mr. Schar, you should look at that as well and let me

11  know if you have any objection to it.  You don't have to let

12  me know right now.  I'll give you time to look at it because I

13  haven't looked at it.

14         So, First Amendment.  I have looked at, Mr. Deutsch,

15  your various proposals.  Mr. Moffitt, I have looked at your

16  various proposals.  I have taken the government's objections

17  under consideration, and I have given you a revised First

18  Amendment instruction.

19         Take a look at that, please.  Take whatever time you

20  need and let me know what you think.

21         This is -- I've also tried to come up with the

22  strictissimi juris instruction, and I don't have one of those,

23  yet.  So, I've got my ten versions still laid out back there.

24         MR. MOFFITT:  It took me a whole trial to figure out

25  how to pronounce it.

1          THE COURT:  I'm not sure I'm doing it correctly yet.

2          Take a look at the First Amendment, and let me know.

3          (Brief pause.)

4          MR. DEUTSCH:  Judge, I would want in that first

5    sentence, "The First Amendment to the Constitution protects

6    freedom of speech and freedom of association, including

7    providing money for political causes."  I think that is a

8    First Amendment protection.  I think Buckley vs. Valeo,

9    although it is a campaign finance case, I understand that,

10   really specifically recognizes that donating money, raising

11   money is a First Amendment protected activity.

12          So, I would want to include that in the definition of

13   what the First Amendment protects.

14          THE COURT:  Mr. Schar?

15          MR. SCHAR:  Again, we would object.  Political causes

16   is vague on its face.  And it then raises the issue whether

17   Hamas is a political cause in a way that isn't necessarily

18   charged.

19          I mean, if he's giving money -- the jury should be

20   instructed that if someone gives money to Hamas and have

21   people killed but that's somehow perhaps a political cause --

22          MS. THOMPSON:  No, raising money for lawful purposes.

23          MR. SCHAR:  -- not a violation --

24          MR. DEUTSCH:  For lawful purposes.

25          THE COURT:  For lawful, for political --

1              MR. SCHAR:  This gives --

2              MS. THOMPSON:  Or just lawful purposes.

3              MR. SCHAR:  This goes back to the issue --

4              THE COURT:  How about taking out the political?

5              MS. THOMPSON:  Yeah.

6              THE COURT:  Including money for lawful purposes?

7              MS. THOMPSON:  Yeah, I mean, we're not -- yeah.

8              MR. SCHAR:  But doesn't this go back to the

9      instruction that is the issue of what is lawful purposes?  And

10     the very instruction that is -- the issue that was raised --

11             THE COURT:  "Including for activities that do not

12     violate the laws of the United States"?

13             MS. THOMPSON:  That's fine.  We just want to get in

14     the idea that, in fact, you know, funding or facilitating

15     financial transactions can, in fact, be protected by the First

16     Amendment.

17             MR. SCHAR:  Isn't that what Instruction Revised 10

18     seems to say more directly?  "United States citizens and

19     residents could raise, donate and distribute money, so long as

20     such acts do not violate criminal laws."  I don't see how this

21     becomes a First --

22             MS. THOMPSON:  That the reason you could do that was

23     because of the First Amendment, and that deals with the date

24     of designation; and it's important, I think, for the jury to

25     understand that if financial transactions don't violate the

1   law otherwise, that they're protected by the First Amendment,

2   not just that they're, you know, generally not illegal, but

3   that they're, in fact, protected.

4            THE COURT:  Mr. Moffitt, do you have a view on this?

5            Mr. Spielfogel, you do?

6            MR. SPIELFOGEL:  We would join Mr. Deutsch in his

7   position.

8            MR. SCHAR:  Again, Judge, I'm not sure why they would

9   need to be instructed on that.  If that's what's going to

10  happen, it seems to me that we then also have to add "so long

11  as the distribution of money does not violate existing

12  criminal laws in the United States."

13           THE COURT:  "The First Amendment to the Constitution

14  protects the freedom of speech and the freedom of association,

15  including raising money for activities that do not violate the

16  laws of the United States."

17           MS. THOMPSON:  That's fine.

18           MR. MOFFITT:  I agree.  I'll accept that.

19           THE COURT:  Okay.

20           All right.  I will add that.

21           Are you okay on the instruction?

22           MR. DEUTSCH:  Yes.

23           THE COURT:  Anything else?

24           MR. DEUTSCH:  Yes.

25           MR. SCHAR:  Judge, we have some.

1          THE COURT:  Okay.  Mr. Moffitt, let me see, do you

2  have any objections to the rest of it?

3          MR. MOFFITT:  No.  No, ma'am.

4          THE COURT:  Okay.

5          Mr. Schar?

6          MR. SCHAR:  We don't have an objection to any of the

7  beginning part.  What I think, though, is -- and I understand

8  the purpose of the last sentence in terms of saying what

9  speech and expression can be used for.  But in fact, in this

10  case, speech and association can be used as evidence beyond

11  what's in the last sentence.

12          And what we would propose is a sentence before the

13  last sentence that says -- that would say, "In addition,

14  speech and association" -- I'm sorry, the last -- what would

15  say, "but speech and association can be considered by you as

16  evidence, just like any other evidence you have received."

17          THE COURT:  In lieu of what I have?

18          MR. SCHAR:  In addition.

19          THE COURT:  Okay.

20          So, -- and where are you suggesting placing this?

21          MR. SCHAR:  Before -- and then I've got -- we've got

22  some changes to the last sentence.  But before the last

23  sentence after the imminent means about to occur at any

24  moment --

25          THE COURT:  But speech and --

1          MR. SCHAR:  "Association can be considered by you as

2     evidence --

3          THE COURT:  Wait a minute.

4          MR. SCHAR:  Sorry.

5          THE COURT:  Can be, as evidence --

6          MR. MOFFITT:  Evidence of what?

7          MR. SCHAR:  "Just like any other evidence you have

8     received."

9          In this --

10          THE COURT:  And then give me your last sentence

11     because I need to --

12          MR. SCHAR:  And then -- that would -- the last

13     sentence would change from "but speech" to "in addition,

14     speech and association" and then it would continue with your

15     language, "including the expression of beliefs or sympathies

16     may be used by you as evidence in determining the speaker's

17     knowledge or intent or state of mind."

18          And I think we need something at the end.  If it just

19     says speaker's knowledge or intent or state of mind, it would

20     say something along the lines of "in determining whether

21     criminal activity occurred and whether a defendant was part of

22     the charged criminal activity."

23          MR. MOFFITT:  I object to that.

24          THE COURT:  Yeah, I --

25          MR. SCHAR:  Because, Judge, again, I mean, this is --

1    otherwise, may determine the speaker's knowledge or intent or

2    state of mind for what?

3          MR. MOFFITT:  For anything.  I mean, you obviously

4    can argue from that that the speech was -- it shows that he

5    had knowledge of Hamas, that his state of mind was to violate

6    the law.

7          To go beyond that is to try to say more than is

8    appropriate.  It clearly may be evidence of the state of mind,

9    but what else would it be evidence of?

10          THE COURT:  How about the addition of -- I agree.

11    I'm going to give that last part you tacked onto the last

12    sentence.

13          But this does seem appropriate.

14          "But speech and association can be considered by you

15    as evidence, just like any other evidence you have received."

16          And, then, you can argue what you want, and they can

17    argue what they want from that.

18          MR. MOFFITT:  Fine.

19          MR. DEUTSCH:  That's good.

20          THE COURT:  All right.

21          So, I will give the First Amendment instruction with

22    those revisions.

23          The strictissimi juris, I'm still working on, and

24    I'll read your theory of the defense.  I'll read yours,

25    Mr. Deutsch, when you give it to me.

1           MR. DEUTSCH:  Okay.

2           Judge, there's one additional matter, which I don't

3   know if the implication is, based on all this work, that

4   you're -- you haven't reached an opinion on the Rule 29, or

5   what's your thinking on that?

6           THE COURT:  I will address that on Monday.

7           MR. DEUTSCH:  Okay.

8           I mean, obviously, if you granted Rule 29 on Count

9   Two now for Mr. Salah, we wouldn't have to address that in our

10  closing.

11          THE COURT:  The revised Count Two.

12          I will give you a final ruling on -- I will give you

13  a final ruling on Monday.

14          MR. DEUTSCH:  Okay.

15          THE COURT:  Thank you for reminding me.

16          MR. SCHAR:  Judge, I --

17          THE COURT:  Anything else on instructions?

18          MR. SCHAR:  Only the verdict form, as well.  I don't

19  know if we need to address that.

20          THE COURT:  Yes, but before we get to that, anything

21  else on the instructions?

22          MR. SCHAR:  The only thing I would ask on the

23  instructions, obviously, Mr. Ferguson plans on beginning his

24  opening at around 10:30, and I think it would be important to

25  know what at least the theory of defense instructions --

1          THE COURT:  I will -- I have Dr. Ashqar's.  You can

2  call if you have objections today, Mr. Schar.

3          MR. SCHAR:  Okay.

4          THE COURT:  And I'll -- I'm going to have you come in

5  before the 10:30 time on Monday to resolve this.

6          Mr. Deutsch, as soon as you know, get yours to me.

7          MR. DEUTSCH:  I will e-mail it.

8          THE COURT:  Try to do it by the end of the day so I

9  can --

10          MR. DEUTSCH:  Okay.

11          THE COURT:  -- tinker with it over the weekend.

12          MR. DEUTSCH:  Okay.

13          THE COURT:  And I -- it's my hope and intention to

14  give you final instructions before closings start on Monday.

15          Okay.  Anything else on instructions?

16          Verdict form.  I did not receive one from the

17  defendants.  I have one from the government.

18          Are there any objections to the one proposed by the

19  government?

20          MR. DEUTSCH:  Yeah, I had a minor objection, but I

21  can't really find it.  Again, it goes to this -- on the

22  obstruction, it says obstruction of justice.  And, again, I

23  think it should say obstruction of the due administration of

24  justice.

25          THE COURT:  Yeah, that's --

```
 1              MR. SCHAR:  That's fine, Judge.

 2              THE COURT:  Add that.

 3              MR. DEUTSCH:  That should be Count Two and Count

 4   Four.

 5              THE COURT:  And Count Four.

 6              MR. DEUTSCH:  Otherwise, they're simple and they're

 7   fine.

 8              THE COURT:  Okay.  Mr. Moffitt?

 9              MR. MOFFITT:  I think with that change, your Honor,

10   I'm okay with it, as well.

11              THE COURT:  Okay.

12              Make sure that is included on your disk that you give

13   to the Court.

14              MR. SCHAR:  Yes, Judge.

15              THE COURT:  I will have these revised ones e-mailed

16   to you, and --

17              MR. SCHAR:  Do you want me to then e-mail --

18              THE COURT:  Make all the other changes.  I prefer not

19   to get a disk or CD with it on until everything's ruled on.

20              MR. SCHAR:  Okay.

21              THE COURT:  So, hold off on that.  Get it ready to

22   go, but hold off on it.

23              Why don't you come by 10:00 o'clock on Monday.  We're

24   starting closings at 10:30.

25              Just for the record, I did talk briefly to
```

 1   Mr. Lapertosa.  He wanted me to -- as I told you I was going

 2   to about the timing, and he wanted me to express his thanks to

 3   everybody for letting him go to this hearing.  It really means

 4   a lot to him, so -- the hearing does.  He really wanted to be

 5   there for his clients who are coming in from out of town.  He

 6   will be here by 10:30.

 7           MR. SCHAR:  Are there any other --

 8           THE COURT:  No.  10:00 o'clock on Monday.

 9           MR. SCHAR:  There are just two quick things we wanted

10   to address in relation to closings.

11           One is I know there have been transcripts.  We've

12   ordered transcripts.  The defense has ordered transcripts.  We

13   don't think it's appropriate to show the jury transcripts.  I

14   don't know if the defense intended to.  We're not going to.

15   It's obviously not the evidence.  It's their recollection.

16   But I just wanted to make sure that there was an

17   understanding.

18           THE COURT:  Is that acceptable?

19           MR. MOFFITT:  Yes.

20           MR. DEUTSCH:  Yeah.

21           THE COURT:  Okay.

22           The other problem with showing them is then they ask

23   for them, and we don't have them all transcribed and so --

24           MR. MOFFITT:  What is your policy on readbacks if

25   they ask for them?

1        THE COURT:  If they ask for it, I will address it on

2  a question-by-question basis.

3        MR. MOFFITT:  Okay.

4        MR. SCHAR:  The only other issue -- I just want to

5  make sure I'm aware of what the lines are.  When Mr. Moffitt's

6  case came up, there was a ruling by your Honor related to what

7  can be commented on in opening.  I wasn't sure how broad that

8  was in relation to Mr. Moffitt's opening and how -- it just --

9  it was at the end of the day.

10       THE COURT:  You cannot say "Mr. Moffitt promised to

11  you in opening statements that he would produce FBI witnesses

12  and he didn't."  I didn't say -- he's got a theory of the

13  defense that's come in through his cross-examination and

14  through his case.  You can certainly comment on the theory of

15  his defense and say why, in your view, that fails, but you

16  cannot directly say -- what my ruling was, you can't directly

17  say he promised you these witnesses in his opening and they

18  didn't show up, he didn't call them.

19       MR. SCHAR:  And I'm assuming, though, if he did

20  promise other things; for instance, we have the CIA letter

21  that's out there, which has nothing to do with those

22  particular witnesses.  Again, I don't want to run afoul of

23  anything your Honor has ruled; but there was nothing, for

24  instance, proven up on that.

25       THE COURT:  The relief requested that I granted was

1    with respect to the FBI witnesses, and I don't remember if you

2    made promises about the AUSA in opening, but all related to

3    that AUSA.

4              MR. DEUTSCH:  Judge, we have a couple of similar

5    matters.

6              In the State Department documents, in one document,

7    there's a reference to Mr. Salah being represented by Jawad

8    Boulos.  And Mr. Salah was not, in fact, represented by Jawad

9    Boulos, but for some reason, that was put in the document and

10   we -- and you said we can't change and we should put it in.

11   It wasn't put in, in our mind, for the truth of the matter.

12   It was just in there.

13             I don't think the govern- -- and the government knows

14   that Mr. Salah was never represented by Jawad Boulos, so I

15   don't --

16             THE COURT:  Do you plan on arguing that, Mr. Schar?

17             MR. SCHAR:  Certainly not in rebuttal.  I will check

18   with Mr. Ferguson, but I doubt we're going to -- seriously

19   doubt we're going to be arguing that.  It raises obviously

20   concerns about -- you know, in our mind, it wasn't put in for

21   the truth of the matter.  Well, it was put in for the -- and

22   then there's issues about --

23             THE COURT:  It's in, and I am not going to revisit --

24             MR. SCHAR:  Right.

25             THE COURT:  -- evidentiary rulings.

1          MR. DEUTSCH:  Judge --

2          MR. SCHAR:  I'll talk to Mr. Ferguson.

3          MR. DEUTSCH:  However it's in, and it isn't

4  accurate --

5          MR. SCHAR:  Judge, we're not going to argue it.

6          MR. DEUTSCH:  Okay.

7          MR. SCHAR:  I mean, it's in.  It's in the document.

8          MR. DEUTSCH:  Yeah, that's it.  We're not going to

9  say it's not in or it's a lie or anything.  We're not going to

10  go into it; but if the government starts saying, well, he was

11  represented by Jawad Boulos, we know that's not true.

12          Okay.  If they're not --

13          THE COURT:  I don't know one way or the other, but

14  what I do know is during the lengthy three-week suppression

15  hearing, it never came out that he was represented by this

16  individual.

17          MR. DEUTSCH:  And he wasn't.

18          THE COURT:  The woman's name came out --

19          MR. DEUTSCH:  Right, right.

20          THE COURT:  -- that he was represented by.

21          MR. DEUTSCH:  Exactly.

22          THE COURT:  And I would think if he had been

23  represented by this individual, I would have heard about it

24  back in March.

25          MR. DEUTSCH:  Right.  So --

1        MS. THOMPSON:  There's Seventh Circuit law, Judge,

2   which I didn't bring with us, that if the government has

3   knowledge from any source that a particular item is not true,

4   they should not argue it to the jury.

5        THE COURT:  They said they are not going to go into

6   it.

7        MS. THOMPSON:  Thank you, Judge.

8        MR. DEUTSCH:  The other one is a little more on the

9   line.  We went into this a little bit the other day, and I

10  told the government we intend to argue that they only called

11  two out of ten possible interrogators.  And they said they

12  weren't going to argue that we could have called them.

13       THE COURT:  Correct.

14       MR. DEUTSCH:  That's fine.

15       But I'm wondering are they going to say, well, we

16  didn't have control over these people.  We couldn't bring

17  them.  We just brought whoever the Israelis let us.  I don't

18  know what that argument is going to be, but it seems to me,

19  again, it kind of gets close to the line.

20       THE COURT:  I think what Mr. Schar said is they're

21  going to argue based on what was presented in the courtroom,

22  not what wasn't.

23       MR. DEUTSCH:  That's fine.  That's fine then.

24       MR. SCHAR:  I mean, I think it's a fair inference to

25  say those witnesses wouldn't have been helpful --

1          MR. DEUTSCH:  Well, that's fine.

2          MR. SCHAR:  -- to defendant Salah.  But we are not

3   going to get into classification issues.

4          THE COURT:  Two other things.

5          One, the evidence.  Have you gotten together on that?

6          MR. SCHAR:  Judge, we are finishing unmarking, trying

7   to make it clean.  We will have it.  We can bring it up

8   probably Monday.  Can be looked at pretty much any day the

9   defendants want to.

10         THE COURT:  Yes.  Please spend time because I'm not

11  going to be happy, and I don't think it's fair to the jury to

12  wait for it if they want to see it right away, and it can't go

13  back until everybody has agreed that it is the evidence and

14  has been admitted.

15         MR. DEUTSCH:  That reminds me of another point.

16         One of the things that we want to use in our closing

17  is the bird, original bird statement that the jury looked

18  at --

19         THE COURT:  Sure.

20         MR. DEUTSCH:  -- quite extensively, so we would ask

21  that that be brought up.

22         THE COURT:  Make sure it's up here, please.

23         MR. SCHAR:  The evidence will be brought up each day.

24         MR. DEUTSCH:  Okay.  And I mentioned this to you.  We

25  are putting together, and I guess we won't really need it to

1    present it till Wednesday, a notebook with our exhibits for

2    each juror.

3              THE COURT:  You mentioned that.  That's fine.  Just

4    make sure the government sees is it in advance of your

5    closing.

6              MR. DEUTSCH:  I'll show -- yes.

7              THE COURT:  You don't have to give it in advance of

8    theirs, but give it in advance of yours with sufficient time

9    that they can make sure that everything or agree that

10   everything there has been admitted in evidence.

11             MR. DEUTSCH:  Okay.

12             THE COURT:  Two other things, just to save you the

13   trouble of asking the question.  I don't care where you stand

14   when you make your closing arguments.  As long as you're not

15   in the jury box, I don't care what you do.

16             I will let you know, though, that we are going to

17   have the live video feed, and the camera is on the podium.

18   When you walk away from either the -- if you walk away from

19   the podium, they won't be able to see you.

20             MR. MOFFITT:  Are you going to turn the podium?

21             THE COURT:  But if you are walking away -- pardon me?

22             MR. MOFFITT:  Are you going to turn the podium?

23             THE COURT:  You can do whatever you want.  I don't

24   care.

25             The microphones, it is important, if you walk away

1   from them, that you do keep your voice up if you want the

2   people in the courtroom on 17 to hear.

3           Finally, I think almost every jury I have had sends

4   out a question almost immediately asking for some type of

5   white board with markers to mark on.

6           We can wait and see if the question comes.  My

7   proposal is just to put it back there.

8           MR. MOFFITT:  Go ahead and put it back there.

9           MR. SCHAR:  That's fine, Judge.

10          THE COURT:  That will save all of you a trip back

11  down here when the question comes within the first day.

12          MS. THOMPSON:  Judge, could we likewise, if

13  necessary, pull back the government's table a little bit

14  just -- I mean, because always like there's the carts and --

15          THE COURT:  Yeah, if you need to --

16          MS. THOMPSON:  I understand why they're there, but is

17  it possible for closings --

18          MR. SCHAR:  For closings, we won't have the carts.

19          MS. THOMPSON:  But could you pull back the table?

20          MR. SCHAR:  Somebody could.  I don't know if I can.

21          THE COURT:  I think they move.  If you need them to

22  move back, that's fine.

23          What else?

24          MR. SCHAR:  Judge, the only last thing is, and I know

25  you're not going to make any rulings on this.

1          At the Rule 29 arguments, there were a lot of

2    arguments made that the government thought went towards

3    motions in limine you had already resolved.  Pre-indictment

4    delay was a big one.  Our motivations in bringing this case

5    was one.  There was apparently some justification defense

6    argument, and at one point reasons for why RICO was passed and

7    things of that sort.

8          I don't expect the defendants are going to get up and

9    argue that actually in closing, but it certainly isn't clear

10   to the government.  So I just want to make sure that those

11   motions in limine are at least on everyone's mind because we

12   will be objecting to arguments like that.

13         THE COURT:  You shouldn't argue anything that is in

14   violation of one of my prior orders, but you know that.

15         Why are you smirking, Mr. Spielfogel?

16         (Laughter.)

17         MR. SPIELFOGEL:  There goes our whole closing, Judge.

18         THE COURT:  If you need me for any reason between now

19   and Monday morning, the best thing to do is to call chambers

20   and leave a -- if nobody answers, if you're calling over the

21   weekend, just leave a voicemail because I do pick those up.  I

22   don't answer that phone, but I do pick those up.  So that's

23   the best way to get me if you need me for any urgent reason.

24         Please get those outstanding instructions to me, and

25   I will rule on the final ones I have under advisement soon.

1        MR. SCHAR:  You will e-mail me for --

2        THE COURT:  Yes, I will probably have Joe e-mail you.

3        Anything else?

4        10:00 o'clock on Monday morning.  Thank you.  Have a

5   good weekend.

6        MR. SPIELFOGEL:  Thank you, Judge.

7        MR. DEUTSCH:  Thank you, Judge.

8        MR. MOFFITT:  Have a nice weekend now.

9        THE COURT:  Thank you.  You, too.

10              *    *    *    *    *

11

12   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

13

14
     /s/ Joseph Rickhoff                    September 3, 2008
15   Official Court Reporter

16

17

18

19

20

21

22

23

24

25